Nicolas Swerdloff
John Fellas
Russell W. Jacobs
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

07 CV 8000

------------------------------------------------------------- x

BANCA NAZIONALE DEL LAVORO,               :

                              Plaintiff,   :

           -against-                        :        07 CV
                                            :        **COMPLAINT**
                                            :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                              Defendant.    :

------------------------------------------------------------- x

Plaintiff Banca Nazionale del Lavoro ("BNL"), by its attorneys, Hughes Hubbard

& Reed LLP, for its Complaint alleges as follows:

### Nature of Action

1.      This is an action for breach of contract seeking €16,880,000.00 (or

approximately $23 million) in principal, plus applicable interest, owed under certain principal-

only notes issued by defendant the Republic of Argentina (the "Republic"). The case is simple:

(i) BNL is beneficial owner of the notes; (ii) the Republic has failed to make any payments of

principal on those notes since December 2001, when it declared a moratorium on the payment of

principal and interest on all external debt; (iii) this failure constitutes a default under the

governing instruments; and (iv) BNL notified the Republic of the default with respect to the

notes. Therefore, the Republic has breached its obligations to pay BNL the entire principal, together with any applicable interest. Indeed, this Court has repeatedly entered judgment against the Republic for defaulting on bonds held by other beneficial owners in circumstances similar to those here. *See, e.g., Franceschi v. Republic of Argentina*, No. 03 Civ. 4693, 2006 WL 2528460 (S.D.N.Y. Aug. 31, 2006); *Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003). Judgment should be similarly entered against the Republic and in favor of BNL in this case.

### The Parties

2.      Plaintiff BNL is a bank organized and existing under the laws of Italy.

3.      Defendant the Republic is a foreign state as defined in 28 U.S.C. § 1603(a).

### Jurisdiction

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1330.

5.      Venue is proper in this district by consent of the defendant and pursuant to 28 U.S.C. § 1391(f).

### The Notes

6.      BNL is beneficial owner of certain principal-only notes (collectively, the "Notes"), all issued by the Republic pursuant to the Trust Deed dated as of July 27, 1993 (the "Trust Deed"), as supplemented by the 10th Supplemental Trust Deed dated May 26, 1998 (the "Tenth Supplement") (among other documents), and Terms and Conditions of the Notes dated as of July 27, 1993 (the "Terms"), as part of the Republic's U.S.$11,000,000,000 Euro Medium-Term Note Programme (the "Euro Note Programme"), in the following amounts and having the following identification codes, maturity dates, and interest rates:

2

| Principal Amount | ISIN | CUSIP | Common Code | Maturity Date |
|---|---|---|---|---|
| €7,880,000.00 | US04011NAL29 | 04011NAL2 | 008730202 | May 28, 2006 |
| €9,000,000.00 | US04011NAM02 | 04011NAM0 | 008730229 | May 28, 2011 |

True and correct copies of the Trust Deed, the Tenth Supplement, the Terms, and the Euro Note Programme are annexed hereto as Exhibits A through D, respectively. A true and correct copy of an account statement showing BNL's positions in these notes is annexed hereto as Exhibit E.

7.    Section 10 of the Terms defines the following, *inter alia*, as "Events of Default:"

(a)    *Non-Payment:* the Republic fails to pay any principal (or Amortised Face Amount) of any of the Notes when due and payable or fails to pay any interest on any of the Notes when due and payable and such failure continues for a period of 30 days; or . . .

(d)    *Moratorium:* a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

(Terms at p. 46.)

8.    The Republic has failed to pay principal on the notes identified by CUSIP 04011NAL2, Common Code 008730202, and ISIN US04011NAL29, which were due May 28, 2006.

9.    In addition, in or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the Notes.

10.    By reason of the foregoing, there has been an Event of Default on the Notes, and the Republic is in breach of its obligations to BNL. This default is continuing.

3

11.     By notice dated May 29, 2007, The Bank of New York, the trustee with respect to the Notes, advised that the Notes had been "declared immediately due and payable by the [t]rustee or its predecessors." The Bank of New York also advised, however, that it "does not intend to take any action against the Republic to enforce the terms of the Trust Deed, the Notes and the Coupons" even though "[t]he Republic has shown no intention of honouring the demands for payment made by the [t]rustee and its predecessors.. . ." A true and correct copy of such notice is annexed hereto as Exhibit F.

12.     By letter to The Bank of New York, as the trustee with respect to the Notes, dated August 3, 2007, BNL declared the principal of the Notes to be due and payable immediately, and any applicable interest to be immediately payable as well, and demanded that The Bank of New York commence proceedings against the Republic. A true and correct copy of such letter is annexed hereto as Exhibit G.

13.     The Bank of New York has not responded to BNL's August 3, 2007 letter and, upon information and belief, has not commenced proceedings against the Republic.

14.     Pursuant to sections 17.2-17.4 of the Trust Deed, the Republic (i) appointed Banco de la Nacion Argentina as its agent for service of process, (ii) agreed to submit to the jurisdiction of this Court, and (iii) agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

15.     By reason of the foregoing, the Republic has breached its contractual obligations to BNL and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT
### Default On The Notes

16.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-15 as if set forth here at length.

4

17.    As set forth above, BNL is beneficial owner of the Notes.

18.    As set forth above, the Republic has failed to make any payments of principal on the notes identified by CUSIP 04011NAL2, Common Code 008730202, and ISIN US04011NAL29.

19.    As set forth above, in or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the Notes.

20.    As set forth above, there has been an Event of Default on the Notes, and the Republic is in breach of its obligations under the Trust Deed and the Terms.

21.    By reason of the foregoing, the Republic has breached its contractual obligations and is liable for damages in an amount to be determined at trial, plus interest.

WHEREFORE, plaintiff demands judgment as follows:

i.    Awarding plaintiff BNL damages against the Republic in an amount to be determined, plus interest; and

ii.    Awarding plaintiff BNL costs, prejudgment interest, attorneys' fees and such other and additional relief as the Court deems just and proper.

Dated: New York, New York
      September 12, 2007

HUGHES HUBBARD & REED LLP

By: _Russell W. Jacobs_

Nicolas Swerdloff
John Fellas
Russell W. Jacobs
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000
*Attorneys for Plaintiff*

5

# Exhibit A

CONFORMED COPY

Dated July 27, 1993

THE REPUBLIC OF ARGENTINA

– and –

CHASE MANHATTAN TRUSTEES LIMITED

TRUST DEED

relating to

THE REPUBLIC OF ARGENTINA
U.S.$1,000,000,000 Euro Medium-Term Note Programme
arranged by
Lehman Brothers International (Europe)

LINKLATERS & PAINES
Barrington House
59–67 Gresham Street
London EC2V 7JA

Tel:  (71) 606 7080

Ref:  AJC/LBMF

CONTENTS

| Clause | Title | Page |
|---|---|---|
| 1 | Interpretation | 1 |
| 2 | Amount of the Notes and Covenant to Pay | 5 |
| 3 | Form of the Notes; Issue of the Notes | 8 |
| 4 | Stamp Duties and Taxes | 9 |
| 5 | Application of Moneys Received by the Trustee | 9 |
| 6 | Covenants | 10 |
| 7 | Remuneration and Indemnification of the Trustee | 12 |
| 8 | Provisions Supplemental to the Trustee Act 1925 | 13 |
| 9 | Trustee Liable for Negligence | 16 |
| 10 | Waiver and Proof of Default | 16 |
| 11 | Trustee not Precluded from Entering into Contracts | 16 |
| 12 | Modification | 17 |
| 13 | Appointment, Retirement and Removal of the Trustee | 17 |
| 14 | Couponholders | 18 |
| 15 | Currency Indemnity | 18 |
| 16 | Communications | 19 |
| 17 | Governing Law and Jurisdiction | 20 |
| 18 | Counterparts | 22 |
| Schedule 1 | Form of Definitive Bearer Note, Coupon, Talon and Definitive Registered Note | 23 |
| Schedule 2 | Form of Temporary Global Note | 39 |
| Schedule 3 | Form of Global Note | 47 |
| Schedule 4 | Forms of DTC Global Notes | 56 |
| Schedule 5 | Provisions for Meetings of Noteholders | 62 |

- i -

THIS TRUST DEED is made on July 27, 1993 BETWEEN:-

(1)  THE REPUBLIC OF ARGENTINA (the "Republic"); and

(2)  CHASE MANHATTAN TRUSTEES LIMITED (the "Trustee", which expression, where the context so admits, includes any other trustee for the time being under this Trust Deed).

WHEREAS:-

(A)  The Republic proposes to issue up to U.S.$1,000,000,000 principal amount of Euro Medium-Term Notes to be constituted by this Trust Deed.

(B)  The Trustee has agreed to act as trustee of this Trust Deed on the following terms and conditions.

THIS DEED WITNESSES AND IT IS DECLARED as follows:-

1    INTERPRETATION

     1.1  Definitions:  Unless the context otherwise requires, the following expressions have the following meanings:-

     "Agency Agreement" means the agreement, as amended from time to time, dated the date of this Trust Deed between the Republic, the Trustee and the Agents and includes any other agreements approved in writing by the Trustee appointing Successor Agents or altering such agreements;

     "Agents" means the Principal Paying Agent, the other Paying Agents, the Registrar, the Calculation Agent and the Transfer Agents or any of them;

     "Authorised Signatory" means, in respect of a person, an individual duly authorised by such person to sign specified documents on behalf of such person;

     "Bearer Note" means a definitive Note which is in bearer form in or substantially in the form set out in Schedule 1, 2 or 3 and includes any replacement Bearer Notes issued pursuant to the Conditions and (except for the purposes of Clause 3.1) any Temporary Global Note or Global Note;

     "Bearer Series" means a Series of Bearer Notes;

     "Calculation Agent" means The Chase Manhattan Bank, N.A. at its specified office or any Successor Calculation Agent;

     "Conditions" means the terms and conditions set out in Schedule 1, as from time to time modified in accordance with this Trust Deed and, with respect to any Notes represented by a Global Note, as modified by the provisions of the Global Note.  Any reference to a particularly numbered Condition shall be construed accordingly;

- 1 -

"Couponholder" and (in relation to a Coupon) "holder" means the bearer of a Coupon;

"Coupons" means the bearer coupons for the time being relating to the Bearer Notes or, as the context may require, a specific number of them and includes any replacement Coupons issued pursuant to the Conditions;

"Dealer Agreement" means the dealer agreement dated July 27, 1993 between the Republic, Lehman Brothers International (Europe), Lehman Brothers Bankhaus Aktiengesellschaft, Shearson Lehman Brothers Inc. and Chase Investment Bank Limited and includes any agreement by which any additional dealers accede to such agreement;

"Definitive Registered Note" means a definitive note which is in registered form in or substantially in the form set out in Schedules 1 or 4, issued in the name of the holder of one or more Registered Notes and includes any replacement Definitive Registered Notes issued pursuant to the Conditions and any DTC Global Note;

"DTC Global Note" means any DTC Restricted Global Note and any DTC Unrestricted Global Note issued in respect of the same Tranche of a Series of Notes;

"DTC Restricted Global Note" means a definitive global Registered Note in or substantially in the form set out in Schedule 4 and bearing the Rule 144A Legend and the legends required by The Depository Trust Company;

"DTC Unrestricted Global Note" means a definitive global Registered Note in or substantially in the form set out in Schedule 4 bearing the legends required by The Depository Trust Company but not the Rule 144A Legend;

"Event of Default" has the meaning set out in Condition 10;

"Extraordinary Resolution" has the meaning set out in Schedule 5;

"Global Note" means a permanent global Bearer Note in or substantially in the form set out in Schedule 3;

"Governmental Agency" means each agency, department, ministry, authority, state, municipality, statutory corporation or other statutory body or juridical entity of the Republic or any political subdivision thereof or therein, now existing or hereafter created, and any bank, corporation or other legal entity 51 per cent. or more of the capital or voting stock or other ownership interest of which is now or hereafter owned or controlled, directly or indirectly, by the Republic or by any state or municipality of the Republic;

"Notes" means notes (whether in bearer or registered form) with a maturity of not less than 30 days and not more than 30 years (or in the case of Floating Rate Notes, 360 months) comprising the euro

- 2 -

medium-term notes constituted by this Trust Deed and for the time
being outstanding or, as the context may require, a specific number
of them and, in the case of a Bearer Series, includes any
replacement Bearer Notes issued pursuant to the Conditions and
Temporary Global Notes and Global Notes;

"Noteholder" and (in relation to a Note) "holder" means the bearer
of a Bearer Note and/or a person in whose name a Registered Note is
registered;

"outstanding" means, in relation to the Notes, all the Notes issued
except (a) those which have been redeemed in accordance with the
Conditions, (b) those in respect of which the date for redemption
has occurred and the redemption moneys (including all interest
accrued on such Notes to the date for such redemption and any
interest payable under the Conditions after such date) have been
duly paid to the Trustee or to the Principal Paying Agent as
provided in Clause 2 and remain available for payment against
presentation and surrender of Bearer Notes and/or Coupons or
surrender of Definitive Registered Notes, as the case may be, (c)
Notes which have become void or those in respect of which claims
have become prescribed, (d) those which have been purchased and
cancelled as provided in the Conditions, (e) those mutilated or
defaced Bearer Notes which have been surrendered in exchange for
replacement Notes, (f) (for the purpose only of determining how many
Bearer Notes are outstanding and without prejudice to their status
for any other purpose) those Bearer Notes alleged to have been lost,
stolen or destroyed and in respect of which replacement Bearer Notes
have been issued, and (g) a Temporary Global Note to the extent that
it shall have been exchanged for a Global Note pursuant to its
provisions and a Global Note to the extent that it shall have been
exchanged for definitive Bearer Notes pursuant to its provisions;
provided that, for the purposes of (i) ascertaining the right to
attend and vote at any meeting of the Noteholders, (ii) the
determination of how many Notes are outstanding for the purposes of
Conditions 10 and 11 and Schedule 5, (iii) the exercise of any
discretion, power or authority which the Trustee is required,
expressly or impliedly, to exercise in or by reference to the
interests of the Noteholders and (iv) the certification (where
relevant) by the Trustee as to whether an Event of Default or
Potential Event of Default is in its opinion materially prejudicial
to the interests of the Noteholders, those Notes which are
beneficially held by, or are held on behalf of, the Republic and not
cancelled shall (unless no longer so held) be deemed not to remain
outstanding;

"Paying Agents" means the banks (including the Principal Paying
Agent) referred to as such in the Conditions or any Successor Paying
Agents in each case at their respective specified offices;

"Potential Event of Default" means an event or circumstance which
could with the giving of notice, lapse of time, issue of a

- 3 -

certificate and/or fulfilment of any other requirement provided for in Condition 10 become an Event of Default;

"Principal Paying Agent" means The Chase Manhattan Bank, N.A. at its specified office or any Successor Principal Paying Agent;

"Programme" means the Euro-Medium Term Note Programme established by and contemplated in the Dealer Agreement;

"Registered Note" means a Note in registered form;

"Registered Series" means a Series of Registered Notes;

"Registrar" mean The Chase Manhattan Bank, N.A. at its specified office or any Successor Registrar;

"Replacement Agent" means, in the case of Bearer Notes, the Paying Agent in London or, in the case of Registered Notes, the Transfer Agent in New York City;

"Rule 144A Legend" means the transfer restriction legend set out in Schedules 1 and 4, respectively, on the Definitive Registered Notes relating to Rule 144A under the Securities Act;

"Securities Act" means the U.S. Securities Act of 1933, as amended;

"Series" means all Notes in the same bearer or registered form and having one or more issue dates and the same maturity date, bearing interest (if any) on the same basis and at the same rate and on terms otherwise identical;

"Specified Currency" means the currency in which any Note is denominated;

"specified office" means, in relation to any Agent, the office identified with its name at the end of the Conditions or any other office approved by the Trustee and notified to the Noteholders pursuant to Clause 6.1.8;

"Successor" means, in relation to the Agents, such other or further person as may from time to time be appointed by the Republic as the relevant Agent, with the written approval of, and on terms approved in writing by, the Trustee and notice of whose appointment is given to Noteholders pursuant to Clause 6.1.8;

"Talons" means the talons for the time being relating to Bearer Notes or, as the context may require, a specific number of them, exchangeable for sheets of Coupons in accordance with, and including any replacement Talons issued pursuant to, the Conditions;

"Tranche" means all Notes of the same Series with the same Issue Date;

- 4 -

"Temporary Global Note" means a temporary global Bearer Note in or substantially in the form set out in Schedule 2;

"this Trust Deed" means this Trust Deed (as from time to time altered in accordance with this Trust Deed) and any other document executed in accordance with this Trust Deed (as from time to time so altered) and expressed to be supplemental to this Trust Deed;

"Transfer Agents" means the banks referred to as such in the Conditions or any Successor Transfer Agents at their respective specified offices;

"trust corporation" means a trust corporation (as defined in the Law of Property Act 1925) or a corporation entitled to act as a trustee pursuant to applicable foreign legislation relating to trustees; and

"Zero Coupon Note" means a Note which does not bear interest.

1.2  **Construction of Certain References**:  References to:-

> 1.2.1  costs, charges, remuneration or expenses include any value added, turnover or similar tax charged in respect thereof;

> 1.2.2  "U.S. dollars" and "U.S.$" are to the lawful currency for the time being of the United States of America; and

> 1.2.3  an action, remedy or method of judicial proceedings for the enforcement of creditors' rights includes references to such action, remedy or method of judicial proceedings in jurisdictions other than England as shall most nearly approximate thereto.

1.3  **Zero Coupon Notes**:  References to Coupons and Couponholders shall be ignored in the case of Zero Coupon Notes.

1.4  **Registered Notes**:  References to Coupons and Couponholders shall be ignored in the case of Registered Notes.

1.5  **Headings**:  Headings shall be ignored in construing this Trust Deed.

1.6  **Clauses and Schedules**:  Reference to Clauses and Schedules are to Clauses and Schedules to this Trust Deed.  The Schedules are part of this Trust Deed and have effect accordingly.

1.7  **Conditions**:  Terms defined in the Conditions have the same meaning herein.

2    **AMOUNT OF THE NOTES AND COVENANT TO PAY**

2.1  **Amount of the Notes**:  The Notes will be issued from time to time in Series, each Series being of a currency and having an initial Issue Date, Maturity Date, Redemption Basis, Interest Rate

and Interest Payment Dates all as determined pursuant to the Dealer Agreement and as specified in the relevant Pricing Supplement. The Republic shall notify (or cause to be notified) the Trustee in writing, prior to the issue of any Series, of each such Series specifying the above details. The Republic shall notify (or cause to be notified) the Trustee in writing, in respect of any Series, of the date of issue of each Temporary Global Note or each DTC Global Note, as the case may be, and of the principal sum to be represented by each Temporary Global Note or each DTC Global Note, as the case may be. In the case of a Series denominated in a currency other than U.S. dollars, Australian Dollars, Canadian Dollars, Danish Krone, Deutsche Marks, Dutch Guilders, ECU, Finnish Markkas, Hong Kong Dollars, Italian Lire, Japanese Yen, New Zealand Dollars, Sterling, Swedish Kronor or Swiss Francs, the Republic shall not issue Notes of any such series without the prior written approval of the Trustee and the Trustee shall be entitled to require the Republic, as a condition of issuing Notes in such Series to provide such opinions, documents, certificates and information relevant in the context as it may request and to amend this Trust Deed in such manner as the Trustee shall consider necessary or expedient to take account of any such Series.

Where legal opinions are given to any Dealer in accordance with the terms of the Dealer Agreement the Republic shall ensure that all such legal opinions shall also be stated to be given for the benefit of the Trustee and that the same shall be sent to the Trustee, signed by the parties responsible, at the same time as they are sent to such Dealer.

The Republic undertakes not to have outstanding at any one time Notes issued by the Republic in the aggregate principal amount of more than U.S.$1,000,000,000 (or its equivalent calculated as provided in the Dealer Agreement) or such larger amount as may be agreed pursuant to Clause 11 of the Dealer Agreement and effected by way of a deed supplemental to this Trust Deed. For the avoidance of doubt, the principal amount of a Zero Coupon Note or other Note issued at a discount shall be calculated by reference to the amortisation yield formula as specified in the Conditions applicable to such Notes as at the relevant date of calculation or, if no formula is specified, the face amount of such Zero Coupon Note or other Note issued at a discount.

2.2 <u>Covenant to Pay</u>: The Republic will by 10 a.m. (New York City time) on any date when any Series of Notes or any Notes become due to be redeemed unconditionally pay to or to the order of the Trustee (in the case of Notes denominated in U.S. dollars) in New York City in U.S. dollars, (in the case of Notes denominated in another currency) in the principal financial centre for such currency in such currency and (in the case of Notes denominated in ECU) in such financial centre and such currency as accords with the Conditions in each case in same day funds the principal amount of the Notes becoming due for redemption on that date and, except in the case of Zero Coupon Notes, will (subject to the Conditions) until such payment (both before and after judgment) unconditionally so pay to

- 6 -

or to the order of the Trustee interest on the principal amount of the Notes outstanding as set out in the Conditions (subject, in the case of Floating Rate Notes, to Clause 2.6) provided that:-

2.2.1 payment of any sum due in respect of the Notes made to the Principal Paying Agent as provided in the Agency Agreement shall, to such extent, satisfy such obligation except to the extent that there is failure in its subsequent payment to the relevant Noteholders or Couponholders under the Conditions; and

2.2.2 a payment made after the due date or pursuant to Condition 10, will be deemed to have been made when the full amount due has been received by the Principal Paying Agent or the Trustee and notice to that effect has been given to the Noteholders (if required under Clause 6.1.6), except, where payment is made to the Principal Paying Agent, to the extent that there is failure in the subsequent payment to the relevant Noteholders or Couponholders under the Conditions.

This covenant shall only have effect each time Notes are issued and outstanding when the Trustee shall hold the benefit of this covenant and the other covenants of the Republic under this Trust Deed on trust for itself, the Noteholders and Couponholders according to their respective interests.

2.3 __Payment in a Chosen Currency__: If, pursuant to Condition 7, a payment will be required to be made in a chosen currency, the Trustee shall:-

2.3.1 after consulting with its financial advisers and without liability on its part and without being obliged to consider the interests of individual Noteholders but after consultation with the Republic, where practicable, choose a component of the EC ECU as the chosen currency as provided in Condition 7, shall forthwith notify the Republic and the Paying Agents thereof and the Republic shall give notice thereof to the Noteholders in accordance with Conditions 7 and 17;

2.3.2 promptly perform the duties required of it under Condition 7;

2.3.3 notify the Republic and the Paying Agents of the amount payable per Note and Coupon in the chosen curency on the relevant due date.

2.4 __Discharge__: Subject to Clause 2.5, any payment to be made in respect of the Notes or the Coupons by the Republic or the Trustee may be made as provided in the Conditions and any payment so made will (subject to Clause 2.5) to that extent be a good discharge to the Republic or the Trustee, as the case may be.

2.5 __Payment after a Default__: At any time after an Event of Default or a Potential Event of Default has occurred the Trustee may:-

- 7 -

2.5.1 by notice in writing to the Republic and the Agents, require the Agents, until notified by the Trustee to the contrary, so far as permitted by any applicable law:-

(i) to act as Agents of the Trustee under this Trust Deed and the Notes on the terms of the Agency Agreement (with consequential amendments as necessary and except that the Trustee's liability for the indemnification, remuneration and expenses of the Agents will be limited to the amounts for the time being held by the Trustee in respect of the Notes on the terms of this Trust Deed) and thereafter to hold all Notes, Coupons and Talons and all moneys, documents and records held by them in respect of Notes, Coupons and Talons to the order of the Trustee; or

(ii) to deliver all Notes, Coupons and Talons and all moneys, documents and records held by them in respect of the Notes, Coupons and Talons to the Trustee or as the Trustee directs in such notice; and

2.5.2 by notice in writing to the Republic require it to make all subsequent payments in respect of the Notes and Coupons to or to the order of the Trustee and not to the Principal Paying Agent.

2.6 <u>Rate of Interest after Default</u>: If any Series of Floating Rate Notes become immediately repayable pursuant to Condition 10, the rate of interest and interest amounts in respect of them shall continue to be calculated in accordance with the Conditions until all such Floating Rate Notes shall have been repaid, except that the rates of interest and interest amounts need not be published.

3    <u>FORM OF THE NOTES: ISSUE OF THE NOTES</u>

3.1 <u>Form of Notes</u>: Each Series of Notes will initially be represented by one or more Temporary Global Notes or one or more DTC Global Notes. Neither any Temporary Global Note nor any Global Note nor any Definitive Registered Note need be security printed. The Bearer Notes, the Coupons and the Talons will be security printed in accordance with applicable legal and stock exchange requirements. The Bearer Notes and the Definitive Registered Notes will be endorsed with the Conditions.

3.2 <u>Signature</u>: The Bearer Notes, the Coupons, the Talons and the Definitive Registered Notes will be signed manually or in facsimile by a duly authorised person designated by the Republic and, the Bearer Notes will be authenticated by or on behalf of the Principal Paying Agent and the Definitive Registered Notes will be authenticated by or on behalf of the Registrar. The Republic may use the facsimile signature of a person who at the date of this Trust Deed is a duly authorised person designated by the Republic even if at the time of issue of any Bearer Notes, Coupons, Talons and Definitive Registered Notes such person is no longer so

- 8 -

authorised. Bearer Notes, Coupons, Talons and Definitive Registered Notes so executed and authenticated will be binding and valid obligations of the Republic.

3.3 **Issue of Registered Notes**: Issue and delivery of the Notes on the relevant Issue Date shall be complete on the issue and delivery of the DTC Global Note(s) by, or at the order of, the Republic.

## 4    STAMP DUTIES AND TAXES

The Republic will pay any stamp, issue, registration, documentary or other taxes and duties, including interest and penalties, payable in the Republic of Argentina, Belgium, Luxembourg, the United Kingdom and the United States in respect of the creation, issue and offering of the Notes of each Series, the Coupons and the Talons and the execution, delivery or performance of this Trust Deed. The Republic will also indemnify the Trustee, the Noteholders and the Couponholders from and against all stamp, issue, registration, documentary or other taxes paid by any of them in any jurisdiction in connection with any action taken by or on behalf of the Trustee or, as the case may be (where entitled under Condition 12 to do so), the Noteholders or the Couponholders to enforce the obligations of the Republic under this Trust Deed, the Notes, the Coupons or the Talons.

## 5    APPLICATION OF MONEYS RECEIVED BY THE TRUSTEE

5.1 **Declaration of Trust**: All moneys received by the Trustee in respect of the Notes or amounts payable under this Trust Deed will, despite any appropriation of all or part of them by the Republic, be held by the Trustee on trust to apply them (subject to Clause 5.2):-

first, in payment of all costs, charges, expenses and liabilities reasonably incurred by the Trustee (including remuneration payable to it) in carrying out its functions under this Trust Deed;

secondly, in payment of any amounts owing in respect of the Notes or Coupons pari passu and rateably; and

thirdly, in payment of the balance (if any) to the Republic for itself.

If the Trustee holds any moneys which represent principal or interest in respect of Notes or Coupons which have become void or claims in respect of which have become prescribed under Condition 9, the Trustee will hold such moneys on these trusts.

5.2 **Accumulation**: If the amount of the moneys at any time available for payment of principal in respect of a Series of Notes under Clause 5.1 is less than 10% of the principal amount of the Notes of that Series then outstanding, the Trustee may, at its discretion, invest such moneys. The Trustee may retain such investments and accumulate the resulting income until the

- 9 -

investments and the accumulations, together with any other funds for the time being under its control and available for such payment, amount to at least 10% of the principal amount of the Notes of such Series then outstanding and then such investments, accumulations and funds (after deduction of, or provision for, any applicable taxes) will be applied as specified in Clause 5.1.

5.3  Investment:  Moneys held by the Trustee may be invested in the name or under the control of the Trustee in any investments or other assets anywhere whether or not they produce income or deposited in its name or under its control at such bank or other financial institution in such currencies as the Trustee may, in its absolute discretion, think fit.  If that bank or institution is the Trustee or a subsidiary, holding or associated company of the Trustee, it need only account for an amount of interest equal to the largest amount of interest payable by it on such a deposit to an independent customer.  The Trustee may at any time vary or transpose any such investments for or into other such investments or convert any moneys so deposited into any other currency, and will not be responsible for any resulting loss, whether by depreciation in value, change in exchange rates or otherwise.

6    COVENANTS

6.1  General:  So long as any Note is outstanding, the Republic will:-

    6.1.1  Notice of Events of Default: notify the Trustee in writing immediately on becoming aware of the occurrence of any Event of Default or Potential Event of Default;

    6.1.2  Information: so far as permitted by applicable law, give to the Trustee such information as it reasonably requires to perform its functions (including, without limitation to the generality of the foregoing, a report in English dated no later than June 30 in each year (beginning with June 30, 1994) which updates, in the same manner as required by the Dealer Agreement for the Dealers, the data contained in the Information Memorandum dated July 27, 1993 issued in connection with the Programme or such other report as may be reasonably acceptable to the Trustee) and shall provide to the Trustee any supplement to such Information Memorandum issued pursuant to the Dealer Agreement;

    6.1.3  Certificate: send to the Trustee, on or before March 31 in each year (beginning with March 31, 1994), and within 14 days after any written request by the Trustee, a certificate of the Republic signed by an Authorised Signatory to the effect that, having made all reasonable enquiries, to the best of the knowledge of such Authorised Signatory, no Event of Default or Potential Event of Default has occurred and is continuing as of the date of such certificate or, if an Event of Default or Potential Event of Default has occurred, the circumstances

- 10 -

surrounding it and the steps that the Republic has taken or proposes to take to remedy it;

6.1.4  **Notices to Noteholders**: prior to the giving of any notice, send to the Trustee a copy of the form of each notice to be given to Noteholders and, once given, two copies of each notice, the form of such notice having previously been approved by the Trustee;

6.1.5  **Further Acts**: so far as permitted by applicable law, regulation, decree or ordinance do such further things as may be necessary in the opinion of the Trustee to give effect to this Trust Deed;

6.1.6  **Notice of Late Payment**: forthwith upon request by the Trustee give notice to the Noteholders of any unconditional payment to the Principal Paying Agent or the Trustee of any sum due in respect of the Notes or Coupons made after the due date for such payment;

6.1.7  **Listing**: if the Notes of any Series are to be listed on or shortly after their issue, use all reasonable endeavours to obtain and maintain the listing of the Notes of such Series on the Luxembourg Stock Exchange. If, however, it is unable to do so, having used such endeavours, or if the maintenance of such listing is agreed by the Trustee to be unduly onerous and the Trustee is satisfied that the interests of the Noteholders would not be thereby materially prejudiced, it will instead use all reasonable endeavours to obtain and maintain a listing of the Notes on such other stock exchange or exchanges as it may (with the written approval of the Trustee) decide;

6.1.8  **Change in Agents**: give or cause to be given prompt notice to the Noteholders in accordance with Condition 17 of any future appointment, resignation or removal of an Agent or of any change by an Agent of its specified office and not make any such appointment or removal or change without the written approval of the Trustee;

6.1.9  **Notes held by Republic, etc.**: send to the Trustee and the Registrar as soon as practicable after being so requested by the Trustee and/or the Registrar a certificate of the Republic, signed by an Authorised Signatory stating the aggregate principal amount of Notes held, at the date of such certificate by or on behalf of the Republic;

6.1.10  **Early Redemption**: give prior notice to the Trustee of any proposed redemption pursuant to Condition 6 and, if it gives notice to Noteholders of its intention to redeem any Notes pursuant to Condition 6(d), make drawings (if appropriate) and redeem Notes accordingly;

- 11 -

6.1.11  <u>Membership of IMF</u>: maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund;

6.1.12  <u>Trustee Approvals</u>: obtain the prior written approval or consent of the Trustee in the circumstances where required to do so under the Dealer Agreement; and

6.1.13  <u>Rule 144A(d)(4) Information Requirement</u>: without prejudice to Clause 6.1.2, for so long as any Notes are outstanding, during any period in which the Republic is neither subject to Section 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended, nor exempt from reporting pursuant to Rule 12g3-2(b) thereunder nor a foreign government as defined in Rule 405 under the Securities Act eligible to register securities under Schedule B of the Securities Act, provide to any holder of such Notes, or to any prospective purchaser of such Notes designated by such holder of Notes, upon request, the information specified in, and meeting the requirement of, Rule 144A(d)(4) under the Securities Act. The Trustee will hold the benefit of this covenant on trust for the holders and the prospective purchasers designated by such holders, from time to time, of such Note;

6.1.14  <u>Notes Issued or Outstanding</u>: send to the Trustee within 14 days after any written request by the Trustee, a certificate of the Republic signed by an Authorised Signatory confirming the aggregate principal amount of Notes issued and/or outstanding under the Programme.

6.2  <u>Banco Central Undertaking</u>: With respect to any exchanged amounts of the Specified Currency made available by Banco Central under Section 2 of the Banco Central Undertaking in connection with payments to be made by the Republic hereunder or under the Notes, the Republic hereby irrevocably instructs Banco Central to deliver such exchanged amounts of such Specified Currency at the places and at the times specified herein and in the Agency Agreement for such payments by the Republic.

7    <u>REMUNERATION AND INDEMNIFICATION OF THE TRUSTEE</u>

7.1  <u>Normal Remuneration</u>: So long as any Note is outstanding the Republic, will pay the Trustee as remuneration for its services as Trustee such sum on such dates in each case as they may from time to time agree. Such remuneration will accrue from day to day from the date of this Trust Deed. However, if any payment to a Noteholder or Couponholder of moneys due in respect of any Note or Coupon is improperly withheld or refused, such remuneration will again accrue as from the date of such withholding or refusal until payment to such Noteholder or Couponholder is duly made.

7.2  <u>Extra Remuneration</u>: At any time after the occurrence of an Event of Default shall have occurred or if the Trustee finds it

- 12 -

expedient or necessary or is requested by the Republic to undertake duties which the Trustee and the Republic agree to be of an exceptional nature or otherwise outside the scope of the Trustee's normal duties under this Trust Deed, the Republic, will pay such additional remuneration as they may agree or, failing agreement as to any of the matters in this Clause 7.2 (or as to such sums referred to in Clause 7.1), as determined by a merchant bank (acting as an expert) selected by the Trustee and approved by the Republic, failing such approval, nominated by the President for the time being of The Law Society of England and Wales, the expenses involved in such nomination and such merchant bank's fee being shared equally between the Trustee and the Republic. The determination of such merchant bank will be conclusive and binding on the Republic, the Trustee, the Noteholders and the Couponholders.

7.3 Expenses: The Republic will also pay or discharge all costs, charges, liabilities and expenses reasonably incurred by the Trustee in relation to the preparation and execution of this Trust Deed and the performance of its functions under this Trust Deed including, but not limited to, legal and travelling expenses and any stamp, registration, documentary or other taxes or duties paid by the Trustee in connection with any legal proceedings reasonably brought or contemplated by the Trustee against the Republic to enforce any provision of this Trust Deed, the Notes or the Coupons.

7.4 Payment of Expenses: All costs, charges, liabilities and expenses incurred and payments made by the Trustee in accordance with the provisions of, or in the lawful performance of its functions under, this Trust Deed will be payable or reimburseable by the Republic on demand by the Trustee.

7.5 Indemnity: The Republic will indemnify the Trustee in respect of all liabilities and expenses reasonably incurred by it or by anyone appointed by it or to whom any of its functions may be delegated by it in the carrying out of its functions and against any loss, liability, cost, claim, action, demand or expense (including, but not limited to, all reasonable costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) which any of them may incur or which may be made against any of them arising out of or in relation to or in connection with its appointment or the exercise of its functions.

7.6 Continuing Effect: Clauses 7.3, 7.4 and 7.5 will continue in full force and effect as regards the Trustee even if it no longer is Trustee.

8    PROVISIONS SUPPLEMENTAL TO THE TRUSTEE ACT 1925

8.1 Advice: The Trustee may act on the opinion or advice of, or information obtained from, any expert and will not be responsible to anyone for any loss occasioned by so acting. Any such opinion, advice or information may be sent or obtained by letter, telex or fax and the Trustee will not be liable to anyone for acting in good

- 13 -

faith on any opinion, advice or information purporting to be conveyed by such means even if it contains some error or is not authentic.

8.2 <u>Trustee to Assume Performance</u>: The Trustee need not notify anyone of the execution of this Trust Deed or do anything to find out if an Event of Default or Potential Event of Default has occurred. Until it has actual knowledge or express notice to the contrary, the Trustee may assume that no such event has occurred and that the Republic is performing all its obligations under this Trust Deed, the Notes and the Coupons.

8.3 <u>Resolutions of Noteholders</u>: The Trustee will not be responsible for having acted in good faith on a resolution purporting to have been passed at a meeting of Noteholders in respect of which minutes have been made and signed even though it is later found that there was a defect in the constitution of such meeting or the passing of such resolution or that the resolution was not valid or binding upon the Noteholders or the Couponholders.

8.4 <u>Certificate</u>: The Trustee may call for and may accept as sufficient evidence of any fact or the expediency of any act a certificate signed by an Authorised Signatory of the Republic as to any fact or matter upon which the Trustee may, in the exercise of any of its functions, require to be satisfied or to have information to the effect that, in the opinion of the person or persons so certifying, any particular act is expedient and the Trustee need not call for further evidence and will not be responsible for any loss occasioned by acting on such a certificate.

8.5 <u>Deposit of Documents</u>: The Trustee may deposit this Trust Deed and any other documents with any banker or banking company or entity whose business includes undertaking the safe custody of documents or with any lawyer or firm of lawyers believed by it to be of good repute and may pay all sums to be paid on account or in respect of any such deposit.

8.6 <u>Discretion of Trustee</u>: The Trustee will have absolute and uncontrolled discretion as to the exercise of its functions and will not be responsible for any loss, liability, cost, claim, action, demand, expense or inconvenience which may result from their exercise or non-exercise.

8.7 <u>Agents</u>: Whenever it considers it expedient in the interests of the Noteholders, the Trustee may, in the conduct of its trust business, instead of acting personally, employ and pay an agent selected by it, whether or not a lawyer or other professional person, to transact or conduct, or concur in transacting or conducting, any business and to do or concur in doing all acts required to be done by the Trustee (including the receipt and payment of money). If the Trustee exercises reasonable care in the selection of such agent, it will not be responsible to anyone for any misconduct or omission on the part of any such agent so employed

- 14 -

by it or be bound to supervise the proceedings or acts of any such agent.

8.8 <u>Delegation</u>: Whenever it considers it expedient in the interests of the Noteholders, the Trustee may delegate to any person on any terms (including power to sub-delegate) all or any of its functions. If the Trustee exercises reasonable care in the selection of such delegate, it will not have any obligation to supervise such delegate or be responsible for any loss, liability, cost, claim, action, demand or expense incurred by reason of any misconduct or default by any such delegate or sub-delegate.

8.9 <u>Forged Bearer Notes, Coupons or Register</u>: The Trustee will not be liable to the Republic or any Noteholder or Couponholder by reason of having accepted as valid or not having rejected any Note or Coupon or entry in the Register, as the case may be, purporting to be such and later found to be forged or not authentic.

8.10 <u>Confidentiality</u>: Unless ordered to do so by a court of competent jurisdiction the Trustee shall not be required to disclose to any Noteholder or Couponholder any confidential financial or other information made available to the Trustee by the Republic.

8.11 <u>Determinations Conclusive</u>: As between itself and the Noteholders and Couponholders, the Trustee may determine all questions and doubts arising in relation to any of the provisions of this Trust Deed. Such determinations, whether made upon such a question actually raised or implied in the acts or proceedings of the Trustee, will be conclusive and shall bind the Trustee, the Noteholders and the Couponholders.

8.12 <u>Currency Conversion</u>: Where it is necessary or desirable to convert any sum from one currency to another, it will (unless otherwise provided hereby or required by law, regulation, decree or ordinance) be converted at such rate or rates, in accordance with such method and as at such date as may reasonably be specified by the Trustee but having regard to current rates of exchange, if available. Any rate, method and date so specified will be binding on the Republic, the Noteholders and the Couponholders.

8.13 <u>Events of Default</u>: The Trustee may determine whether or not a default in the performance or observance by the Republic of any obligation is, in its opinion, continuing and/or whether or not any event is, in its opinion, materially prejudicial to the interests of the Noteholders. Any determination whether or not any event is, in its opinion, materially prejudicial to the interests of the Noteholders will be conclusive and binding upon the Republic, the Noteholders and the Couponholders.

8.14 <u>Payment for and Delivery of Notes</u>: The Trustee will not be responsible for the receipt or application by the Republic of the proceeds of the issue of the Notes or the delivery of Bearer Notes or Definitive Registered Notes to the persons entitled to them.

– 15 –

8.15 <u>Notes Held by the Republic etc.</u>: In the absence of knowledge or express notice to the contrary, the Trustee may assume without enquiry (other than requesting a certificate under Clause 6.1.9) that no Notes are for the time being held by or on behalf of the Republic.

8.16 <u>Clearing Systems</u>: So long as any Global Note or any DTC Global Note is held on behalf of a clearing system, in considering the interests of Noteholders, the Trustee may have regard to any information provided to it by such clearing system or its operator as to the identity (either individual or by category) of its accountholders or participants with entitlements to any such Global Note or DTC Global Note and may consider such interests as if such accountholders or participants were the holder(s) thereof.

9    <u>TRUSTEE LIABLE FOR NEGLIGENCE</u>

Nothing in this Trust Deed shall in any case in which the Trustee fails to show the degree of care and diligence required of it as trustee relieve or indemnify it from or against any liability which would otherwise attach to it in respect of any negligence, default, breach of duty or breach of trust of which it may be guilty.

10    <u>WAIVER AND PROOF OF DEFAULT</u>

10.1 <u>Waiver</u>: The Trustee may, without the consent of the Noteholders or Couponholders and without prejudice to its rights in respect of any subsequent breach, from time to time and at any time, if in its opinion the interests of the Noteholders will not be materially prejudiced thereby, waive or authorise, on such terms as seem expedient to it, any breach or proposed breach by the Republic of this Trust Deed or the Notes or determine that any Event of Default or Potential Event of Default will not be treated as such provided that the Trustee will not do so in contravention of an express direction given by an Extraordinary Resolution or a request made pursuant to Condition 10 or Condition 12. No such direction or request will affect a previous waiver, authorisation or determination. Any such waiver, authorisation or determination will be binding on the Noteholders and the Couponholders and, if the Trustee so requires, will be notified to the Noteholders as soon as practicable.

10.2 <u>Proof of Default</u>: If it is proved that as regards any specified Note or Coupon the Republic has made default in paying any sum due to the relevant Noteholder such proof will (unless the contrary be proved) be sufficient evidence that it has made the same default as regards all other Notes or Coupons which are then payable.

11    <u>TRUSTEE NOT PRECLUDED FROM ENTERING INTO CONTRACTS</u>

No person, whether acting for itself or in any other capacity, will be precluded from becoming the owner of, or acquiring any interest in, holding or disposing of any Note or Coupon or any shares or securities of

- 16 -

the Republic or any Governmental Agency with the same rights as it would
have had if the Trustee were not Trustee or from entering into or being
interested in any contracts or transactions with the Republic or any
Governmental Agency or from acting on, or as depositary or agent for, any
committee or body of holders of any securities of the Republic or any
Governmental Agency and will not be liable to account for any profit.

12  MODIFICATION

The Trustee and the Republic may agree without the consent of the
Noteholders or Couponholders to any modification to this Trust Deed of a
formal, minor or technical nature or to correct a manifest error.  The
Trustee and the Republic may also so agree to any modification to this
Trust Deed which is in the Trustee's opinion not materially prejudicial
to the interests of the Noteholders, but such power does not extend to
any such modification as is mentioned in the proviso to paragraph 19 of
Schedule 5.

13  APPOINTMENT, RETIREMENT AND REMOVAL OF THE TRUSTEE

13.1 Appointment:  The Republic has the power of appointing new
trustees but no person may be so appointed unless previously
approved by an Extraordinary Resolution of Noteholders, provided
that if at any time any of the following shall occur:-

13.1.1  the Trustee shall cease to be a trust corporation and
shall fail to resign after written request therefor by the
Republic or by an Extraordinary Resolution of Noteholders; or

13.1.2  the Trustee shall become incapable of acting, or shall
be adjudged a bankrupt or insolvent, or a receiver or
liquidator of the Trustee or of its property shall be
appointed, or any public officer shall take charge or control
of the Trustee or of its property or affairs for the purpose of
rehabilitation, conservation or liquidation,

then, in any such case, the Republic may, without the consent of the
Noteholders as described above, remove the Trustee and appoint a
successor trustee by written instrument, in duplicate, one copy of
which instrument shall be delivered to the Trustee so removed and
one copy to the successor trustee.

A trust corporation will at all times be a Trustee and may be the
sole Trustee.  Any appointment of a new Trustee will be notified by
the Republic to the Noteholders as soon as practicable.

13.2 Retirement and Removal:  Any Trustee may retire at any time on
giving not less than three months' notice in writing to the Republic
without giving any reason or being responsible for any costs
occasioned by such retirement and the Noteholders may by
Extraordinary Resolution remove any Trustee provided that the
retirement or removal of a sole trust corporation will not become
effective until a trust corporation is appointed as successor

- 17 -

Trustee. If a sole trustee or a sole trust corporation gives notice of retirement or an Extraordinary Resolution is passed for its removal under this Clause 13.2, it will use all reasonable endeavours to procure that another trust corporation is appointed as Trustee.

13.3 Co-Trustees: The Trustee may, despite Clause 13.1, by written notice to the Republic, appoint anyone to act as an additional Trustee jointly with the Trustee:-

  13.3.1 if the Trustee considers such appointment to be in the interests of the Noteholders and/or the Couponholders;

  13.3.2 with the purpose of conforming with a legal requirement, restriction or condition in a jurisdiction in which a particular act is to be performed; or

  13.3.3 for the purpose of obtaining a judgment in any jurisdiction in or the enforcement in any jurisdiction against the Republic of either a judgment already obtained or any provisions of this Trust Deed.

Subject to the provisions of this Trust Deed, the Trustee may confer on any person so appointed such functions as it thinks fit. The Trustee may by written notice to the Republic and such person remove any person so appointed. At the Trustee's request, the Republic will forthwith do all things as may be required to perfect such appointment or removal and it irrevocably appoints the Trustee to be its attorney in its name and on its behalf to do so.

13.4 Competence of a Majority of Trustees: If there are more than two Trustees, the majority of such Trustees will be (provided such majority includes a trust corporation) competent to perform the Trustee's functions.

14   COUPONHOLDERS

14.1 Notices: Neither the Trustee nor the Republic need be given any notice to the Couponholders and the Couponholders will be deemed to have notice of the contents of any notice given to Noteholders.

14.2 Noteholders Assumed to Hold Coupons: Even if it has express notice to the contrary, whenever the Trustee is required to exercise any of its functions by reference to the interests of the Noteholders, the Trustee will assume that (and act as if) the holder of each Bearer Note is the holder of all Coupons relating to such Bearer Note.

15   CURRENCY INDEMNITY

15.1 Currency of Account and Payment: In relation to each Series, the Specified Currency and, in relation to Clause 7.1, U.S. dollars and, in relation to Clauses 7.2, 7.3, 7.4 and 7.5, pounds sterling

- 18 -

(the "Contractual Currency") is the sole currency of account and payment for all sums payable by the Republic under or in connection with this Trust Deed, the Notes and the Coupons, including damages.

15.2 Extent of Discharge: Any amount received or recovered in a currency other than the relevant Contractual Currency (whether as a result of, or of the enforcement of, a judgment or order of a court of any jurisdiction or otherwise) by the Trustee, or any Noteholder or Couponholder in respect of any sum expressed to be due to it from the Republic will only constitute a discharge to the Republic to the extent of the Contractual Currency amount which the recipient is able to purchase with the amount so received or recovered in that other currency on the date of that receipt or recovery (or, if it is not practicable to make that purchase on that date, on the first date on which it is practicable to do so).

15.3 Indemnities: If that Contractual Currency amount is less than the Contractual Currency amount expressed to be due to the recipient under this Trust Deed, the Notes or the Coupons, the Republic will indemnify such recipient against any loss sustained by such recipient as a result. In any event, the Republic will indemnify the recipient against the cost of making any such purchases.

15.4 Indemnities separate: These indemnities constitute a separate and independent obligation from the other obligations in this Trust Deed, will give rise to a separate and independent cause of action, will apply irrespective of any indulgence granted by the Trustee and/or any Noteholder or Couponholder and will continue in full force and effect despite any judgment, order, claim or proof for a liquidated amount in respect of any sum due under this Trust Deed, the Notes and/or the Coupons or any judgment or order. No proof of evidence of any actual loss may be required.

16    COMMUNICATIONS

Any communication shall be by letter or by, telex or by fascimile transmission or by telephone:-

in the case of the Republic, to it at:-

  c/o Subsecretaría de Financiamiento
  Hipolito Yrigoyen 250, Piso 6 - Oficina 627
  1310-Buenos Aires

  Telephone no.: (541) 349-6242

  Fax no.: (541) 349-6080

  Attention: Deuda Externa

- 19 -

and in the case of the Trustee, to it at:-

    Woolgate House
    Coleman Street
    London EC2P 2HD

    Telephone no.:  (44-202) 347-931

    Telex no.:  8954681 CMBG

    Fax no.:  (44-202) 347-945/6

    Attention: Manager, Corporate Trust Operations

Any such communication will take effect, in the case of delivery at the time of delivery, in the case of telex or facsimile transmission, at the time of dispatch or, in the case of telephone, when made. Any communication not by letter shall be confirmed by letter but failure to send or receive any the letter of confirmation shall not invalidate the original communication.

Except as otherwise specified herein or as the Trustee may otherwise agree, all notices, communications and other documents to be supplied by or on behalf of the Republic pursuant to the Notes or this Trust Deed shall be in the English language, except for Argentine laws, decrees, regulations and resolutions and other official actions of the Republic and Governmental Agencies, which may be in the Spanish language if accompanied by a certified English transaction thereof. In the event of any discrepancy between the English version and the Spanish version of any of the foregoing documents (other than those which are not required to be in the English language as provided in the preceding sentence) the English version shall govern.

17   GOVERNING LAW AND JURISDICTION

    17.1 Governing Law: This Trust Deed shall be governed by and construed in accordance with English law, except that all such matters governing the power and authority of the Republic to issue Notes shall be governed by the law of the Republic of Argentina.

    17.2 Jurisdiction: The Republic irrevocably submits to the jurisdiction of the courts of England; any New York State or Federal court sitting in the Borough of Manhattan, New York City; and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Notes, the Coupons or the Trust Deed (a "Related Proceeding"). The Republic waives any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic also agrees that a final non-appealable judgment in any such Related Proceeding (a "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other

- 20 -

courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

17.3 Appointment of Process Agent: The Republic agrees that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nacion Argentina, presently located at 299 Park Avenue, New York, NY 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose and (ii) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in England may be made upon Banco de la Nacion Argentina, presently located at Longbow House, 14/20 Chiswell Street, London EC1Y 4TD, England, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint a successor agent to act as its agent for such purpose.

17.4 Waiver of Immunity: To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action, or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the State Immunity Act 1978 to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that the foregoing waiver shall not be effective (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of the Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service; and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Trustee, a Noteholder or a Couponholder to enforce or execute a Related Judgment. The waiver of immunities referred to

- 21 -

herein constitutes only a limited and specific waiver for the purpose of the Notes, the Coupons and this Trust Deed and under no circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Notes, the Coupons or this Trust Deed.

18  COUNTERPARTS

This Deed may be executed in any number of counterparts, each of which shall be deemed an original.

SCHEDULE 1

FORM OF DEFINITIVE BEARER NOTE

On the front:

[FOR PURPOSES OF SECTIONS 1271 ET. SEQ. OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED, THIS NOTE HAS ORIGINAL ISSUE DISCOUNT OF [currency][amount] PER EACH [currency][amount] OF PRINCIPAL AMOUNT OF THIS NOTE; THE ISSUE PRICE OF THIS NOTE IS [currency][amount]; THE ISSUE DATE IS [date]; AND THE YIELD TO MATURITY (COMPOUNDED [semi-annually]).](*)

| | | |
|---|---|---|
| Series Number: | [ | ] |
| Form of Notes: | Bearer | |
| Specified Currency: | [ | ] |
| Authorised Denomination(s): | [ | ] |
| Principal Amount: | [ | ] |
| Calculation Amount: | [ | ] |
| Issue Price: | [ | ] |
| Issue Date: | [ | ] |
| Maturity Date (Fixed Rate Note or Zero Coupon Note): | [ | ] |
| Redemption Month (Floating Rate Note): | [month and year] | |
| Interest Basis: | [ | ] |
| Interest Commencement Date: | [ | ] |
| Interest Rate(s) (Fixed Rate Note, including Step-up Note and Step-down Note): | [ | ] |
| Fixed Rate Day Basis (Fixed Rate Note): | [ | ] |
| Reference Date(s) (Fixed Rate Notes): | [ | ] |

---

(*) Legend to be borne by any definitive Bearer Note issued with "original issue discount" for U.S. federal income tax purposes.

- 23 -

Initial Broken Amount (Fixed Rate Note):              [                           ]

Final Broken Amount (Fixed Rate Note):                [                           ]

Long Maturity Notes (as defined in Condition 7(e)):   [                           ]

FRN Day Basis (Floating Rate Note):                   [                           ]

Specified Number of Months (Floating Rate Note):      [                           ]

Benchmark (Floating Rate Note):                       [LIBOR, LIBID, LIMEAN or other benchmark]

Relevant Financial Centre (Floating Rate Notes):      [London if LIBOR, LIBID or LIMEAN Notes, if another benchmark, specify centre]

Spread (Floating Rate Note):                          [  ] per cent. per annum

Spread Multiplier (Floating Rate Note):               [  ] per cent.

Interest Determination Date (Floating Rate Note):     [                           ]

Primary Source for Interest Rate Quotations (Floating Rate Note):   [Screen          page, section or part/Reference Banks]

Relevant Screen Page (Floating Rate Note):            [                           ]

Reference Banks (Floating Rate Note):                 [                           ]

Minimum Interest Rate (Floating Rate Note):           [                           ]

Maximum Interest Rate (Floating Rate Note):           [                           ]

Unmatured Coupons to become void upon the date for redemption of the relative Bearer Note (Floating Rate Note, Long Maturity Rate Note):   [yes/no]

Amortisation Yield (Zero Coupon Note):                [  ] per cent. per annum

- 24 -

| | |
|---|---|
| Reference Price (Zero Coupon Note): | [                    ] |
| Redemption at Republic's option permitted (pursuant to Condition 6(d)): | [yes/no - if yes, specify minimum or maximum amounts to be redeemed, redemption dates, applicable premia] |
| Redemption at Noteholders' option permitted (pursuant to Condition 6(e)): | [yes/no - if yes, specify redemption dates, applicable premia] |
| Entitlement to payments postponed until the following business day if date for payment does not fall on a business day | [yes/no] |
| Details of any additions or variations to the terms and conditions of the Notes: | [                    ] |
| Details of any additional or alternative clearing system approved by the Republic, the Trustee and Registrar, if applicable and the Principal Paying Agent: | [                    ] |
| Listed/Unlisted: | [                    ] |
| Other relevant terms of such Notes: | [                    ] |
| Common Code: | [                    ] |
| ISIN: | [                    ] |
| Talons for future Coupons to be attached to definitive Notes: | [                    ] |
| Interest Payment Date(s) on which the Talons (if any) mature: | [                    ] |

- 25 -

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO
LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS, INCLUDING THE
LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287(a) OF THE INTERNAL
REVENUE CODE.

Denomination        ISIN        Series/Tranche        Certificate Number

[Medium-term note issued in accordance with regulations made under
Section 4 of the Banking Act 1987.](*)

[The Republic of Argentina is not authorised under the Banking Act
1987.](*)

THE REPUBLIC OF ARGENTINA

[SHORT TITLE OF NOTES]
Issued under a
EURO MEDIUM-TERM NOTE PROGRAMME

This Note forms one of the Series of Notes referred to above issued by
The Republic of Argentina (the "Republic"), designated as specified in
the title hereof, and constituted by the Trust Deed referred to on the
reverse hereof. The Notes are subject to, and have the benefit of, the
Trust Deed and the terms and conditions (the "Conditions") endorsed
hereon.

The Republic, for value received, hereby promises to pay to the bearer of
this Note the Principal Amount specified above or, (if this Note is
specified above to be Zero Coupon), the Amortised Face Amount in
accordance with Condition 6(c) on the Maturity Date stated above (if this
Note is specified above to be Fixed Rate or Zero Coupon) or on the
Interest Payment Date (as defined in Condition 5(II)(a)) falling in the
Redemption Month stated above (if this Note is specified above to be
Floating Rate) or on such earlier date as that principal sum or other sum
may become repayable in accordance with the Conditions) and (unless this
Note is specified above to be Zero Coupon) to pay interest on the
Principal Amount stated above from the Issue Date stated above (unless
there is stated above an Interest Commencement Date that is different
from the Issue Date in which case interest shall be payable from the
Interest Commencement Date) at the Interest Rate stated above (if this
Note is specified above to be Fixed Rate) or at the rates determined in
accordance with Condition 5(II) (if it is specified above to be Floating
Rate) or in the amounts determined in accordance with Condition 5(V) (if
it is specified above to be Step-up or Step-down) in arrear on the dates
for payment provided for in the Conditions, together with such other sums
and additional amounts (if any) as may be payable under the Conditions
until payment of such Principal Amount or other sums and additional
amounts has been made or duly provided for.

_____

(*) Delete if Note is not denominated in Sterling.

This Note shall not become valid or obligatory for any purpose until authenticated by or on behalf of the Principal Paying Agent.

IN WITNESS WHEREOF the Republic has caused this Note to be signed on its behalf.

Dated as of the Issue Date stated above.

THE REPUBLIC OF ARGENTINA


By: _____
         Authorised Signatory


This Note is authenticated without recourse or warranty by or on behalf of the Principal Paying Agent.


By: _____
         Authorised Signatory

# Exhibit B

Dated May 26, 1998

**THE REPUBLIC OF ARGENTINA**

**- and -**

**CHASE MANHATTAN TRUSTEES LIMITED**

---

**TENTH SUPPLEMENTAL TRUST DEED**
**relating to**
**THE REPUBLIC OF ARGENTINA**
**U.S.$11,000,000,000 Euro Medium-Term Note Programme**
**and the issue of**
**EURO 750,000,000 Interest Strip Notes due 2028**

---

**LINKLATERS & PAINES**
**1345 Avenue of the Americas**
**New York, NY 10105**
**Tel: (212) 424 9000**
**Ref: CFC/CZT/OCS**

THIS TENTH SUPPLEMENTAL TRUST DEED is made on May 26, 1998 BETWEEN:-

(1) **THE REPUBLIC OF ARGENTINA** (the "Republic"); and

(2) **CHASE MANHATTAN TRUSTEES LIMITED** (the "Trustee", which expression, where the context so admits, includes any other trustee for the time being under this Trust Deed).

WHEREAS:-

(A) The Republic and the Trustee are parties to a Trust Deed dated July 27, 1993 (as amended from time to time, the "Trust Deed") in respect of the Republic's U.S.$11,000,000,000 Euro Medium-Term Note Programme (the "Programme").

(B) Pursuant to a Dealer Confirmation dated May 26, 1998 the Republic has agreed to issue Euro 750,000,000 Interest Strip Notes due 2028 (the "Series 61 Notes") pursuant to the Programme.

(C) Clause 12 of the Trust Deed empowers the Trustee and the Republic to agree without the consent of the Noteholders or Couponholders to any modification of the Trust Deed which is of a formal, minor or technical nature or which is in the Trustee's opinion not materially prejudicial to the interests of the Noteholders. The Republic and the Trustee have therefore agreed to amend the Trust Deed in the manner described herein for the purposes of the issue of the Series 61 Notes.

(D) This Supplemental Trust Deed is supplemental to the Trust Deed.

NOW THIS DEED WITNESSES AND IT IS HEREBY DECLARED as follows:-

**1    INTERPRETATION**

1.1   Interpretation: In this Deed, terms defined in the Trust Deed shall, unless defined otherwise herein, have the same meanings herein. Except as expressly provided or where the context requires otherwise, references in the Trust Deed to "Notes" and "Registered Notes" shall include Principal Only Notes and Interest Only Notes (each as defined below), references to the "Register" shall include the Principal Only Register and the Interest Only Register (each as defined below) and the Principal Only Notes and each Class of Interest Only Notes (as defined in the Conditions) shall be treated as a separate Series of Notes.

1.2   Definitions: In addition, unless the context requires otherwise, the following expressions have the following meanings for the purposes of the issue of the Series 61 Notes:-

"Conditions" means the terms and conditions set out in Schedule 1, as modified by the provisions of the DTC Global Notes. Any reference to a particularly numbered Condition shall be construed accordingly;

"DTC Global Note" means any DTC Restricted Global Note and any DTC Unrestricted Global Note issued in respect of the Series 61 Notes;

"DTC Restricted Global Note" means a definitive global Registered Note in or substantially in the form set out in Schedule 4 hereto and bearing the Rule 144A Legend and the legends required by The Depository Trust Company;

"DTC Unrestricted Global Note" means a definitive global Registered Note in or substantially in the form set out in Schedule 4 hereto bearing the legends required by The Depository Trust Company but not the Rule 144A Legend;

Draft 1440326/2.1/26 May 1998

1

"Interest Only Note" means a definitive note which is in registered form in or substantially in the form set out in Schedule 3, issued in the name of the holder(s) of the right to be paid interest and includes any replacement Interest Only Notes issued pursuant to the Conditions and any DTC Global Note;

"Interest Only Registrar" means The Chase Manhattan Bank at its specified office or any Successor Interest Only Registrar;

"Principal Only Note" means a definitive note which is in registered form in or substantially in the form set out in Schedule 2, issued in the name of the holder(s) of the right to repayment of principal and includes any replacement Principal Only Notes issued pursuant to the Conditions and any DTC Global Note; and

"Principal Only Registrar" means The Chase Manhattan Bank at its specified office or any Successor Principal Only Registrar.

1.3  **Headings:** Headings shall be ignored in construing this Deed.

1.4  **Clauses and Schedules:** Reference to Clauses and Schedules are to Clauses of and Schedules to this Deed. The Schedules are part of this Deed and have effect accordingly.

1.5  **Conditions:** Terms defined in the Conditions have the same meaning herein.

## 2   AMENDMENTS

The following amendments shall be made to the Trust Deed for the purposes of the issue of the Series 81 Notes only:

2.1  **Programme Limit:** For the avoidance of doubt, only the Principal Only Notes shall be counted in the calculation of the principal amount of Notes outstanding under the Programme. The Interest Only Notes shall not be so counted.

2.2  **Application of Provisions:** The Trust Deed shall be amended so that the following shall be included as sub-clause 1.9:

"**Application of Provisions:** Unless the Trustee in its absolute discretion shall determine otherwise for any purpose, all the provisions of this Trust Deed shall apply separately to the Principal Only Notes and each Class of Interest Only Notes and the expressions "Notes", "Noteholders", "holders", and "Conditions" as used herein shall be construed accordingly."

2.3  **Covenant to Pay:** Clause 2.2 of the Trust Deed will be amended to read as follows:

"The Republic will, by 10 a.m. (New York City time) on any date when principal or interest becomes due to be paid unconditionally, pay to or to the order of the Trustee in EURO, by transfer to a EURO account specified by the Trustee in same day funds, the principal amount or the interest amount becoming due for payment on that date provided that:-

2.3.1  payment of any sum due in respect of the Notes made to the Principal Paying Agent as provided in the Agency Agreement shall, to such extent, satisfy such obligation except to the extent that there is failure in its subsequent payment to the holders of the relevant Notes under the Conditions; and

2.3.2  a payment made after the due date or pursuant to Condition 10, will be deemed to have been made when the full amount due has been received by the Principal Paying Agent or the Trustee and notice to that effect has been given to the holders of the relevant Notes (if so requested by the Trustee), except, where payment is made to the Principal Paying Agent, to the extent that there is failure in the subsequent payment to the holders of the relevant Notes under the Conditions.

The Trustee shall hold the benefit of this covenant and the other covenants of the Republic under the Trust Deed on trust for itself and the holders of the relevant Notes according to their respective interests."

2.4  Forms of Notes: The forms of Notes for the Series 61 Notes should be those set out in Schedules 2 to 4.

## 3  TRUST DEED

The Trust Deed and this Deed shall henceforth be read and construed together as one deed and the Trust Deed shall be modified accordingly. Save as expressly provided herein, the Trust Deed shall remain in full force and effect.

## 4  GOVERNING LAW

This Deed shall be governed by, and construed in accordance with, English law and Clauses 17.2, 17.3, 17.4 and 18 of the Trust Deed shall apply to this Deed as if set out in full herein and as though references therein to the Trust Deed were references to this Deed.

## 5  COUNTERPARTS

This Deed may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## SCHEDULE 1

## TERMS AND CONDITIONS OF THE SERIES 61 NOTES

The Notes (as defined below) are constituted by a Trust Deed dated July 27, 1993 as supplemented from time to time by various supplemental trust deeds including a tenth Supplemental Trust Deed dated May 26, 1998 (together, the "Trust Deed"), and made between the Republic of Argentina (the "Republic") and Chase Manhattan Trustees Limited (the "Trustee", which expression shall include all persons for the time being the trustee or trustees under the Trust Deed) as trustee for the Noteholders (as defined below). These terms and conditions include summaries of, and are subject to, the detailed provisions of the Trust Deed, which includes the forms of the Notes, the interest coupons (if any) relating to them (the "Coupons"), the talons (if any) for further coupons (the "Talons") and the principal coupons (if any) relating to them (the "Principal Coupons"). Copies of the Trust Deed and of the Agency Agreement dated July 27, 1993, as supplemented from time to time by various supplemental agency agreements including a ninth Amendment Agreement dated May 26, 1998 (together the "Agency Agreement") and made between the Republic, the Trustee, The Chase Manhattan Bank, N.A., London branch as principal paying agent (the "Principal Paying Agent") and as calculation agent (the "Calculation Agent"), Chase Manhattan Bank Luxembourg S.A. as paying agent (together with the Principal Paying Agent, the "Paying Agents") and as European transfer agent and The Chase Manhattan Bank, N.A., New York branch as registrar (the "Registrar") and as New York transfer agent (together with the European transfer agent, the "Transfer Agents") are available for inspection at the specified offices of each of the Trustee, the Registrar and the Paying Agents. The Paying Agents, the Calculation Agent, the Registrar and the Transfer Agents are together referred to herein as the "Agents". The Noteholders (as defined below), the holders of the Coupons (if any) and, where applicable in the case of interest bearing Notes in bearer form, the Talons (the "Couponholders") and the holders of Principal Coupons (the "Principal Couponholders") appertaining to the payment of principal in instalments pursuant to any amortisation provisions (the "Amortisation Provisions") specified on the face of the Notes of any Series as applying to such Notes are entitled to the benefit of, are bound by and are deemed to have notice of all of the provisions of the Trust Deed and are deemed to have notice of those applicable to them of the Agency Agreement.

1.    **Form, Currency, Denomination, Title and Pricing Supplement**

*(a) Form*

Each Series of Notes of which this Note forms part (in these Conditions, the "Notes") are issued either in bearer form ("Bearer Notes") in the Principal Amount of an Authorised Denomination or, in registered form ("Registered Notes") in the Principal Amount of an Authorised Denomination, as defined in Condition 1(b)), or in registered form ("Registered Notes") in the Principal Amount of an Authorised Denomination. The bearer or registered form of each Note will be specified on its face, and these Conditions must be read accordingly. A definitive Note will be issued to each holder of Registered Note(s) in respect of its registered holding or holdings (each a "Definitive Registered Note"). Each Definitive Registered Note will be numbered serially with an identifying number which will be recorded in the register (the "Register") which the Republic shall procure to be kept by the Registrar. The Principal Amount of each Note will be specified on its face.

The right to be paid interest on a Registered Note may be separated irrevocably from the right to be repaid principal, as specified on its face. If so separated, the entitlement of the holder to be paid the interest on any specified date shall be represented by an Interest Note in registered form (each an "Interest Only Note" and, together with all other Interest Only Notes in respect of the same specified date, a "Class of Interest Only Notes") and the entitlement of the holder to be repaid the principal on any specified date shall be represented by a principal Note in registered form (a "Principal Only Note"). The Interest Only Notes and Principal Only Notes shall be issued in separate definitive Notes or in a single Registered Note, each of which will be numbered serially with an identifying number. Holders of each Class of Interest Only Notes will be recorded in the interest register (the "Interest Register") and holders of the Principal Only Notes will be recorded in the principal register (the "Principal Register"), in each case which the Republic shall procure to be kept by the Registrar. The Principal Amount of each Principal Only Note and the Face Amount of each

Draft 1440325/2.1/28 May 1998                                    4

Interest Only Note will be specified on its face. Except as expressly provided or where the context requires otherwise, references in these Conditions to "Notes" and "Registered Notes" shall include Principal Only Notes and Interest Only Notes.

This Note is a Fixed Rate Note, a Floating Rate Note, a Zero Coupon Note, a Step-up Note or a Step-down Note (depending upon the Interest Basis specified on its face). All payments in respect of this Note shall be made in the Specified Currency specified on its face (subject, where the currency so shown is ECU, to the provisions of Conditions 7(f)).

Bearer Notes are issued with Coupons (and, where appropriate in the case of interest bearing Bearer Notes, a Talon) attached, save in the case of a Zero Coupon Note in which case references to interest (other than in relation to interest due after its Maturity Date), Coupons and Talons in these Conditions are not applicable. Bearer Notes to which the Amortisation Provisions are specified on the face of such Bearer Notes as applying (which may not be issued as Zero Coupon Notes) are issued with one or more Principal Coupons attached.

(b) *Denomination*

"Authorised Denomination" means—

(i) in the case of a Bearer Note, the denomination or denominations specified on the face of such Note. Bearer Notes of one Authorised Denomination may not be exchanged for Bearer Notes of another Authorised Denomination (if any); or

(ii) in the case of a Registered Note which is resold pursuant to Rule 144A under the Securities Act, U.S.$250,000 (or its equivalent rounded upwards as specified on the face of such Note) and higher integral multiples of U.S.$50,000 (or its equivalent as aforesaid) and in the case of a Registered Note sold pursuant to Regulation S under the Securities Act, U.S.$10,000 (or its equivalent as aforesaid) and integral multiples thereof, or, in either case, the higher denomination or denominations specified on the face of such Note.

Any minimum Authorised Denomination of a Note required by any law or directive or regulatory authority in respect of the currency of issue of such Note shall be such as applied on or prior to the Issue Date (as defined in Condition 5(III)) specified on the face of such Note.

(c) *Title*

Title to the Bearer Notes, the Principal Coupons appertaining thereto (if any), the Coupons appertaining thereto and, where applicable, the Talons appertaining thereto shall pass by delivery. Title to the Registered Notes shall pass by registration in the Register, the Interest Register or the Principal Register, as the case may be. Except as ordered by a court of competent jurisdiction or as required by law, the holder of any Note, Principal Coupon, Coupon or Talon shall be deemed to be and may be treated as the absolute owner of such Note, Principal Coupon, Coupon or Talon, as the case may be, for the purpose of receiving payment thereof or on account thereof and for all other purposes, whether or not such Note, Principal Coupon, Coupon or Talon shall be overdue and notwithstanding any notice of ownership, theft or loss thereof or any writing thereon made by anyone.

In these Conditions, "Noteholder" and, in relation to a Note, Principal Coupon, Coupon or Talon, "holder", means the bearer of any Bearer Note, Principal Coupon, Coupon or Talon, and the person in whose name a Registered Note is registered (as the case may be), "Series" means Notes which have identical terms and conditions, other than in respect of Interest Commencement Dates (as defined in Condition 5(III)), Issue Dates and related matters, and "Tranche" means, in relation to a Series, those Notes of such Series which have the same Issue Date.

(d) *Pricing Supplement*

References in these Conditions to terms specified on the face of a Note shall be deemed to include references to terms specified in the applicable pricing supplement issued in respect of a Tranche which includes such Note (each a "Pricing Supplement").

2.    Transfers of Registered Notes and Issue of Definitive Registered Notes

(a)  *Transfer of Registered Notes*

A Registered Note may be transferred in whole or in part in an Authorised Denomination upon the surrender of the Definitive Registered Note issued in respect of the Registered Note to be transferred, together with the form of transfer endorsed on it duly completed and executed, at the specified office of the Registrar or any Transfer Agent. In the case of a transfer of part only of a Registered Note a new Definitive Registered Note in respect of the balance not transferred will be issued to the transferor. Each new Definitive Registered Note to be issued upon transfer of Registered Notes will, within three business days of receipt of such form of transfer, be mailed at the risk of the holder entitled to the new Definitive Registered Note to such address as may be specified in such form of transfer.

(b)  *Transfer Free of Charge*

Registration of transfer will be effected without charge by or on behalf of the Republic, the Registrar or the Transfer Agents, but upon payment (or the giving of such indemnity as the Registrar or the relevant Transfer Agent may require) in respect of any tax or other governmental charges which may be imposed in relation to it.

(c)  *Closed Periods*

No Noteholder may require the transfer of a Registered Note to be registered (i) during the period of 15 days ending on the due date for any payment of principal or Amortised Face Amount (as determined in accordance with Condition 6(c), 6(g) or 6(h)) or, in respect of Interest Only Notes, interest on that Note, (ii) during the period of 60 days prior to any date on which Notes of the relevant Series may be redeemed by the Republic at its option pursuant to Condition 6(d) or (iii) after any such Note has been drawn for redemption in whole or in part.

(d)  *Regulations*

All transfers of Registered Notes and entries on the Register, the Principal Register or the Interest Register, as the case may be, will be made subject to the detailed regulations concerning transfers of Registered Notes scheduled to the Agency Agreement. The regulations may be changed by the Republic, with the prior written approval of the Trustee and the Registrar. A copy of the current regulations will be mailed by the Registrar to any holder of a Registered Note who requests a copy.

3.   Status

The Notes, Principal Coupons (if any) and Coupons of all Series constitute (subject to Condition 4) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The full faith and credit of the Republic has been pledged for the due and punctual payment of the principal or Amortised Face Amount of, or interest on, the Notes and the performance of the covenants in the Notes and the Trust Deed. The payment obligations of the Republic under the Notes, Principal Coupons (if any) and the Coupons shall (subject to Condition 4) at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in Condition 4).

4.   Negative Pledge and Covenants

(a)  *Negative Pledge*

So long as any Note, Principal Coupon or Coupon remains outstanding (as defined in the Trust Deed), save for the exceptions set out in Condition 4(b), the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Notes, the Principal Coupons (if any), the Coupons and the Trust Deed either (i) are secured equally and rateably therewith, or (ii) have the benefit of such other

security, guarantee, indemnity or other arrangement as the Trustee in its absolute discretion shall deem to be not materially less beneficial to the Noteholders or as shall be approved by an Extraordinary Resolution (as defined in the Trust Deed) of the Noteholders (including, if the Amortisation Provisions are specified on the face of Bearer Notes as applying to such Notes, the Principal Couponholders).

(b) *Exceptions to Negative Pledge*

The following exceptions apply to the Republic's obligations under Condition 4(a):-

(i) any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii) any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii) any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralised bonds issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

(iv) any Lien in existence on the date of the Trust Deed;

(v) any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public External Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi) any Lien on any of the Par and Discount Bonds; and

(vii) any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

(c) *Definitions*

"External Indebtedness" means obligations (other than the Notes) for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness shall constitute External Indebtedness.

"Public External Indebtedness" means any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, bonds, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law

No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92, (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93, (h) Bonos del Tesoro a Mediano Plazo en Dólares Estadounidenses issued under Law No. 24,156 and Decree No. 340/96 and (i) Bonos de Consolidación issued under Law No. 24,411 and Decree No. 726/97; (ii) any indebtedness issued in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to in (1) above.

#### (d) Covenants

In the Trust Deed, the Republic has given certain covenants to the Trustee, including a covenant that the Republic will maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund (the "IMF").

### 5.    (I)  Interest on Fixed Rate Notes

#### (a) Interest Rate and Accrual

Each Fixed Rate Note (i) bears interest on its Calculation Amount (as defined in Condition 5(III)) from the Interest Commencement Date in respect thereof at the rate per annum (expressed as a percentage) equal to the Interest Rate specified on the face of such Note payable in arrear on each Reference Date or Reference Dates specified on the face of such Note in each year and on the Maturity Date specified on the face of such Note if that date does not fall on a Reference Date or (ii) bears interest as otherwise specified on the face of such Note.

Unless otherwise specified on the face of such Note, the first payment of interest will be made on the Reference Date next following such Interest Commencement Date (and if the Interest Commencement Date is not a Reference Date, will amount to the Initial Broken Amount specified on the face of such Note), unless the Maturity Date falls before the date on which the first payment of interest would otherwise be due. If the Maturity Date is not a Reference Date, interest from the preceding Reference Date (or from the Interest Commencement Date, as the case may be) to the Maturity Date will amount to the Final Broken Amount specified on the face of such Note.

Interest will cease to accrue on each Fixed Rate Note on the due date for redemption or, if the Amortisation Provisions are specified on the face of the Notes as applying to such Notes, on each principal amount on the due date for payment thereof unless, upon due presentation (where presentation is required for payment), payment of principal is improperly withheld or refused. Any overdue principal of and, to the extent permitted by law, overdue interest on any Fixed Rate Note shall bear interest (before and after judgment), payable on demand, for each day such payment is due at the rate and in the manner provided in this Condition 5(I) to the Relevant Date (as defined in Condition 8).

#### (b) Calculations

Interest in respect of a period of less than one year will be calculated on the Fixed Rate Day Basis specified on the face of each Fixed Rate Note.

**(II)  Interest on Floating Rate Notes**

*(a)  Interest Payment Dates*

Each Floating Rate Note bears interest on its Calculation Amount from the Interest Commencement Date in respect thereof and such interest will be payable in arrear on each date ("Interest Payment Date") which (save as mentioned in these Conditions) falls the number of months specified as the Interest Period on the face of the Note (the "Specified Number of Months") after the preceding Interest Payment Date or, in the case of the first Interest Payment Date, after the Interest Commencement Date (and which corresponds numerically with such preceding Interest Payment Date or Interest Commencement Date, as the case may be). If any Interest Payment Date would otherwise fall on a day which is not a Relevant Business Day (as defined below), it shall be postponed to the next day which is a Relevant Business Day unless it would thereby fall into the next calendar month. In any such case as aforesaid or if there is no date in the relevant month which corresponds numerically with the preceding Interest Payment Date or, as the case may be, the Interest Commencement Date, then (i) the Interest Payment Date shall be brought forward to the immediately preceding Relevant Business Day and (ii) each subsequent Interest Payment Date shall be the last Relevant Business Day of the month which is the last of the Specified Number of Months after the month in which the preceding Interest Payment Date or, as the case may be, the Interest Commencement Date shall have fallen.

The period beginning on the Interest Commencement Date and ending on the first Interest Payment Date and each successive period beginning on an Interest Payment Date and ending on the next succeeding Interest Payment Date is herein called an "Interest Period".

Interest will cease to accrue on each Floating Rate Note from the due date for redemption thereof or, if the Amortisation Provisions are specified on the face of the Notes as applying to such Notes, on each principal amount on the due date for payment thereof unless, upon due presentation (where presentation is required for payment), payment of principal is improperly withheld or refused. Any overdue principal of and, to the extent permitted by law, overdue interest on any Floating Rate Note shall bear interest (before and after judgment), payable on demand, for each day such payment is due at the rate and in the manner provided in this Condition 5(II) and the Trust Deed to the Relevant Date.

*(b)  Rate of Interest*

Each Floating Rate Note bears interest at a variable rate determined by reference to a benchmark as specified on the face of such Note, being LIBOR (in which case such Note will be a LIBOR Note), LIBID (in which case such Note will be a LIBID Note), LIMEAN (in which case such Note will be a LIMEAN Note) or in any case such other benchmark as is specified on the face of such Note ("Benchmark").

Such variable rate may be adjusted by adding or subtracting the Spread (if any) specified on the face of such Note and/or by multiplying by the Spread Multiplier (if any) specified on the face of such Note. The "Spread" is the percentage rate per annum specified on the face of such Note as being applicable to the Relevant Rate (as defined in Condition 5(III)) for such Note and the "Spread Multiplier" is the percentage specified on the face of such Note as being applicable to the Relevant Rate for such Note.

The rate of interest ("Rate of Interest") payable from time to time will be determined by the Calculation Agent on the basis of the following provisions and shall be subject to Condition 5(II)(c), if applicable:—

(I)  At or about the Relevant Time (as defined in Condition 5(III)) on the relevant Interest Determination Date (as defined in Condition 5(III)) in respect of each Interest Period, the Calculation Agent will:—

(A)  In the case of a Floating Rate Note which specifies on its face that the Primary Source for Interest Rate Quotations shall be derived from a specified page, section or other part of a particular information service (a "Relevant Screen Page" as specified on the face of such Note), determine the Rate of Interest for such Interest Period which shall, subject as provided below, be (x) the Relevant Rate so appearing in or on that Relevant Screen Page (where such Relevant Rate is a composite quotation or interest rate per annum or is customarily supplied by one entity) or (y) the arithmetic mean (rounded, if necessary, to the next one-hundred

thousandth of a percentage point) of the Relevant Rates of the persons at that time whose Relevant Rates so appear in or on that Relevant Screen Page, in any such case in respect of Specified Currency deposits for a period equal to the duration of such Interest Period and as adjusted by the Spread or Spread Multiplier (if any); and

(B) in the case of a Floating Rate Note which specifies on its face that the Primary Source of Interest Rate Quotations shall be the Reference Banks shown on the face thereof and in the case of Floating Rate Notes falling within Condition 5(II)(*b*)(I)(A) but in respect of which no Relevant Rate appears at or about such Relevant Time or, as the case may be, which are to be determined by reference to quotations of persons appearing in or on the Relevant Screen Page but in respect of which less than two Relevant Rates appear at or about such Relevant Time, the request the principal offices in the Relevant Financial Centre (as defined in Condition 5(III)) of each of the Reference Banks shown on the face of the Notes (or, as the case may be, any substitute Reference Bank appointed from time to time pursuant to Condition 5(II)(*g*)) to provide the Calculation Agent with its Relevant Rate quoted to leading banks for the relevant Specified Currency deposits for a period equivalent to the duration of such Interest Period. Where this Condition 5(II)(*b*)(I)(B) shall apply, the Rate of Interest for the relevant Interest Period shall, subject as provided below, be the arithmetic mean (rounded, if necessary, to the next higher one-hundred thousandth of a percentage point) of such Relevant Rates as adjusted by the Spread or Spread Multiplier (if any) as calculated by the Calculation Agent.

(ii)   If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(*b*)(I)(B) in respect of a Floating Rate Note, two or three only of such Reference Banks provide such relevant quotations, the Rate of Interest for the relevant Interest Period shall, subject as provided below, be determined as aforesaid on the basis of the Relevant Rates quoted by such Reference Banks.

(iii)   If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(*b*)(I)(B) in respect of a Floating Rate Note denominated in a Specified Currency other than ECU (as described on Condition 7(f)), only one or none of such Reference Banks provides such Relevant Rates, the Rate of Interest for the relevant Interest Period shall, subject as provided below, be whichever is the higher of—

(A)   the Rate of Interest in effect for the last preceding Interest Period to which Condition 5(II)(*b*)(i)(A) or (B) or Condition 5(II)(*b*)(II) shall have applied; and

(B)   the rate per annum (expressed as a percentage) which the Calculation Agent determines to be the arithmetic mean (rounded, if necessary, to the next higher one-hundred thousandth of a percentage point) of the Relevant Rates in respect of the relevant currency which banks in the Relevant Financial Centre (as defined below) of the country of such currency selected by the Calculation Agent (after consultation with the Republic) are quoting at or about the Relevant Time on the relevant Interest Determination Date for a period equivalent to such Interest Period to leading banks carrying on business in that Relevant Financial Centre, as adjusted by the Spread or Spread Multiplier (if any) except that, if the banks so selected by the Calculation Agent are not quoting as aforesaid, the Rate of Interest shall, subject as provided below, be the rate of interest specified in Condition 5(II)(*b*)(iii)(A).

(iv)   If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(*b*)(I)(B) in respect of a Floating Rate Note denominated in ECU, one only or none of the Reference Banks provides such Relevant Rates, the Calculation Agent will request each of the Reference Banks to provide the Calculation Agent with the Relevant Rates quoted to them by leading banks in each relevant interbank market for deposits in each of the then component currencies of the ECU (the "Relevant Currencies") for the Interest Period concerned as at or about the Relevant Time on the relevant Interest Determination Date (provided that, if the EC ECU (as defined in Condition 7(f)(i)) is not then used in the European Monetary System, the component currencies of the ECU shall be those provided for under Condition 7(f)). The Rate of Interest for such Interest Period shall, subject as provided below, be the arithmetic mean (rounded, if

necessary, to the next higher one-hundred thousandth of a percentage point) of the Relevant Rates so communicated by the Reference Banks or any two or more of them (if only such provide such Relevant Rates), weighted in the manner provided below, and as adjusted by the Spread or Spread Multiplier (if any) as calculated by the Calculation Agent, provided that, if at or about the Relevant Time on any Interest Determination Date the Reference Banks or any two or more of them (if only such provide such Relevant Rates) do not provide Relevant Rates for all the Relevant Currencies but do provide such Relevant Rates for Relevant Currencies representing in aggregate 95 per cent. (determined by the Calculation Agent as provided below) or more of one ECU on such Interest Determination Date, then the Rate of Interest pursuant to this Condition 5(II)(b)(iv) on the basis of the Relevant Rates so provided and ignoring the Relevant Currencies for which such Relevant Rates are not provided.

(v)   If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(b)(I)(B) in respect of a Floating Rate Note denominated in ECU, the Reference Banks or any two or more of them (if only such provide such Relevant Rates) provide the Calculation Agent with Relevant Rates pursuant to Condition 5(II)(b)(iv) for Relevant Currencies representing in aggregate less than 95 per cent. (determined as provided below) of one ECU on such Interest Determination Date then, with respect to each of the Relevant Currencies for which quotations are not so provided, the Calculation Agent shall determine such rate as is reasonably representative of the Relevant Rate in respect of deposits in such Relevant Currency of leading banks selected by it (after consultation with the Republic) in the Relevant Financial Centre at or about the Relevant Time on the relevant Interest Determination Date for a period substantially co-extensive with such Interest Period. If at or about the Relevant Time on any Interest Determination Date the Relevant Currencies for which Relevant Rates are provided by the Reference Banks pursuant to Condition 5(II)(b)(iv) and the Relevant Currencies for which rates as determined by the Calculation Agent pursuant to this Condition 5(II)(b)(v) represent in aggregate 95 per cent. or more (determined as provided below) of one ECU on such Interest Determination Date, the Rate of Interest for such Interest Period shall be calculated on the basis of such quotations and rates.

(vi)   If in respect of a Floating Rate Note denominated in ECU the Calculation Agent is unable to determine the Rate of Interest for an Interest Period in accordance with Condition 5(II)(b)(I), (ii), (iv) or (v), the Rate of Interest for such Interest Period shall be the Rate of Interest in effect for the last preceding Interest Period to which Condition 5(II)(b)(I)(A) or (B) or 5(II)(b)(ii) shall have applied.

(c)   *ECU Weighting*

For the purposes of this Condition 5, the weighting to be given to a Relevant Currency or the percentage which it bears to one ECU shall be determined by the Calculation Agent by reference to the proportion that the amount of such Relevant Currency included in one ECU bears to one ECU and calculated on the basis of the U.S. dollar equivalent of each of the Relevant Currencies as at or about the Relevant Time on the Interest Determination Date in question. Such U.S. dollar equivalent shall be determined by the Calculation Agent in the manner provided under Condition 7(f), except that for the purposes of this Condition 5, (I) any reference therein to a Day of Valuation (as defined in Condition 7(f)) shall be deemed to refer to the Interest Determination Date in question, and (ii) if the EC ECU is being used in the European Monetary System on such Interest Determination Date, the components of the ECU shall be the currency amounts that are components of the EC ECU on such date.

(d)   *Minimum/Maximum Rates*

If a Minimum Interest Rate is specified on the face of this Note, then the Rate of Interest shall in no event be less than it and if there is so specified a Maximum Interest Rate, then the Rate of Interest shall in no event exceed it.

(e)   *Determination of Rate of Interest and Calculation of Interest Amounts*

The Calculation Agent will, as soon as practicable after the Relevant Time on each Interest Determination Date, determine the Rate of Interest and calculate the amount of interest payable (the "Interest Amounts") in respect of each Authorised Denomination of the relevant Floating Rate Notes (in the case of Bearer Notes) and the minimum Authorised Denomination (in the case of Registered Notes) for the relevant

Interest Period. The Interest Amounts shall be calculated by applying the Rate of Interest to the Calculation Amount, multiplying such product by the actual number of days in the Interest Period concerned, divided by the FRN Day Basis specified on the face of such Note and rounding, if necessary, the resultant figure to the nearest unit of the relevant currency (half of such unit being rounded upwards) or, in the case of ECU, to the nearest 0.01 ECU (0.005 ECU being rounded upwards). The determination of the Rate of Interest and the Interest Amounts by the Calculation Agent shall (in the absence of manifest error) be final and binding upon all parties.

(f)  *Notification of Rate of Interest and Interest Amounts*

The Calculation Agent will cause the Rate of Interest and the Interest Amounts for each Interest Period and the relevant Interest Payment Date to be notified to the Trustee, the Republic, each of the Agents and if the relevant Notes are for the time being listed on the Luxembourg Stock Exchange (the "Exchange"), the Exchange and to be notified to Noteholders in accordance with Condition 17 as soon as possible after their determination but in no event later than the fourth Relevant Business Day thereafter. The Interest Amounts and the Interest Payment Date so published may subsequently by amended (or appropriate alternative arrangements made by way of adjustment) without notice in the event of an extension or shortening of the Interest Period.

(g)  *Determination or Calculation by the Trustee*

If the Calculation Agent does not at any time for any reason so determine the Rate of Interest or calculate the Interest Amount for an Interest Period, the Trustee shall do so and such determination or calculation shall be deemed to have been made by the Calculation Agent. In doing so, the Trustee shall apply the foregoing provisions of this Condition 5(II), with any necessary consequential amendments, to the extent that, in its opinion, it can do so, and in all other respects it shall do so in such manner as it shall deem fair and reasonable in all the circumstances.

(h)  *Calculation Agent and Reference Banks*

The Republic will procure that, so long as any Floating Rate Note remains outstanding there shall at all times be four Reference Banks with offices in the Relevant Financial Centre and a Calculation Agent. If any Reference Bank (acting through its relevant office) is unable or unwilling to continue to act as a Reference Bank then the Republic will appoint another Reference Bank with an office in the Relevant Financial Centre to act as such in its place. If the Calculation Agent is unable or unwilling to act as such or if the Calculation Agent fails duly to establish the Rate of Interest for any Interest Period or to calculate the Interest Amounts, the Republic will appoint the London office of a leading bank engaged in the London and international interbank markets to act as such in its place. The Calculation Agent may not resign its duties without a successor having been appointed as aforesaid.

**(III)  Definitions**

As used in these Conditions:—

"Calculation Amount" means the amount specified as such on the face of any Note as applying from time to time, or if no such amount is so specified, the Principal Amount of such Note from time to time as shown on the face thereof.

"Interest Commencement Date" means, in the case of the first issue of a Note or Notes of a Series, the date of issue of such Note or Notes (the "Issue Date") or such other date as may be specified as the Interest Commencement Date on the face of such Note and, in the case of a further issue of a Note or Notes of such Series, means the most recent Reference Date or, as the case may be, Interest Payment Date in relation to such first issue next preceding the date on which such further Note or Notes are issued or if there is no such date, the Interest Commencement Date in respect of such first issue, or in any case such other date as may be specified as the Interest Commencement Date on the face of such Note.

"Interest Determination Date" means, in respect of any Interest Period, that number of Relevant Business Days prior to the first day of such Interest Period as specified on the face of the relevant Note.

"Relevant Business Day" means:—

(A)  in the case of a currency other than ECU, a day (other than a Saturday or a Sunday):—

(i)   on which banks and foreign exchange markets are open for business in the Relevant Financial Centre; and

(ii)  on which banks are open for business in the principal financial centre of the currency of the Calculation Amount in respect of such Floating Rate Note and on which deposits in such currency may be dealt in the Relevant Financial Centre; and

(B)  in the case of ECU, a day (other than a Saturday or a Sunday) on which banks and foreign exchange markets are open for business in the Relevant Financial Centre and which is not designated a non-settlement day for ECU on the Reuters ISDE Page on the Reuter Monitor Money Rates Service or a day so designated by the ECU Banking Association if ECU Non-Settlement Days do not appear on that page or, if no days are so settled, a day on which ECU interbank payments cannot be settled.

"Relevant Financial Centre" means:—

(A)  in the case of a currency other than ECU, London (in the case of LIBOR Notes, LIMEAN Notes or LIBID Notes) or (in the case of Floating Rate Notes the Rate of Interest in respect of which is to be calculated by reference to some other Benchmark) the financial centre specified on the face of the relevant Floating Rate Note, or if no such centre is so specified, the financial centre determined by the Calculation Agent to be appropriate to such Benchmark; and

(B)  in the case of ECU, London or such other or additional financial centre or centres as may be specified on the face of the relevant Floating Rate Note.

"Relevant Rate" means:—

(A)  an offered rate in the case of a Note the Benchmark for which relates to an offered rate;

(B)  a bid rate in the case of a Note the Benchmark for which relates to a bid rate; and

(C)  the mean of an offered and bid rate in the case of a Note the Benchmark for which relates to the mean of an offered and bid rate.

"Relevant Time" means the local time in the Relevant Financial Centre at which it is customary to determine bid and offered rates in respect of deposits in that currency in the interbank market in that Relevant Financial Centre.

**(IV)  Zero Coupon Notes**

Where a Zero Coupon Note is repayable prior to its Maturity Date and is not paid when due, the amount due and payable shall be the Amortised Face Amount of such Note as determined in accordance with Condition 6(c)(III). Where a Zero Coupon Note is to be redeemed on its Maturity Date and is not paid when due, any overdue principal of such Note shall bear interest at a rate per annum (expressed as a percentage) equal to the Amortisation Yield specified on the face of the Note. Such interest shall continue to accrue (on the same basis as that referred to in Condition 5(I)) (before and after judgment) to the Relevant Date.

**(V)  Step-up and Step-down Notes**

The face of the Notes issued in respect of a Tranche of Step-up Notes or Step-down Notes shall specify the dates on which interest shall be payable on such Notes, the rate at which the interest payable on each such date shall accrue and/or the basis for calculation thereof and the rate (or the basis of calculation of such rate) at which interest will accrue in respect of any overdue principal or overdue interest. Unless otherwise provided on the face of such Notes, such interest shall in all other respects accrue and shall be payable in accordance with Condition 5(I).

Notes so purchased and any unmatured Principal Coupons or Coupons or unexchanged Talons attached to or purchased with them may be cancelled or may be re-issued or resold.

**(VI)  Principal Only Notes**

Where a Principal Only Note is repayable prior to its Maturity Date and is not paid when due, the amount due and payable shall be the Amortised Face Amount of such Note as determined in accordance with Condition 6(g)(iii). Where a Principal Only Note is to be redeemed on its Maturity Date and is not paid when due, any overdue principal of such Note shall bear interest at a rate per annum (expressed as a percentage) equal to the Amortisation Yield for Principal Only Notes specified on the face of such Note. Such interest shall continue to accrue (on the same basis as that referred to in Condition 5(I)) (before and after judgment) to the Relevant Date.

**(VII)  Interest Only Notes**

Where an Interest Only Note is payable prior to its Reference Date and is not paid when due, the amount due and payable shall be the Amortised Face Amount of such Note as determined in accordance with Condition 6(h)(iii). Where an Interest Only Note is to be paid on its Reference Date and is not paid when due, any overdue interest amount of such Note shall, to the extent permitted by law, bear interest at a rate per annum (expressed as a percentage) equal to the Amortisation Yield for the relevant Class of Interest Only Notes specified on the face of such Note. Such interest shall continue to accrue (on the same basis as that referred to in Condition 5(I)) (before and after judgment) to the Relevant Date.

**6.   Redemption and Purchase**

*(a)  Redemption*

Unless previously redeemed or paid or purchased and cancelled as provided below, this Note will be redeemed at its Principal Amount on the Maturity Date specified on its face (if this Note is specified on its face to be a Fixed Rate Note, a Zero Coupon Note or a Principal Only Note) or on the Interest Payment Date falling in the Redemption Month specified on its face (if this Note is specified on its face to be a Floating Rate Note) or will be paid at its Face Amount on the Reference Date specified on its face (if this Note is an Interest Only Note). If the Amortisation Provisions are specified on the face of this Note as applying to this Note, the Republic will pay instalments of principal in such amounts and on such dates (each of which shall be a Reference Date or Interest Payment Date) as are specified on the face of this Note (each a "Principal Payment Date") and references in these Conditions to "Maturity Date" or to the "Interest Payment Date falling in the Redemption Month" shall be to the final Principal Payment Date.

*(b)  Purchases*

The Republic may at any time purchase Notes at any price (provided that in the case of Bearer Notes they are purchased together with all unmatured Principal Coupons (if any) and Coupons and unexchanged Talons relating to them) in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives. The Notes so purchased, while held by or on behalf for the benefit of the Republic, shall not entitle the holder to vote at any meetings of Noteholders and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the Noteholders or for the purposes of Conditions 11 and 12. The Republic will not acquire any beneficial interest in any Registered Note unless it gives prior written notice of each acquisition to the Trustee and the Registrar. The Trustee and the Registrar and all holders of Registered Notes shall be entitled to rely without further investigation on any such notification (or lack thereof).

For the purposes of these Conditions, "directive" includes any present or future directive regulation, request, requirement, rule or credit restraint programme of any relevant agency, authority, central bank department, government, legislature, minister, ministry, official, public or statutory corporation, self-regulating organisation or stock exchange.

*(c)  Early Redemption of Zero Coupon Notes*

(i)   The amount payable in respect of any Zero Coupon Note upon redemption of such Note pursuant to, if applicable, Condition 6(d) or (e) or upon it becoming due and payable as provided in Condition 10, shall be the Amortised Face Amount (calculated as provided below) of such Note.

(ii)  Subject to the provisions of Condition 6(c)(iii), the Amortised Face Amount of any Zero Coupon Note shall be the sum of (A) the Reference Price specified on the face of such Note and (B) the aggregate amortisation of the difference between the Reference Price and the Principal Amount of such Note from the Issue Date to the date on which such Note becomes due and payable at a rate per annum (expressed as a percentage) equal to the Amortisation Yield specified on the face of such Note compounded annually. Where the specified calculation is to be made for a period of less than one year, it shall be made on the Fixed Rate Day Basis specified on the face of such Note.

(iii)  If the amount payable in respect of any Zero Coupon Note upon redemption of such Note pursuant to, if applicable, Condition 6(d) or (e), or upon it becoming due and payable as provided in Condition 10, is not paid when due, the amount due and payable in respect of such Note shall be the Amortised Face Amount of such Note as described in Condition 6(c)(ii), except that Condition 6(c)(ii) shall have effect as though the reference therein to the date on which the Note becomes due and payable were replaced by a reference to the Relevant Date. The calculation of the Amortised Face Amount in accordance with this Condition 6(c)(iii) will continue to be made (before and after judgment) until the Relevant Date unless the Relevant Date falls on or after the Maturity Date, in which case the amount due and payable shall be the Principal Amount of such Note together with any interest which may accrue in accordance with Condition 5(IV).

(d)  *Redemption at the Option of the Republic*

If so provided on the face of the Notes issued in respect of a Tranche of Notes, the Republic may, subject to compliance with all relevant laws, regulations and directives and any minimum or maximum amounts to be redeemed as specified on the face of such Notes, on giving not more than 60 nor less than 30 days' irrevocable notice to the holders of those Notes redeem all or, if so specified on the face of such Notes, some of such Notes in the Principal Amount specified on the face of such Notes or integral multiples thereof, on the date or dates specified on the face of such Notes (which shall, in the case of a Floating Rate Note, be an Interest Payment Date) at their Principal Amount or, if applicable, at the premium or premia specified on the face of such Notes or at their Amortised Face Amount (in the case of Zero Coupon Notes) together with interest accrued to the date fixed for redemption.

All Notes in respect of which any such notice is given shall be redeemed on the date specified in such notice in accordance with this Condition 6. In the case of a partial redemption, the notice to Noteholders shall also contain the serial numbers of the Notes to be redeemed, which shall have been drawn in such place as the Trustee may approve and in such manner as it deems appropriate, subject to compliance with any applicable laws and stock exchange requirements.

(e)  *Redemption at the Option of Noteholders*

If so provided on the face of the Note issued in respect of a Tranche of Notes, the Republic shall, subject to compliance with all relevant laws, regulations and directives, at the option of the holder of such Notes, redeem such Notes on the date or dates specified on the face of such Notes (which shall, in the case of a Floating Rate Note, be an Interest Payment Date) at their Principal Amount or, if applicable, at the premium or premia specified on the face of such Notes or at their Amortised Face Amount (in the case of Zero Coupon Notes) together with interest accrued to the date fixed for redemption.

To exercise such option the holder must deposit such Notes with any Paying Agent (in the case of Bearer Notes) or the Registrar or any Transfer Agent (in the case of Registered Notes) at their respective specified offices, together with a duly completed notice of redemption ("Redemption Notice") in the form obtainable from any Agent not more than 60 nor less than 30 days prior to the relevant date for redemption. No Note (or Redemption Notice) so deposited may be withdrawn (except as provided in the Agency Agreement) without the prior consent of the Republic.

(f)  *Cancellation*

All Notes so redeemed or paid will be cancelled forthwith and may not be re-sold or re-issued. All Notes so purchased and any unmatured Principal Coupons or Coupons or unexchanged Talons attached to or purchased with them may be cancelled or may be re-issued or resold.

(g) *Early Redemption of Principal Only Notes*

(i)   The amount payable in respect of any Principal Only Note upon it becoming due and payable as provided in Condition 10 shall be the Amortised Face Amount (calculated as provided below) of such Note.

(ii)   Subject to the provisions of Condition 6(g)(iii), the Amortised Face Amount of any Principal Only Note shall be the sum of (A) the Reference Price for Principal Only Notes specified on the face of such Note and (B) the aggregate amortisation of the difference between such Reference Price and the Principal Amount of such Note from the Issue Date to the date on which such Note becomes due and payable at a rate per annum (expressed as a percentage) equal to the Amortisation Yield for Principal Only Notes specified on the face of such Note compounded annually. Where the specified calculation is to be made for a period of less than one year, it shall be made on the Fixed Rate Day Basis specified on the face of such Note.

(iii)   If the amount payable in respect of any Principal Only Note upon it becoming due and payable as provided in Condition 10 is not paid when due, the amount due and payable in respect of such Note shall be the Amortised Face Amount of such Note as described in Condition 6(g)(ii), except that Condition 6(g)(ii) shall have effect as though the reference therein to the date on which the Note becomes due and payable were replaced by a reference to the Relevant Date. The calculation of the Amortised Face Amount in accordance with this Condition 6(g)(iii) will continue to be made (before and after judgment) until the Relevant Date unless the Relevant Date falls on or after the Maturity Date, in which case the amount due and payable shall be the Principal Amount of such Note together with any interest which may accrue in accordance with Condition 5(VI).

(h) *Early Redemption of Interest Only Notes*

(i)   The amount payable in respect of any Interest Only Note upon it becoming due and payable as provided in Condition 10 shall be the Amortised Face Amount (calculated as provided below) of such Note.

(ii)   Subject to the provisions of Condition 6(h)(iii), the Amortised Face Amount of any Interest Only Note shall be the sum of (A) the Reference Price for the Class of Interest Only Notes to which such Interest Only Note belongs specified on the face of such Note and (B) the aggregate amortisation of the difference between such Reference Price and the Face Amount of such Note from the Issue Date to the date on which such Note becomes due and payable at a rate per annum (expressed as a percentage) equal to the Amortisation Yield for the relevant Class of Interest Only Notes specified on the face of such Note compounded annually. Where the specified calculation is to be made for a period of less than one year, it shall be made on the Fixed Rate Day Basis specified on the face of such Note.

(iii)   If the amount payable in respect of any Interest Only Note upon it becoming due and payable as provided in Condition 10 is not paid when due, the amount due and payable in respect of such Note shall be the Amortised Face Amount of such Note as described in Condition 6(h)(ii), except that Condition 6(h)(ii) shall have effect as though the reference therein to the date on which the Note becomes due and payable were replaced by a reference to the Relevant Date. The calculation of the Amortised Face Amount in accordance with this Condition 6(h)(iii) will continue to be made (before and after judgment) until the Relevant Date unless the Relevant Date falls on or after the Reference Date for such Class of Notes, in which case the amount due and payable shall, to the extent permitted by law, be the Face Amount of such Note together with any interest which may accrue in accordance with Condition 5(VII).

7.   **Payments and Talons**

(a) *Bearer Notes*

(i) *Payments of Principal and Interest*

Payments of principal in respect of Bearer Notes will, subject as mentioned below, be made against presentation and surrender of the relevant Bearer Notes or (if the Amortisation Provisions are specified on

the face of such Bearer Notes as applying) Principal Coupons and, in respect of the final instalment represented by a Principal Coupon, the relevant Bearer Notes and payments of interest in respect of Bearer Notes will, subject as mentioned below, be made against presentation and surrender of the relevant Coupons, as the case may be, at the specified office of any Paying Agent outside the United States and its possessions (1) in respect of payments denominated in a Specified Currency other than U.S. dollars, ECU and Sterling, at the option of the holder either by a cheque in such Specified Currency drawn on, or by transfer to an account (in the case of a payment in Yen to a non-resident of Japan, a non-resident account) in such Specified Currency maintained by the payee with, a bank (in the case of a payment in Yen to a non-resident of Japan, an authorised foreign exchange bank) in the principal financial centre of the country of such Specified Currency, (2) in respect of payments denominated in U.S. dollars, subject to Condition 7(a)(ii), at the option of the holder either by a U.S. dollar cheque drawn on a bank in New York City or by transfer to a U.S. dollar account maintained by the payee with a bank outside the United States of America, (3) in respect of payments denominated in ECU, subject to Condition 7(f), by credit or transfer to an ECU account specified by the payee (and payments in a component currency (if so determined in accordance with Condition 7(f)) will be made in the chosen currency (as defined in Condition 7(f)(II)) by a cheque drawn on, or, at the option of the holder, by transfer to an account specified by the payee with, a bank in the principal financial centre of the country of the chosen currency), (4) in respect of payments denominated in Sterling, by a Sterling cheque drawn on, or, at the option of the holder by transfer to a Sterling account with, a town clearing branch of a bank in the City of London or (5) as many otherwise be provided in the applicable Pricing Supplement.

    *(ii) Payments in the United States*

Notwithstanding the foregoing, payments in respect of Bearer Notes denominated in U.S. dollars may be made at the specified office of any Paying Agent in New York City in the same manner as aforesaid if (1) the Republic shall have appointed Paying Agents with specified offices outside the United States with the reasonable expectation that such Paying Agents would be able to make payment of the amounts on the Bearer Notes in the manner provided above when due, (2) payment in full of such amounts at all such offices is illegal or effectively precluded by exchange controls or other similar restrictions on payment or receipt of such amounts and (3) such payment is then permitted by United States law. If, under such circumstances, a Bearer Note is presented for payment of principal at the specified office of any Paying Agent in the United States or its possessions in circumstances where interest (if any is payable against presentation of the Bearer Note) is not to be paid there, the relevant Paying Agent will annotate the Bearer Note with the record of the principal paid and return it to the holder for the obtaining of interest elsewhere.

    *(iii) Payments on Business Days*

Subject as provided on the face of a Note issued in respect of a Tranche of Notes, if any date for payment in respect of any Bearer Note, Principal Coupon or Coupon comprising all or part of such Tranche is not a business day, the holder shall not be entitled to payment until the next following business day nor to any interest or other sum in respect of such postponed payment. In this Condition 7(a), "business day" means a day on which banks are open for business in the relevant place of presentation and:—

    (1)    (in the case of a payment in a Specified Currency other than ECU) where payment is to be made by transfer to an account maintained with a bank in the relevant Specified Currency, on which dealings may be carried on in the relevant Specified Currency in the principal financial centre of the country of such Specified Currency; or

    (2)    (a) in the case of payment in ECU, a day which is an ECU business day (as defined below) or (b) in the case of payment in a chosen currency by transfer to an account, a day on which banks and foreign exchange markets are open for business in the principal financial centre of such chosen currency. "ECU business day" means any day other than Saturday, a Sunday or a day designated as a non-settlement day for ECU on the Reuters Screen ISDB page on the Reuters Monitor Money Rates Service or a day so designated by the ECU Banking Association if ECU Non-Settlement Days do not appear on that page or, if no days are so designated, a day on which ECU interbank payments cannot be settled.

If the due date for redemption or repayment in full of any Bearer Note is not a due date for payment of interest, interest accrued from the preceding due date for payment of interest or the Interest Commencement

---

Date, as the case may be, shall only be payable against presentation (and surrender if appropriate) of the relevant Bearer Note. Interest accrued on a Zero Coupon Note from its Maturity Date shall be payable on repayment of such Zero Coupon Note against presentation thereof.

(b) *Registered Notes*

(i) *Payments of Principal*

Payments of principal in respect of Registered Notes falling due on the Maturity Date or the Interest Payment Date falling in the Redemption Month will be made by the Principal Paying Agent in the manner provided for in Condition 7(a)(i), subject to Condition 7(b)(iv). Each such payment of principal will only be made against surrender of the relevant Definitive Registered Note at the specified office of any Transfer Agent. In respect of those Notes to which the Amortisation Provisions are specified on the face of such Notes as applying, payments of principal falling due other than on the Maturity Date or the Interest Payment Date falling in the Redemption Month will be made by the Principal Paying Agent in the manner provided for payments of interest in Condition 7(b)(ii) and, if the amount of principal being paid is less than the Principal Amount of the relevant Definitive Registered Note, the Registrar will annotate the Register with the amount of principal so paid and will (if so requested by the Republic or a Noteholder) upon surrender of the existing Definitive Registered Note at the specified office of the Registrar or any Transfer Agent issue a new Definitive Registered Note with a Principal Amount equal to the remaining unpaid Principal Amount which will be mailed to the holder in accordance with Condition 2(a).

(ii) *Payments of Interest*

Interest on Registered Notes payable on any Reference Date or Interest Payment Date will be paid by the Principal Paying Agent to the person shown on the Register or, in the case of Interest Only Notes, the Interest Register at the close of business on the fifteenth day before the due date for payment thereof (the "Record Date"). Payments in respect of Interest Only Notes will only be made against surrender of the relevant Interest Only Note at the specified office of any Transfer Agent. Payments of interest on each Registered Note (other than a Note denominated in ECU) will be made in the Specified Currency in which such Notes are denominated, subject to Condition 7(b)(iv), by cheque drawn on a bank in the principal financial centre of the country of the currency concerned and mailed to the holder (or to the first named of joint holders) of such Note at its address appearing in the Register or Interest Register, as the case may be, maintained by the Registrar. Payments in respect of Notes denominated in ECU will be made in the manner provided in Condition 7(a)(i). Upon application by the holder to the specified office of the Registrar or any Transfer Agent before the Record Date, such payment of interest may be made by transfer to an account in the relevant Specified Currency maintained by the payee with a bank in the principal financial centre of the country of that Specified Currency.

For the purposes of these Conditions, the principal financial centre in respect of Australian dollars shall be Melbourne.

(iii) *Payment Initiation*

Where payment is to be made by transfer to an account in the relevant Specified Currency, payment instructions (for value the due date, or if that is not a business day, for value the first following day which is a business day) will be initiated, and, where payment is to be made by cheque, the cheque will be mailed on the business day preceding the due date for payment or, in the case of payments of principal or, in respect of an Interest Only Note, interest if later, on the business day on which the relevant Definitive Registered Note is surrendered at the specified office of any Transfer Agent.

(iv) *Payments Through The Depository Trust Company*

Registered Notes, if so specified in the relevant Pricing Supplement, will be issued in the form of one or more Definitive Registered Notes registered in the name of, or the name of a nominee for, The Depository Trust Company ("DTC"). Payments of principal and interest in respect of Registered Notes denominated in U.S. dollars will be made in accordance with Condition 7(b)(i), (ii) and (iii). Payments of principal and interest in respect of Registered Notes denominated in a Specified Currency other than U.S. dollars will be