made by the Principal Paying Agent in the relevant Specified Currency in accordance with the provisions of Condition 7(b)(i), (ii) and (iii) to participants in DTC who are beneficial owners of such Registered Notes.

**(v)  Delay in Payment**

Noteholders will not be entitled to any interest or other payment for any delay after the due date in receiving the amount due if the due date is not a business day, if the Noteholder is late in surrendering its Definitive Registered Note (if required to do so) or if a cheque mailed in accordance with this Condition 7(b) arrives after the due date for payment.

**(vi)  Payments on Business Days**

For the purposes of this Condition 7(b), "business day" means a day on which commercial banks in the relevant city and, in the case of a surrender of a Definitive Registered Note, in the place the Definitive Registered Note is surrendered, are open.

**(vii)  Payment Not Made in Full**

If the amount of principal or interest which is due on the Registered Notes is not paid in full, the Registrar will annotate the Register, the Principal Register or the Interest Register, as appropriate, with a record of the amount of principal or interest, if any, in fact paid.

**(c)  Payments Subject to Law etc.**

All payments are subject to all cases to any applicable fiscal or other laws, regulations and directives, but without prejudice to the provisions of Condition 8. No commission or expenses shall be charged to the Noteholders, Principal Couponholders (if any) or Couponholders in respect of such payments.

**(d)  Appointment of Agents**

The Paying Agents, the Registrar, the Calculation Agent and Transfer Agents initially appointed by the Republic and their respective specified offices are listed below. The Republic reserves the right at any time to vary or terminate the appointment of any Paying Agent, the Registrar, the Calculation Agent or any Transfer Agent, to appoint another Registrar or Calculation Agent and to appoint additional or other Paying Agents or Transfer Agents, provided that the Republic will at all times maintain (i) a Principal Paying Agent, (ii) a Registrar and a Transfer Agent having a specified office in New York City, (iii) a Paying Agent and a Transfer Agent having a specified office in a European city which, so long as the Notes are listed on the Luxembourg Stock Exchange, shall be Luxembourg, (iv) a Paying Agent having a specified office in Paris for so long as the Notes are listed on the Paris Stock Exchange and such other agents as may be required by any other stock exchange on which the Notes may be listed and (v) a Calculation Agent.

In addition, the Republic shall forthwith appoint a Paying Agent in New York City in respect of any Bearer Notes denominated in U.S. dollars in the circumstances described in Condition 7(a)(ii).

Notice of any such change or any change of any specified office will promptly be given to the Noteholders in accordance with Condition 17.

**(e)  Unmatured Coupons and Principal Coupons and Unexchanged Talons**

(i)   Fixed Rate Notes which are Bearer Notes, other than Notes which are specified on their face to be Long Maturity Notes (being Fixed Rate Notes whose Principal Amount is less than the aggregate interest payable thereon on the relevant dates for payment of interest under Condition 5(I)(a)) or Notes to which the Amortisation Provisions are specified on their face as applying, should be surrendered for payment of principal together with all unmatured Coupons (if any) appertaining thereto, failing which an amount equal to the face value of each missing unmatured Coupon (or, in the case of payment not being made in full, that proportion of the amount of such missing unmatured Coupon which the sum of principal so paid bears to the total principal due) will be deducted from the principal due for payment. Any amount so deducted will be paid in the manner mentioned above against surrender of such missing Coupon within a period of 10 years from the Relevant Date for the payment of such principal (whether or not such Coupon has become void pursuant to Condition 9). If the date for payment of principal is

any date other than a date for payment of interest, the accrued interest on such principal shall be paid only upon presentation of the relevant Note.

(ii)  If so specified on the face of this Note, upon the due date for redemption of any Floating Rate Note or Long Maturity Note which is a Bearer Note or any Note to which the Amortisation Provisions are specified on such Note to apply, unmatured Coupons relating to such Note (whether or not attached) shall become void and no payment shall be made in respect of them.

(iii)  Upon the due date for redemption of any Note to which the Amortisation Provisions are specified on its face as applying, an amount equal to the face value of each missing unmatured Principal Coupon (or, in the case of payment not being made in full, that portion of the amount of such missing unmatured Principal Coupon which the sum of principal so paid bears to the total principal due) will be deducted from the principal due for payment. Any amount so deducted will be paid in the manner mentioned above against surrender of such missing Principal Coupon within a period of 10 years from the Relevant Date for the payment of such principal (whether or not such Principal Coupon has become void pursuant to Condition 9).

(iv)  Upon the due date for redemption of any Note, any unexchanged Talon relating to such Note (whether or not attached) shall become void and no Coupon shall be delivered in respect of such Talon.

(v)  Where any Floating Rate Note or Long Maturity Note which is a Bearer Note or any Note to which the Amortisation Provisions are specified on the face of such Note as applying is presented for redemption without all unmatured Principal Coupons (if any) any Coupons and unexchanged Talons relating to it, and where any Bearer Note is presented for redemption without any exchanged Talon relating to it, redemption shall be made only against the provisions of such indemnity as the Republic may require.

(f)  ECU Notes

(i)  Composition of ECU

Subject to the provisions of this Condition 7(f), the composition of the ECU for the purpose of any Notes denominated in ECU is the same as the composition of the ECU that is used from time to time in the European Monetary System (the "EC ECU") and which is as at the date of the Trust Deed composed of specified amounts of the currencies of the member countries of the European Communities ("EC") as shown below.

Pursuant to Council Regulation (EEC) No. 1971/89 of June 19, 1989, the EC ECU has been determined to be the sum of the following components:

| | | | |
|---|---|---|---|
| 0.6242 | German mark | 0.130 | Luxembourg franc |
| 0.08784 | Pound sterling | 0.1976 | Danish krone |
| 1.332 | French franc | 0.008552 | Irish pound |
| 151.8 | Italian lire | 1.440 | Greek drachmas |
| 0.2198 | Dutch guilder | 6.885 | Spanish pesetas |
| 3.301 | Belgium francs | 1.393 | Portuguese escudos |

The basis may be changed by the EC, including changes in the components, in which event the composition of the ECU will change accordingly.

(ii)  Payments in a component currency

With respect to each due date for the payment of principal, interest or other amounts in respect of Notes denominated in ECU on which the EC ECU is not used in the European Monetary System, the Trustee shall, without liability on its part and without having regard to the interests of individual Noteholders, choose a component currency of the EC ECU (the "chosen currency") in which all payments due on that due date with respect to such Notes shall be made. Notice of the chosen currency selected by the Trustee shall, where practicable, be given to Noteholders in accordance with Condition 17. The amount of each payment in the chosen currency shall be computed on the basis of the equivalent of the ECU in that currency, determined as

set out in this Condition 7(f) as of the fourth Relevant Business Day prior to the date on which such payment is due.

On the first Relevant Business Day on which the EC ECU is not used in the European Monetary System, the Trustee shall, without liability on its part and without having regard to the interests of individual Noteholders, choose a component currency of the EC ECU (the "chosen currency") in which all payments of principal, interest or other amounts in respect of Notes denominated in ECU having a due date prior thereto but not yet presented for payment are to be made. The amount of each payment in the chosen currency shall be computed on the basis of the equivalent of the ECU in that currency determined as set out in this Condition 7(f), as of such first Relevant Business Day.

The equivalent of the ECU is the relevant chosen currency as of any date (the "Day of Valuation") shall be determined by the Exchange on the following basis. The component currencies of the ECU for this purpose (the "Components") shall be the currency amounts which were components of the EC ECU when the EC ECU was most recently used in the European Monetary System. However, if the EC ECU is being used for the settlement of transactions by public institutions of or within the EC, or if it was so used after its most recent use in the European Monetary System, the Components shall be (a) the currency amounts that are components of the EC ECU as so used as of the Day of Valuation, or (b) the currency amounts that were components of the EC ECU when it was most recently so used, as the case may be. The equivalent of the ECU in the chosen currency shall be calculated by first aggregating the U.S. dollar equivalents of the Components and then, using the rate used for determining the U.S. dollar equivalent of the Component in the chosen currency as set forth below, calculating the equivalent in the chosen currency of such aggregate amount in U.S. dollars.

The U.S. dollar equivalent of each of the Components shall be determined by the Exchange on the basis of the middle spot delivery quotations prevailing at 2.30 p.m. (local time in the Relevant Financial Centre) on the Day of Valuation, as obtained by the Exchange from one or more leading banks, as selected by the Trustee, in the country of issue of the Component in question.

If the official unit of any component currency is altered by way of combination or subdivision, the number of units of that currency as a Component shall be divided or multiplied in the same proportion. If two or more component currencies are consolidated into a single currency, the amounts of those currencies as Components shall be replaced by an amount in such single currency equal to the sum of the amounts of the consolidated component currencies expressed in such single currency. If any component currency is divided into two or more currencies, the amount of that currency as a Component shall be replaced by amounts of such two or more currencies, each of which shall be equal to the amount of the former component currency divided by the number of currencies into which that currency was divided.

If no direct quotations are available for a Component as of a Day of Valuation from any of the banks selected by the Trustee for this purpose because foreign exchange markets are closed in the country of issue of that currency or for any other reason, the most recent direct quotations for that currency obtained by the Exchange shall be used in computing the equivalents of the ECU on such Day of Valuation, provided, however, that such most recent quotations may be used only if they were prevailing in the country of issue not more than two business days before such Day of Valuation. Beyond such period of two business days, the Exchange shall determine the U.S. dollar equivalent of such Component on the basis of cross rates derived from the middle spot delivery quotations for such component currency and for the U.S. dollar prevailing at 2.30 p.m. (local time in the Relevant Financial Centre) on such Day of Valuation, as obtained by the Exchange from one or more leading banks, as selected by the Trustee, in a country other than the country of issue of such Component. Within such period of two business days, the Exchange shall determine the U.S. dollar equivalent of such Component on the basis of such cross rates if the Trustee judges that the equivalent so calculated is more representative than the U.S. dollar equivalent calculated on the basis of such most recent direct quotations. Unless otherwise specified by the Trustee, if there is more than one market for dealing in any Component by reason of foreign exchange regulations or for any other reason, the market to be referred to in respect of such currency shall be that upon which a non-resident issuer of securities denominated in such currency would purchase such currency in order to make payments in respect of such securities.

All determinations made by each of the Trustee or the Exchange shall be at its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and binding on the Republic and all Noteholders, Principal Couponholders (if any) and Couponholders.

(g) *Talons*

Except where such Talon has become void pursuant to Condition 7(e)(iv), on or after the Reference Date or, as the case may be, the Interest Payment Date for the final Coupon forming part of a Coupon sheet issued in respect of any Note, the Talon forming part of such Coupon sheet may be surrendered at the specified office of the Principal Paying Agent in exchange for a further Coupon sheet (but excluding any Coupons which may have become void pursuant to Condition 9).

## 7A. EURO Provisions

(a) *Definitions*

For the purposes of the Conditions, the following terms shall have the meanings specified herein:

"EMU" means the Economic and Monetary Union as contemplated in the Treaty;

"EMU Date" means the date on which the third stage of EMU has started or events have occurred which have substantially the same effects as those of the third stage of EMU as contemplated by the Maastricht Treaty;

"EURO" means the currency to be introduced within the participating Member States pursuant to the Maastricht Treaty;

"Maastricht Treaty" means the treaty on European Unity which was signed at Maastricht on February 1, 1992 and came into force on November 1, 1993;

"participating Member State" means a member state of the European Community established by the Treaty which adopts the single currency in accordance with the Treaty; and

"Treaty" means the Treaty of Rome of March 25, 1957, as amended by the Single European Act 1986 and the Maastricht Treaty, establishing the European Community, as amended from time to time.

(b) *General*

References in the Conditions to any business day, day-count fraction or other convention (whether for the calculation of interest, determination of payment dates or otherwise) shall, if different, with effect from the EMU Date, be deemed to be amended to comply with any conventions applicable to EURO-denominated obligations pursuant to applicable requirements of relevant monetary, stock exchange or other authorities, applicable European Community and national laws and regulations and such market practices consistent therewith as the Principal Paying Agent, in its discretion, shall determine to be applicable for such EURO-denominated obligations held in international clearing systems and the Conditions shall be deemed to be amended accordingly.

Upon any change to the Conditions, notice thereof will be given to Noteholders in accordance with the Conditions.

Determinations made by the Principal Paying Agent will, in the absence of manifest error, be conclusive and binding on the Republic and the Noteholders. In the discharge of its duties and responsibilities, the Principal Paying Agent is acting in its capacity as agent solely of the Republic. The Principal Paying Agent does not have any fiduciary duty towards the Noteholders.

Payments pursuant to Condition 7 shall be made in EURO provided that, before the EMU Date, all payments in respect of the Notes shall be made in ECU at the rate of one ECU for one EURO and all provisions in the Conditions relating to ECU notes shall therefore apply. After the EMU Date, payments will be made by the Principal Paying Agent by a EURO cheque drawn on, or by transfer to a EURO account maintained by the payee with, a bank in a principal financial centre for the payment of Euros.

For the purposes of Condition 7(a), "business day" means a day on which commercial banks and foreign exchange markets are open for business in the relevant place of presentation and which is: (i) in the case of payment in EURO or ECU, a day on which commercial banks and foreign exchange markets are open for business and carrying out transactions in EURO or ECU; as the case may be, in the country of the EURO or ECU account specified by the relevant payee; or (ii) in the case of payment in a chosen currency, a day on which commercial banks and foreign exchange markets are open for business and carrying out transactions in such chosen currency in the principal financial centre of such chosen currency.

8.  **Taxation**

All payments in respect of the Notes, the Principal Coupons (if any) and the Coupons will be made free and clear of, and without withholding or deduction for, or on account of, any taxes, duties, assessments or governmental charges (together, "Taxes") of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic of Argentina or any authority therein or thereof having power to tax, unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts as will result in receipt by the Noteholders, the Principal Couponholders (if any) or the Couponholders, as the case may be, of such amounts as would have been received by them had no such withholding or deduction been required, except that no such additional amounts shall be payable with respect to any Note, Principal Coupon or Coupon:—

(i)  in the case of Bearer Notes, Principal Coupons (if any) or Coupons:—

(1)  to a holder (or to a third party on behalf of a holder) where such holder is liable to such Taxes in respect of such Bearer Note, Principal Coupon or Coupon by reason of it having some connection with the Republic of Argentina other than the mere holding of such Bearer Note, Principal Coupon or Coupon; or

(2)  presented for payment more than 30 days after the Relevant Date except to the extent that the holder thereof would have been entitled to additional amounts on presenting the same for payment on the last day of such period of 30 days;

(ii)  in the case of Registered Notes:—

(1)  to a holder (or to a third party on behalf of a holder) where such holder is liable to such Taxes in respect of such Registered Note by reason of it having some connection with the Republic of Argentina, other than the mere holding of such Registered Note or the receipt of the relevant payment in respect thereof; or

(2)  if the Definitive Registered Note in respect of such Registered Note is surrendered more than 30 days after the Relevant Date and such surrender is required for payment except to the extent that the holder thereof would have been entitled to additional amounts on presenting the same for payment on the last day of such period of 30 days.

As used in these Conditions, "Relevant Date" in respect of any Note, Principal Coupon or Coupon means the date on which payment in respect thereof first becomes due or (if the full amount of the money payable has not been received by the Trustee or the Principal Paying Agent on or prior to such due date) the date on which notice is duly given to the Noteholders in accordance with Condition 17 that such moneys have been so received and are available for payment. References herein to "principal" shall be deemed to include any premium payable in respect of the Notes and any reference to "principal" and/or "Amortised Face Amount" and/or "premium" and/or "interest" shall be deemed to include any additional amounts which may be payable under this Condition 8.

9.  **Prescription**

Claims against the Republic for payment in respect of the Notes, Principal Coupons (if any) and Coupons (which, for this purpose shall not include Talons) shall be prescribed and become void unless made within 10 years (in the case of principal or, in respect of Interest Only Notes, interest) and five years (in the

case of interest, other than in respect of Interest Only Notes) from the appropriate Relevant Date in respect thereof.

## 10.  Events of Default

If any of the following events ("Events of Default") occurs and is continuing:—

(a)  *Non-Payment:* the Republic fails to pay any principal (or Amortised Face Amount) of any of the Notes when due and payable or fails to pay any interest on any of the Notes when due and payable and such failure continues for a period of 30 days; or

(b)  *Breach of Other Obligations:* the Republic does not perform or comply with any one or more of its other obligations in the Notes or in the Trust Deed, which default is incapable of remedy or is not remedied within 90 days after notice of such default shall have been given to the Republic by the Trustee; or

(c)  *Cross Default:* any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of any Public External Indebtedness of the Republic having an aggregate principal amount of U.S.$30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, any such Public External Indebtedness having an aggregate principal amount of U.S.$30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d)  *Moratorium:* a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic; or

(e)  *Validity:* the validity of the Notes or the Trust Deed shall be contested by the Republic;

then in each and every such case, the Trustee at its discretion may in respect of Notes of any Series, or at the request of Noteholders (including, if the Amortisation Provisions are specified on the face of the Notes as applying to such Notes, the Principal Couponholders) holding not less than 25 per cent. in aggregate principal amount of the Notes of such Series then outstanding, by notice in writing to the Republic shall, declare the principal amount (or Amortised Face Amount) of all the Notes of such Series to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Notes of such Series shall have been cured; provided that in the case of Conditions 10(b), (d) and (e) the Trustee shall have certified that in its opinion such event is materially prejudicial to the interests of the Noteholders and provided further, that if, at any time after the principal (or Amortised Face Amount) of the Notes of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Trustee a sum sufficient to pay all matured amounts of interest and principal (or Amortised Face Amount) upon all the Notes of such Series which shall have become due otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal (or Amortised Face Amount) of each Note at the rate of interest (or Amortisation Yield as calculated under Condition 6(c), 6(g) or 6(h), as appropriate) specified herein, to the date of such payment or deposit) and the expenses of the Trustee, and reasonable compensation to the Trustee, its agents, legal advisers, and any and all defaults under the Notes of such Series, other than the non-payment of principal (or Amortised Face Amount) or, in the case of Interest Only Notes, interest on the Notes which shall have become due solely by declaration, shall have been remedied, then, and in every such case, Noteholders (including Principal Couponholders as aforesaid) holding 75 per cent. in aggregate principal amount of the Notes of such Series then outstanding, after a meeting of Noteholders held in accordance with the procedures described in Condition 11, by written notice to the Republic and to the Trustee, may on behalf of the holders of all of the Notes of such Series waive all defaults and rescind and annul such declaration and its consequences; but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

This Condition 10 shall apply to Principal Only Notes and Interest Only Notes as if references in this Condition 10 to "Notes" were references to the Principal Only Notes alone or to each Class of Interest Only Notes treated separately (and "Noteholders" shall be construed accordingly) and as if references to "principal amount" were, in the case of Interest Only Notes, references to "Face Amount".

## 11. Meeting of Noteholders, Modification and Waiver

### (a) Meetings of Noteholders

The Trust Deed contains provisions for convening meetings of Noteholders of a Series to consider any matter affecting their interests, including modification by Extraordinary Resolution of the Notes of such Series (including these Conditions insofar as the same may apply to such Notes). For the purposes of this Condition 11, the approval of any Extraordinary Resolution pursuant to Condition 4(a) or 12(a), the making of any request that the Trustee declare the Notes of such Series due and payable pursuant to Condition 10 or that the Trustee institute proceedings against the Republic pursuant to Condition 12, and calling, attendance or participation at any meeting of Noteholders generally, if the Amortisation Provisions are specified on the face of the Notes of any Series as applying to such Notes, the Principal Couponholders shall be deemed to be Noteholders holding Bearer Notes of the principal amount represented by the Principal Coupons they hold and each Noteholder shall for such purposes be deemed to hold only the principal amount of Bearer Notes in respect of which it retains the Principal Coupons. Such a meeting may be convened by the Republic or the Trustee, and shall be convened by the Trustee (subject to being indemnified to its satisfaction against all costs and expenses thereby occasioned) upon written request of Noteholders holding not less than 10 per cent. in principal amount of the Notes of the relevant Series for the time being outstanding. The quorum for any meeting to consider an Extraordinary Resolution will be two or more persons holding or representing a clear majority in principal amount of the Notes or Principal Coupons (if any) of the relevant Series for the time being outstanding, or at any adjourned meeting two or more persons holding or representing holders of Notes or Principal Coupons (if any) of the relevant Series whatever the principal amount of the Notes or Principal Coupons (if any) of the relevant Series held or represented, unless the business of such meeting includes consideration of proposals, *inter alia*, (i) to amend the dates of maturity or redemption or other payment of principal (in whole or part) of the Notes of any Series or any date for payment of interest thereon, (ii) to reduce or cancel the Principal Amount of the Notes of any Series, (iii) to reduce the rate or rates of interest in respect of the Notes of any Series or to vary the method or basis of calculating the rate or rates or amount of interest, (iv) if there is shown on the face of the Notes of any Series a Minimum Interest Rate and/or a Maximum Interest Rate, to reduce such Minimum Interest Rate and/or such Maximum Interest Rate, (v) to change the method of calculating the Amortised Face Amount in respect of Zero Coupon Notes, Principal Only Notes or Interest Only Notes of any Series, (vi) to change the currency or currencies of payment of the Notes of any Series or (vii) to modify the provisions concerning the quorum required at any meeting of Noteholders of any Series or the majority required to pass the Extraordinary Resolution, in which case the necessary quorum will be two or more persons holding or representing, save as provided below, not less than 75 per cent., or at any adjourned meeting, save as provided below, not less than 25 per cent., in principal amount of the Notes of the relevant Series for the time being outstanding. Any Extraordinary Resolution duly passed shall be binding on all holders of Notes of the relevant Series (whether or not they were present or represented at the meeting at which such resolution was passed) and on all Principal Couponholders (if any) and all Couponholders (if any). In the Trust Deed, "Extraordinary Resolution" is defined to mean a resolution passed at a meeting of holders of Notes or Principal Coupons (if any) of a Series, which meeting was duly convened and held in accordance with the provisions of the Trust Deed, by a majority consisting of not less than 50 per cent. of the votes cast.

### (b) Modification and Waiver

The Trustee and the Republic may agree, without the consent of the Noteholders, Principal Couponholders (if any) or Couponholders, to (i) any modification of any of the provisions of the Trust Deed which is a formal, minor or technical nature or is made to correct a manifest error, and (ii) any other modification (except as mentioned in the Trust Deed), and any waiver or authorisation of any breach or proposed breach, of any of the provisions of the Trust Deed which is in the opinion of the Trustee not materially prejudicial to the interests of the Noteholders. Any such modification, authorisation or waiver

shall be binding on the Noteholders, the Principal Couponholders (if any) and the Couponholders and, if the Trustee so requires, such modification shall be notified to the Noteholders as soon as practicable.

*(c) Entitlement of the Trustee*

In connection with the exercise of its functions (including but not limited to those referred to in this Condition 11) the Trustee shall have regard to the interests of the Noteholders as a class and shall not have regard to the consequences of such exercise for individual Noteholders, Principal Couponholders (if any) or Couponholders and the Trustee shall not be entitled to require, nor shall any Noteholder, Principal Couponholder or Couponholder be entitled to claim, from the Republic any indemnification or payment in respect of any tax consequences of any such exercise upon individual Noteholders, Principal Couponholders (if any) or Couponholders.

*(d) Principal Only Notes and Interest Only Notes*

This Condition 11 shall apply to Principal Only Notes and Interest Only Notes as if references in this Condition 11 to "Notes" were references to the Principal Only Notes alone or to each Class of Interest Only Notes treated separately (and "Noteholders" shall be construed accordingly) and as if references to "principal amount" were, in the case of Interest Only Notes, references to "Face Amount".

## 12. Enforcement

At any time after the Notes become due and payable, the Trustee may, at its discretion and without further notice, institute such proceedings against the Republic as it may think fit to enforce the terms of the Trust Deed, the Notes, the Principal Coupons (if any) and the Coupons, but it need not take any such proceedings unless (a) it shall have been so directed by an Extraordinary Resolution or so requested in writing by Noteholders (including, if the Amortisation Provisions are specified on the face of Bearer Notes as applying to such Notes, the Principal Couponholders) holding at least 25 per cent. in principal amount of the Notes of the relevant Series outstanding, and (b) it shall have been indemnified to its satisfaction. No Noteholder, Principal Couponholder (if any) or Couponholder may proceed directly against the Republic unless the Trustee, having become bound so to proceed, fails to do so within the reasonable time and such failure is continuing.

This Condition 12 shall apply to Principal Only Notes and Interest Only Notes as if references in this Condition 12 to "Notes" were references to the Principal Only Notes alone or to each Class of Interest Only Notes treated separately (and "Noteholders" shall be construed accordingly) and as if references to "principal amount" were, in the case of Interest Only Notes, references to "Face Amount".

## 13. Indemnification of the Trustee

The Trust Deed contains provisions for the indemnification of the Trustee and for its relief from responsibility. The Trustee is entitled to enter into business transactions with the Republic and any entity related to the Republic without accounting for any profit.

## 14. Replacement of Bearer Notes, Principal Coupons, Coupons, Talons and Definitive Registered Notes

If any Bearer Note, Principal Coupon, Coupon, Talon or Definitive Registered Note is lost, stolen, mutilated, defaced or destroyed it may be replaced at the specified office of the Paying Agent in London (in the case of Bearer Notes, Principal Coupons (if any), Coupons and Talons) and the Transfer Agent in New York City (in the case of Definitive Registered Notes) subject to all applicable laws and stock exchange requirements, upon payment by the claimant of the taxes and expenses incurred in connection with such replacement and on such terms as to evidence, security, indemnity and otherwise as the Republic may require (provided that the requirement is reasonable in the light of prevailing market practice). Mutilated or defaced Notes, Principal Coupons (if any), Coupons, Talons or Definitive Registered Notes must be surrendered before replacements will be issued.

### 15. Further Issues

The Republic may from time to time without the consent of the Noteholders, Principal Couponholders (if any) or Couponholders create and issue further securities having the same terms and conditions as the Notes of any Series in all respects (or in all respects except for the first payment of interest on them) so that such further issue shall be consolidated and form a single series with the outstanding securities of any series (including the Notes of any Series). References in these Conditions to the Notes of any Series include (unless the context requires otherwise) any other securities issued pursuant to this Condition 15 and forming a single series with the Notes of such Series. Any further securities forming a single series with the outstanding securities of any series (including the Notes of any Series) constituted under the Trust Deed or any deed supplemental to it shall be constituted under the Trust Deed. The Trust Deed contains provisions for convening a single meeting of the Noteholders of a Series and the holders of securities of other series (including the Notes of any other Series) where the Trustee so decides.

### 16. Agents

In acting under the Agency Agreement, the Agents act solely as agents of the Republic and do not assume any obligation or relationship of agency or trust for or with any holder.

### 17. Notices

Notices to holders of Registered Notes will be mailed to them at their respective addresses in the Register, the Principal Register or the Interest Register, as the case may be, and shall be published (so long as the Notes of the relevant Series are listed on the Luxembourg Stock Exchange and/or the Paris Stock Exchange and the relevant Exchange so requires, and the rules of the Luxembourg Stock Exchange so require) in a leading newspaper having general circulation in Luxembourg (which is expected to be the *Luxemburger Wort*) and/or, as the case may be, Paris (which is expected to be *L'Agence Economique et Financière*). Any such notice shall be deemed to have been given on the later of the date of such publication and fourth weekday (being a day other than a Saturday or a Sunday) after the date of mailing. Notices to the holders of Bearer Notes will be valid if published in a daily newspaper of general circulation in London and (so long as the Notes of the relevant Series are listed on the Luxembourg Stock Exchange and/or the Paris Stock Exchange and the relevant Exchange so requires, and the rules of the Luxembourg Stock Exchange so require) in a leading newspaper having general circulation in Luxembourg and/or Paris, as the case may be, or, if in the opinion of the Trustee any such publication is not practicable, in another leading daily English language newspaper of general circulation in Europe approved by the Trustee and, so long as the Notes are listed on the Paris Stock Exchange and that Exchange so requires, in a French language newspaper with general circulation in Europe. It is expected that such publications will be made in the *Financial Times* in London, the *Luxemburger Wort* in Luxembourg and *L'Agence Economique et Financière* in Paris. Notices will, if published more than once or on different dates, be deemed to have been given on the date of the first publication in both such newspapers as provided above.

Principal Couponholders (if any) and Couponholders shall be deemed for all purposes to have notice of the contents of any notice to the holders of Bearer Notes in accordance with this Condition 17.

### 18. Governing Law, Jurisdiction and Waiver of Immunity

#### (a) Governing Law

The Trust Deed, the Notes, the Principal Coupons (if any), the Coupons and the Talons are governed by, and shall be construed in accordance with, English law.

#### (b) Jurisdiction

The Republic has in the Trust Deed irrevocably submitted to the jurisdiction of the courts of England; any New York State or federal court sitting in the Borough of Manhattan, New York City; and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Notes, the Principal Coupons (if any), the Coupons or the Trust Deed (a "Related Proceeding"). The Republic has in the Trust Deed waived any objection to Related

Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

*(c)  Agent for Service of Process*

The Republic has in the Trust Deed agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose, and (ii) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in England may be made upon Banco de la Nación Argentina, presently located at Longbow House, 14/20 Chiswell Street, London EC1Y 4TD, England, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint a successor agent to act as its agent for such purpose.

*(d)  Waiver of Immunity*

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the State Immunity Act 1978 to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), *provided, however* that attachment prior to judgment or attachment in aid of execution will not be ordered by any courts of the Republic of Argentina in respect of (i) property of the public domain located in the territory of the Republic included within the provisions of Articles 2337 and 2340 of the Civil Code of Argentina, (ii) property located in the territory of the Republic which is dedicated to the purpose of providing an essential public service, (iii) property which constitutes freely available reserves, pursuant to Article 6 of Law No. 23,928 enacted by the Argentine Congress on March 27, 1991 ("Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central de la Republica Argentina consistently prepared in accordance with Article 5 of the Convertibility Law, and (iv) property covered by Article 19 of the 1996 Budget Law No. 24,624 (the "1996 Budget Law"), the provisions of which have been included in the Permanent Supplementary Budget Law, which provides that any funds, assets and other financial resources (whether in the form of cash, bank deposits, securities, third party obligations or any other method of payment), including the proceeds of any financing, of the Argentine Government and any of its governmental agencies and entities relating to the performance of the 1996 budget and any future budgets will be immune from attachment and may not be subject to any judicial action that may affect in any way their transferability, and which further provides that amounts due pursuant to any judicial action must be paid out of appropriations in the national budget. The courts of the Republic, in general, can only render judgments against the Republic that can be enforced against the Republic to the extent permitted by (i) the Law of Consolidation of Public Debt No. 23,982, particularly Article 22, (ii) Law No. 3,952 and (iii) the 1996 Budget Law, particularly Article 20, which has also been included in the Permanent Supplementary Budget Law. Any judgment against the Republic of a court in England or New York which satisfies the requirements of Articles 517 through 519 of Law No. 17,454, as amended by Law No. 22,434 (National Code of Civil and Commercial Procedures) is capable of being enforced in the courts of the Republic in accordance with the laws of the Republic taking into account (i) the Law of Consolidation of Public Debt No. 23,982, particularly Article 22, (ii) Law No. 3,952 and (iii)

the 1996 Budget Law, particularly Article 20. The agreement and waiver provided herein, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Trustee, a Noteholder, a Principal Couponholder or a Couponholder to enforce or execute a Related Judgment. The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Notes, the Principal Coupons, the Coupons and the Trust Deed and under no circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Notes, the Principal Coupons, the Coupons or the Trust Deed.

**SCHEDULE 2**

**FORM OF INDIVIDUAL DEFINITIVE PRINCIPAL ONLY NOTE**

On the front:

[THIS DEFINITIVE REGISTERED NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION OF THE UNITED STATES. THE OFFER, SALE, PLEDGE OR TRANSFER OF THIS DEFINITIVE REGISTERED NOTE IS SUBJECT TO CERTAIN CONDITIONS AND RESTRICTIONS, INCLUDING THOSE SET FORTH IN THE AGENCY AGREEMENT DATED JULY 27, 1993 RELATING TO THIS DEFINITIVE REGISTERED NOTE. THE HOLDER HEREOF, BY PURCHASING OR OTHERWISE ACQUIRING THIS DEFINITIVE REGISTERED NOTE, ACKNOWLEDGES THAT THIS DEFINITIVE REGISTERED NOTE IS A "RESTRICTED SECURITY" THAT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT AND AGREES FOR THE BENEFIT OF THE REPUBLIC THAT THIS DEFINITIVE REGISTERED NOTE MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OF THE STATES, TERRITORIES AND POSSESSIONS OF THE UNITED STATES GOVERNING THE OFFER AND SALE OF SECURITIES AND ONLY (1) TO THE REPUBLIC OR AN AFFILIATE OF THE REPUBLIC (UPON REDEMPTION HEREOF OR OTHERWISE), (2) PURSUANT TO AND IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT TO AN INSTITUTIONAL INVESTOR THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE OFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A UNDER THE SECURITIES ACT OR (3) PURSUANT TO AN EXEMPTION FROM REGISTRATION IN ACCORDANCE WITH REGULATION S OR RULE 144 (IF AVAILABLE) UNDER THE SECURITIES ACT. NO REPRESENTATION CAN BE MADE AS TO THE AVAILABILITY OF THE EXEMPTION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT FOR RESALES OF THIS DEFINITIVE REGISTERED NOTE.][1]

FOR PURPOSES OF SECTIONS 1271 ET. SEQ. OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED, THIS NOTE HAS ORIGINAL ISSUE DISCOUNT OF EURO 9,388.10 PER EURO 10,000 OF PRINCIPAL AMOUNT OF THIS NOTE; THE ISSUE PRICE OF THIS NOTE IS EURO 611.90 PER EURO 10,000 OF ITS PRINCIPAL AMOUNT; THE ISSUE DATE IS MAY 28, 1998; AND THE YIELD TO MATURITY IS 9.76 PER CENT.

---

1. Legend to be borne on any Definitive Registered Note which has been transferred pursuant to and in reliance on Rule 144A under the Securities Act

| Principal Amount | CUSIP/CINS | Series/Tranche | Certificate Number |
|---|---|---|---|

## THE REPUBLIC OF ARGENTINA
### EURO 750,000,000 INTEREST STRIP NOTES DUE 2028
#### Issued under a
#### EURO MEDIUM-TERM NOTE PROGRAMME

The Notes in respect of which this Definitive Registered Note is issued forms one of the Series of Notes referred to above issued by The Republic of Argentina (the "Republic"), designated as specified in the title hereof, and constituted by the Trust Deed referred to on the reverse hereof.

The Notes are subject to, and have the benefit of, that Trust Deed and the terms and conditions (the "Conditions") endorsed hereon.

Terms referred to in the Pricing Supplement attached hereto shall take effect as if set out here on the face hereof.

The Republic, for value received, hereby certifies that it will pay to [name] of [address] (the "Registered Holder"), on surrender hereof, the Principal Amount specified herein or, on any date after the date hereof, such other principal amount of the Notes identified from time to time on the Principal Only Register as being represented by this Definitive Registered Note, or the Amortised Face Amount in accordance with Condition 6(g) in respect of the Principal Amount of Notes in respect of which this Definitive Registered Note is issued, on the Maturity Date stated herein (or on such earlier date as that principal sum or other sum may become repayable in accordance with the Conditions), together with such other sums and additional amounts (if any) as may be payable in respect of the Principal Amount under the Conditions until payment of the Principal Amount or other sums and additional amounts has been made or duly provided for.

[The statements set forth in the legend above are an integral part of the Notes in respect of which this Definitive Registered Note is issued and by acceptance hereof each holder of such Notes agrees to be subject to and bound by the terms and provisions set forth in such legend.][1] For so long as the Notes are outstanding, the Republic will, during the period in which the Republic is neither subject to Section 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended, nor exempt from reporting pursuant to Rule 12g3-2(b) thereunder, nor a foreign government as defined in Rule 405 under the Securities Act eligible to register securities under Schedule B of the Securities Act, provide to the holder hereof, or to any prospective purchaser hereof designated by such holder, upon request, the information specified in, and meeting the requirements of, Rule 144A(d)(4) under the U.S. Securities Act of 1933, as amended (the "Securities Act").

For the purposes of this Definitive Registered Note, the Republic certifies that (a) the Registered Holder is, at the date hereof, entered in the Principal Only Register as the holder of the Note in respect of which this Definitive Registered Note is issued, (b) this Definitive Registered Note is evidence of entitlement only, (c) title to the Note in respect of which this Definitive Registered Note is issued passes only on due registration on the Principal Only Register, and (d) only the Registered Holder is entitled to payments in respect of the Note in respect of which this Definitive Registered Note is issued.

---

1. This sentence to be included on any Definitive Registered Note which has been transferred pursuant to and in reliance on Rule 144A under the Securities Act

This Definitive Registered Note shall not become valid or obligatory for any purpose until authenticated by or on behalf of the Principal Only Registrar.

THE REPUBLIC OF ARGENTINA

By: _____

        Authorised Signatory


Certificate of Authentication

Certified by or on behalf of the Principal Only Registrar that the above-named holder is on [        ] entered in the Principal Only Register as holder of the above-mentioned principal amount of Notes.

By: _____

        Authorised Signatory

[Include Terms and Conditions as set out in Schedule 1]

**TRUSTEE**

Chase Manhattan Trustees Limited
Trinity Tower
9 Thomas More Street
London E1 9YT

**PRINCIPAL PAYING AGENT**

The Chase Manhattan Bank
Trinity Tower
9 Thomas More Street
London E1 9YT

**PRINCIPAL ONLY REGISTRAR AND
NEW YORK TRANSFER AGENT**

The Chase Manhattan Bank
450 West 33rd Street
New York, NY 10001

**PAYING AGENT AND
EUROPEAN TRANSFER AGENT**

Chase Manhattan Bank Luxembourg S.A.
5 Rue Plaetis
L-2338 Luxembourg

[Attach Pricing Supplement]

FORM OF TRANSFER

FOR VALUE RECEIVED the undersigned hereby transfers to

..........................................................................................

**(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF TRANSFEREE)**

.......................................... principal amount of the Notes in respect of which this Definitive Registered Note is issued, and all rights under it, and irrevocably constitutes and appoints .......................... as attorney to transfer Notes in respect of which this Definitive Registered Note is issued on the books kept for registration thereof, with full power of substitution.

Dated .......................................

Signed ..........................    Certifying Signature

Note:

   (i) The signature to this transfer must correspond with the name as it appears on the face of this Definitive Registered Note.

   (ii) A representative of the Noteholder should state the capacity in which he signs e.g. executor.

   (iii) The signature of the person effecting a transfer shall conform to any list of duly authorised specimen signatures supplied by the registered holder or be certified by a recognised bank, notary public or in such other manner as the relevant Transfer Agent may require.

**SCHEDULE 3**

## FORM OF INDIVIDUAL DEFINITIVE INTEREST ONLY NOTE.

On the front:

[THIS DEFINITIVE REGISTERED NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION OF THE UNITED STATES. THE OFFER, SALE, PLEDGE OR TRANSFER OF THIS DEFINITIVE REGISTERED NOTE IS SUBJECT TO CERTAIN CONDITIONS AND RESTRICTIONS, INCLUDING THOSE SET FORTH IN THE AGENCY AGREEMENT DATED JULY 27, 1993 RELATING TO THIS DEFINITIVE REGISTERED NOTE. THE HOLDER HEREOF, BY PURCHASING OR OTHERWISE ACQUIRING THIS DEFINITIVE REGISTERED NOTE, ACKNOWLEDGES THAT THIS DEFINITIVE REGISTERED NOTE IS A "RESTRICTED SECURITY" THAT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT AND AGREES FOR THE BENEFIT OF THE REPUBLIC THAT THIS DEFINITIVE REGISTERED NOTE MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OF THE STATES, TERRITORIES AND POSSESSIONS OF THE UNITED STATES GOVERNING THE OFFER AND SALE OF SECURITIES AND ONLY (1) TO THE REPUBLIC OR AN AFFILIATE OF THE REPUBLIC (UPON PAYMENT HEREOF OR OTHERWISE), (2) PURSUANT TO AND IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT TO AN INSTITUTIONAL INVESTOR THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE OFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A UNDER THE SECURITIES ACT OR (3) PURSUANT TO AN EXEMPTION FROM REGISTRATION IN ACCORDANCE WITH REGULATION S OR RULE 144 (IF AVAILABLE) UNDER THE SECURITIES ACT. NO REPRESENTATION CAN BE MADE AS TO THE AVAILABILITY OF THE EXEMPTION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT FOR RESALES OF THIS DEFINITIVE REGISTERED NOTE.][1]

FOR PURPOSES OF SECTIONS 1271 ET. SEQ. OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED, THIS NOTE HAS ORIGINAL ISSUE DISCOUNT OF EURO [Insert][2] PER EURO 10,000 OF FACE AMOUNT OF THIS NOTE; THE ISSUE PRICE OF THIS NOTE IS EURO [Insert][2] PER EURO 10,000 OF ITS FACE AMOUNT; THE ISSUE DATE IS MAY 28, 1998; AND THE YIELD TO MATURITY IS [Insert][2] PER CENT..

---

1. Legend to be borne on any Definitive Registered Note which has been transferred pursuant to and in reliance on Rule 144A under the Securities Act.
2. For each Class of Interest Only Note insert as follows:-

| Class | OID(Euro) | Issue Price(Euro) | Yield(%) |
|-------|-----------|-------------------|----------|
| 2001 | 1,957.13 | 8,042.87 | 7.53 |
| 2006 | 4,892.05 | 5,107.95 | 8.78 |
| 2011 | 6,939.36 | 3,060.64 | 9.535 |
| 2016 | 8,135.42 | 1,864.58 | 9.78 |
| 2021 | 8,857.22 | 1,142.78 | 9.89 |
| 2026 | 9,278.64 | 721.36 | 9.845 |

---

Draft 1440326/2.1/28 May 1998                                     35

| Face Amount | CUSIP/CINS | Series/Tranche | Certificate Number |
|---|---|---|---|
|  |  |  |  |

### THE REPUBLIC OF ARGENTINA
### EURO 750,000,000 INTEREST STRIP NOTES DUE 2028
### Issued under a
### EURO MEDIUM-TERM NOTE PROGRAMME

#### Class [2001][2006][2011][2016][2021][2026] Interest Only Note

The Notes in respect of which this Definitive Registered Note is issued forms one of the Class which is part of the Series of Notes referred to above issued by The Republic of Argentina (the "Republic"), designated as specified in the title hereof, and constituted by the Trust Deed referred to on the reverse hereof.

The Notes are subject to, and have the benefit of, that Trust Deed and the terms and conditions (the "Conditions") endorsed hereon.

Terms referred to in the Pricing Supplement attached hereto shall take effect as if set out here on the face hereof.

The Republic, for value received, hereby certifies that it will pay to [name] of [address] (the "Registered Holder"), on surrender hereof, the Face Amount of the Class of Interest Only Notes specified herein or, on any date after the date hereof, such other Interest amount of the relevant Class of Interest Only Notes identified from time to time on the Interest Only Register as being represented by this Definitive Registered Note, or the Amortised Face Amount in accordance with Condition 6(h) in respect of the Face Amount of the Class of Interest Only Notes in respect of which this Definitive Registered Note is issued, on the Reference Date for the relevant Class of Interest Only Notes stated herein (or on such earlier date as that interest sum or other sum may become repayable in accordance with the Conditions), together with such other sums and additional amounts (if any) as may be payable in respect of the relevant Class of Interest Only Notes stated herein under the Conditions until payment of the Face Amount or other sums and additional amounts has been made or duly provided for.

[The statements set forth in the legend above are an integral part of the Notes in respect of which this Definitive Registered Note is issued and by acceptance hereof each holder of such Notes agrees to be subject to and bound by the terms and provisions set forth in such legend.][1] For so long as the Notes are outstanding, the Republic will, during the period in which the Republic is neither subject to Section 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended, nor exempt from reporting pursuant to Rule 12g3-2(b) thereunder, nor a foreign government as defined in Rule 405 under the Securities Act eligible to register securities under Schedule B of the Securities Act, provide to the holder hereof, or to any prospective purchaser hereof designated by such holder, upon request, the information specified in, and meeting the requirements of, Rule 144A(d)(4) under the U.S. Securities Act of 1933, as amended (the "Securities Act").

For the purposes of this Definitive Registered Note, the Republic certifies that (a) the Registered Holder is, at the date hereof, entered in the Interest Only Register as the holder of the Note in respect of which this Definitive Registered Note is issued, (b) this Definitive Registered Note is

---

1. This sentence to be included on any Definitive Registered Note which has been transferred pursuant to and in reliance on Rule 144A under the Securities Act

evidence of entitlement only, (c) title to the Note in respect of which this Definitive Registered Note is issued passes only on due registration on the Interest Only Register, and (d) only the Registered Holder is entitled to payments in respect of the Note in respect of which this Definitive Registered Note is issued.

This Definitive Registered Note shall not become valid or obligatory for any purpose until authenticated by or on behalf of the Interest Only Registrar.

THE REPUBLIC OF ARGENTINA

By: _____
         Authorised Signatory


Certificate of Authentication

Certified by or on behalf of the Interest Only Registrar that the above-named holder is on [          ] entered in the Interest Only Register as holder of the above-mentioned face amount of Notes.

By: _____
         Authorised Signatory

[Include Terms and Conditions as set out Schedule 1]

**TRUSTEE**

Chase Manhattan Trustees Limited
Trinity Tower
9 Thomas More Street
London E1 9YT

**PRINCIPAL PAYING AGENT**

The Chase Manhattan Bank
Trinity Tower
9 Thomas More Street
London E1 9YT

**INTEREST ONLY REGISTRAR AND
NEW YORK TRANSFER AGENT**

The Chase Manhattan Bank
450 West 33rd Street
New York, NY 10001

**PAYING AGENT AND
EUROPEAN TRANSFER AGENT**

Chase Manhattan Bank Luxembourg S.A.
5 Rue Plaetis
L-2338 Luxembourg

[Attach Pricing Supplement]

FORM OF TRANSFER

FOR VALUE RECEIVED the undersigned hereby transfers to

........................................................................................

........................................................................................

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF TRANSFEREE)

................... interest amount of the Class [2001][2006][2011][2016][2021][2026]*
Interest Only Notes in respect of which this Definitive Registered Note is issued, and all rights
under it, and irrevocably constitutes and appoints ........................... as attorney to transfer
Notes in respect of which this Definitive Registered Note is issued on the books kept for
registration thereof, with full power of substitution.

Dated .................            .............................

Signed ....................            Certifying Signature

Note:

(i) The signature to this transfer must correspond with the name as it appears on the
face of this Definitive Registered Note.

(ii) A representative of the Noteholder should state the capacity in which he signs e.g.
executor.

(iii) The signature of the person effecting a transfer shall conform to any list of duly
authorised specimen signatures supplied by the registered holder or be certified by a
recognised bank, notary public or in such other manner as the relevant Transfer Agent
may require.

* Delete as applicable

## SCHEDULE 4

## FORM OF DTC GLOBAL NOTES

[THIS DTC GLOBAL NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION OF THE UNITED STATES.

THE OFFER, SALE, PLEDGE OR TRANSFER OF THIS DTC GLOBAL NOTE IS SUBJECT TO CERTAIN CONDITIONS AND RESTRICTIONS, INCLUDING THOSE SET FORTH IN THE AGENCY AGREEMENT DATED JULY 27, 1993 RELATING TO THIS DTC GLOBAL NOTE.

THE HOLDER HEREOF, BY PURCHASING OR OTHERWISE ACQUIRING THIS DTC GLOBAL NOTE, ACKNOWLEDGES THAT THIS DTC GLOBAL NOTE IS A "RESTRICTED SECURITY" THAT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT AND AGREES FOR THE BENEFIT OF THE REPUBLIC THAT THIS DTC GLOBAL NOTE MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OF THE STATES, TERRITORIES AND POSSESSIONS OF THE UNITED STATES GOVERNING THE OFFER AND SALE OF SECURITIES AND ONLY (1) TO THE REPUBLIC OR AN AFFILIATE OF THE REPUBLIC (UPON REDEMPTION HEREOF OR OTHERWISE), (2) PURSUANT TO AND IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT TO AN INSTITUTIONAL INVESTOR THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE OFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A UNDER THE SECURITIES ACT OR (3) PURSUANT TO AN EXEMPTION FROM REGISTRATION IN ACCORDANCE WITH REGULATION S OR RULE 144 (IF AVAILABLE) UNDER THE SECURITIES ACT. NO REPRESENTATION CAN BE MADE AS TO THE AVAILABILITY OF THE EXEMPTION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT FOR RESALES OF THIS DTC GLOBAL NOTE.][1]

Unless this certificate is presented by an authorised representative of The Depository Trust Company ("DTC") to the Republic or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as is requested by an authorised representative of DTC (and any payment is made to Cede & Co.), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein.

FOR PURPOSES OF SECTIONS 1271 ET. SEQ. OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED, UPON THE SEPARATION OF THE RIGHT TO RECEIVE

---

1. Legend to be borne on any DTC Restricted Global Note which has been transferred pursuant to and in reliance on Rule 144A under the Securities Act

PRINCIPAL FROM THE RIGHT TO RECEIVE INTEREST, THE RESULTING PRINCIPAL ONLY
NOTES AND INTEREST ONLY NOTES WILL HAVE THE FOLLOWING FEATURES:

| Class of Notes | Original Issue Discount (Euro, per Euro 10,000) | Issue Price (Euro, per Euro 10,000) | Yield (per cent) | Issue Date |
|---|---|---|---|---|
| Principal Only | 9,388.10 | 611.90 | 9.76 | May 28, 1998 |
| 2001 | 1,957.13 | 8,042.87 | 7.53 | May 28, 1998 |
| 2006 | 4,892.05 | 5,107.95 | 8.76 | May 28, 1998 |
| 2011 | 6,939.36 | 3,060.64 | 9.535 | May 28, 1998 |
| 2016 | 8,135.42 | 1,864.58 | 9.78 | May 28, 1998 |
| 2021 | 8,857.22 | 1,142.78 | 9.89 | May 28, 1998 |
| 2026 | 9,278.64 | 721.36 | 9.845 | May 28, 1998 |

| Principal Amount | CUSIP/CINS | Series/Tranche | Certificate Number |
|---|---|---|---|

### THE REPUBLIC OF ARGENTINA
### EURO 750,000,000 INTEREST STRIP NOTES DUE 2028
### issued under a
### EURO MEDIUM-TERM NOTE PROGRAMME

The Note(s) in respect of which this DTC Global Note is issued forms one of the Series of Notes referred to above issued by The Republic of Argentina (the "Republic"), designated as specified in the title hereof, and constituted by the Trust Deed referred to on the reverse hereof. The Notes are subject to, and have the benefit of, that Trust Deed and the terms and conditions (the "Conditions") endorsed hereon. Terms referred to in the Pricing Supplement attached hereto shall take effect as if set out on the face hereof.

The Republic, for value received, hereby certifies that:

(i)    It will pay to Cede & Co. at its office for the time being (the "Registered Holder"), on surrender hereof, the Principal Amount specified herein or, on any date after the date hereof, such other principal amount as is equal to the aggregate principal amount of the Notes identified from time to time on the Principal Only Register as being represented by this DTC Global Note, or the Amortised Face Amount in accordance with Condition 6(g) in respect of the Principal Amount of Notes in respect of which this DTC Global Note is issued on the Maturity Date stated herein (or on such earlier date as that principal sum or other sum may become repayable in accordance with the Conditions), together with such other sums and additional amounts (if any) as may be payable in respect of the Principal Amount under the Conditions until payment of the Principal Amount or other sums and additional amounts has been made or duly provided for; and

(ii)   It will pay to Cede & Co. at its office for the time being (the "Registered Holder"), on surrender hereof for annotation in Annex A, the Face Amount for each Class of Interest Only Notes specified herein or, on any date after the date hereof, such other interest amount as is equal to the aggregate interest amount of the relevant Class of Interest Only Notes identified from time to time on the Interest Only Register as being represented by this DTC Global Note, or the Amortised Face Amount in accordance with Condition 6(h) in respect of the Face Amount of the relevant Class of Interest Only Notes in respect of which this DTC Global Note is issued on the Reference Date for the relevant Class of Interest Only Notes stated herein (or on such earlier date as that interest sum or other sum may become repayable in accordance with the Conditions), together with such other sums and additional amounts (if any) as may be payable in respect of the relevant Class of Notes stated herein under the Conditions until payment of the relevant Face Amount or other sums and additional amounts has been made or duly provided for

[The statements set forth in the legend below are an integral part of the Notes in respect of which this DTC Global Note is issued and by acceptance hereof each holder of such Notes agrees to be subject to and bound by the terms and provisions set forth in such legend.][1] For so long as the Notes are outstanding, the Republic will, during the period in which the Republic is neither subject

---

1.   Sentence to be included on any DTC Global Note which has been transferred pursuant to, and in reliance on, Rule 144A under the Securities Act

to Section 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended, nor exempt from reporting pursuant to Rule 12g3-2(b) thereunder, nor a foreign government as defined in Rule 405 under the Securities Act eligible to register securities under Schedule B of the Securities Act, provide to the holder hereof, or to any prospective purchaser hereof designated by such holder, upon request, the information specified in, and meeting the requirements of, Rule 144A(d)(4) under the U.S. Securities Act of 1933, as amended (the "Securities Act").

For the purposes of this DTC Global Note, the Republic certifies that (a) the Registered Holder is, at the date hereof, entered in the Principal Only Register as the holder of the Principal Only Note(s) and in the Interest Only Register as the holder of the Interest Only Notes in respect of which this DTC Global Note is issued, (b) this DTC Global Note is evidence of entitlement only, (c) title to the Note(s) in respect of which this DTC Global Note is issued passes only on due registration on the relevant Register, and (d) only the Registered Holder is entitled to payments in respect of the Note(s) in respect of which this DTC Global Note is issued.

This DTC Global Note shall not become valid or obligatory for any purpose until authenticated by or on behalf of the Registrar.

IN WITNESS WHEREOF the Republic has caused this DTC Global Note to be signed on its behalf.

Dated as of the issue Date stated above.

THE REPUBLIC OF ARGENTINA

By: _____
     Authorised Signatory


Certificate of Authentication

Certified by or on behalf of the Registrar that the above-named holder is on May 28, 1998 entered in the relevant Register as holder of the above-mentioned Notes.

By: _____
     Authorised Signatory

On the back:

[Include Terms and Conditions as set out in Schedule 1]

TRUSTEE

Chase Manhattan Trustees Limited
Trinity Tower
9 Thomas More Street
London E1 9YT

PRINCIPAL ONLY REGISTRAR,
INTEREST ONLY REGISTRAR
AND
NEW YORK TRANSFER AGENT

PRINCIPAL PAYING AGENT

The Chase Manhattan Bank
Trinity Tower
9 Thomas More Street
London E1 9YT

The Chase Manhattan Bank
450 West 33rd Street
New York, NY 10001

PAYING AGENT AND
EUROPEAN TRANSFER AGENT

Chase Manhattan Bank Luxembourg S.A.
5 Rue Plaetis
L-2338 Luxembourg

[Attach Pricing Supplement]

FORM OF TRANSFER

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers to

..........................................................................

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF TRANSFEREE)

.................. [principal amount of the Principal Only Notes][face amount of the Class [2001][2006][2011][2016][2021][2026]* interest Only Notes]* in respect of which this DTC Global Note is issued, and all rights under it, and irrevocably constitutes and appoints .............. as attorney to transfer the Note(s) in respect of which this DTC Global Note is issued on the books kept for registration thereof, with full power of substitution.

Dated ..........................    ..............................

Signed ..........................    Certifying Signature

Note:

(i) The signature to this transfer must correspond with the name as it appears on the face of this DTC Global Note.

(ii) A representative of the Noteholder should state the capacity in which he signs.

(iii) The signature of the person effecting a transfer shall conform to any list of duly authorised specimen signatures supplied by the registered holder or be certified by a recognised bank, notary public or in such other manner as the Registrar may require.

* Delete as applicable

IN WITNESS WHEREOF this Deed has been executed as a deed on the date stated at the beginning.

Signed, sealed and delivered                )
as a deed by                                        )
**THE REPUBLIC OF ARGENTINA**       )
by its duly authorised                          )
signatory                                            )

*C. Ewatz*

In the presence of:

*MARCELO ZCIKSON*     *1902 L STREET #606*
*Washington, DC 20036*

**THE COMMON SEAL of CHASE**          )
**MANHATTAN TRUSTEES LIMITED**      )
was affixed in the presence of:-              )

Director   *KM Raimond*

Director

*7b66(c)*

Draft 1440328/2.1/28 May 1998                              46

# Exhibit C

On the back:

## TERMS AND CONDITIONS OF THE NOTES

The Notes (as defined below) are constituted by a Trust Deed (the "Trust Deed") dated July 27, 1993 and made between The Republic of Argentina (the "Republic") and Chase Manhattan Trustees Limited (the "Trustee", which expression shall include all persons for the time being the trustee or trustees under the Trust Deed) as trustee for the Noteholders (as defined below). These terms and conditions include summaries of, and are subject to, the detailed provisions of the Trust Deed, which includes the form of the Notes and the Coupons (if any) relating to them (the "Coupons"). Copies of the Trust Deed, the Deed of Undertaking of Banco Central de la República Argentina ("Banco Central") dated July 27, 1993 (the "Banco Central Undertaking") containing an undertaking by Banco Central to exchange for the Specified Currency (as defined in the Trust Deed) and as specified on the face of the Note, such funds as are transferred to it by the Republic in connection with the obligations of the Republic under the Trust Deed and the Notes, subject to certain conditions described in the Banco Central Undertaking, and of the Agency Agreement (the "Agency Agreement") dated July 27, 1993 and made between the Republic, the Trustee, The Chase Manhattan Bank, N.A., London branch as principal paying agent (the "Principal Paying Agent") and as calculation agent (the "Calculation Agent"), Chase Manhattan Bank Luxembourg S.A. as paying agent (together with the Principal Paying Agent, the "Paying Agents") and as European transfer agent and The Chase Manhattan Bank, N.A., New York branch as registrar (the "Registrar") and as New York transfer agent (together with the European transfer agent, the "Transfer Agents") are available for inspection at the specified offices of each of the Trustee, the Registrar and the Paying Agents. The Paying Agents, the Calculation Agent, the Registrar and the Transfer Agents are together referred to herein as the "Agents". The Noteholders (as defined below) and the holders of the Coupons (if any) and, where applicable in the case of interest bearing Notes in bearer form, talons for further Coupons (the "Talons") (the "Couponholders") are entitled to the benefit of, are bound by and are deemed to have notice of all of the provisions of the Trust Deed and the Banco Central Undertaking and are deemed to have notice of those applicable to them of the Agency Agreement.

**1.   Form, Currency, Denomination, Title and Pricing Supplement**

*(a)   Form*

Each Series of Notes of which this Note forms part (in these Conditions, the "Notes") are issued either in bearer form ("Bearer Notes") in the Principal Amount of an Authorised Denomination (as defined in Condition 1(b)), or in registered form ("Registered Notes") in the Principal Amount of an Authorised Denomination or an integral multiple thereof. The bearer or registered form of each Note will be specified on its face, and these Conditions must be read accordingly. A definitive Note will be issued to each holder of Registered Note(s) in respect of its registered holding or holdings (each a "Definitive Registered Note"). Each Definitive Registered Note will be numbered serially with an identifying number which will be recorded in the register (the "Register") which the Republic shall procure to be kept by the Registrar. The Principal Amount of each Note will be specified on its face.

This Note is a Fixed Rate Note, a Floating Rate Note, a Zero Coupon Note, a Step-up Note or a Step-down Note (depending upon the Interest Basis specified on its face). All payments in respect of this Note shall be made in the Specified Currency specified on its face (subject, where the currency so shown is ECU, to the provisions of Condition 7(f)).

Bearer Notes are issued with Coupons (and, where appropriate in the case of interest bearing Bearer Notes, a Talon) attached, save in the case of a Zero Coupon Note in which case references to interest (other than in relation to interest due after its Maturity Date), Coupons and Talons in these Conditions are not applicable.

*(b)  Denomination*

"Authorised Denomination" means:—

(i) in the case of a Bearer Note, the denomination or denominations specified on the face of such Note. Bearer Notes of one Authorised Denomination may not be exchanged for Bearer Notes of another Authorised Denomination (if any); or

(ii) in the case of a Registered Note which is resold pursuant to Rule 144A under the Securities Act, U.S. $250,000 (or its equivalent rounded upwards as specified on the face of such Note) and higher integral multiples of U.S. $50,000 (or its equivalent as aforesaid) and in the case of a Registered Note sold pursuant to Regulation S under the Securities Act, U.S. $10,000 (or its equivalent as aforesaid) and integral multiples thereof, or, in either case, the higher denomination or denominations specified on the face of such Note.

Any minimum Authorised Denomination of a Note required by any law or directive or regulatory authority in respect of the currency of issue of such Note shall be such as applied on or prior to the Issue Date (as defined in Condition 5(III)) specified on the face of such Note.

*(c)  Title*

Title to the Bearer Notes, the Coupons appertaining thereto and, where applicable, the Talons appertaining thereto shall pass by delivery. Title to the Registered Notes shall pass by registration in the Register. Except as ordered by a court of competent jurisdiction or as required by law, the holder of any Note, Coupon or Talon shall be deemed to be and may be treated as the absolute owner of such Note, Coupon or Talon, as the case may be, for the purpose of receiving payment thereof or on account thereof and for all other purposes, whether or not such Note, Coupon or Talon shall be overdue and notwithstanding any notice of ownership, theft or loss thereof or any writing thereon made by anyone.

In these Conditions, "Noteholder" and, in relation to a Note, Coupon or Talon, "holder", means the bearer of any Bearer Note, Coupon or Talon, and the person in whose name a Registered Note is registered (as the case may be), "Series" means Notes which have identical terms and conditions, other than in respect of Interest Commencement Dates (as defined in Condition 5(III)), Issue Dates and related matters, and "Tranche" means, in relation to a Series, those Notes of such Series which have the same Issue Date.

*(d)  Pricing Supplement*

References in these Conditions to terms specified on the face of a Note shall be deemed to include references to terms specified in the applicable pricing supplement issued in respect of a Tranche which includes such Note (each a "Pricing Supplement").

## 2.  Transfers of Registered Notes and Issue of Definitive Registered Notes

*(a)  Transfer of Registered Notes*

A Registered Note may be transferred in whole or in part in an Authorised Denomination upon the surrender of the Definitive Registered Note issued in respect of the Registered Note to be transferred, together with the form of transfer endorsed on it duly completed and executed, at the specified office of the Registrar or any Transfer Agent. In the case of a transfer of part only of a Registered Note a new Definitive Registered Note in respect of the balance not transferred will be issued to the transferor. Each new Definitive Registered Note to be issued upon transfer of Registered Notes will, within three business days of receipt of such form of transfer, be mailed at the risk of the holder entitled to the new Definitive Registered Note to such address as may be specified in such form of transfer.

*(b)  Transfer Free of Charge*

Registration of transfer will be effected without charge by or on behalf of the Republic, the Registrar or the Transfer Agents, but upon payment (or the giving of such indemnity as the Registrar or the relevant

- 29 -

Transfer Agent may require) in respect of any tax or other governmental charges which may be imposed in relation to it.

*(c)  Closed Periods*

No Noteholder may require the transfer of a Registered Note to be registered (i) during the period of 15 days ending on the due date for any payment of principal or Amortised Face Amount (as determined in accordance with Condition 6(c)) on that Note, (ii) during the period of 60 days prior to any date on which Notes of the relevant Series may be redeemed by the Republic at its option pursuant to Condition 6(d) or (iii) after any such Note has been drawn for redemption in whole or in part.

*(d)  Regulations*

All transfers of Registered Notes and entries on the Register will be made subject to the detailed regulations concerning transfers of Registered Notes scheduled to the Agency Agreement. The regulations may be changed by the Republic, with the prior written approval of the Trustee and the Registrar. A copy of the current regulations will be mailed by the Registrar to any holder of a Registered Note who requests a copy.

**3. Status**

The Notes and Coupons of all Series constitute (subject to Condition 4) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The full faith and credit of the Republic has been pledged for the due and punctual payment of the principal or Amortised Face Amount of, or interest on, the Notes and the performance of the covenants in the Notes and the Trust Deed. The payment obligations of the Republic under the Notes and the Coupons shall (subject to Condition 4) at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in Condition 4).

**4. Negative Pledge and Covenants**

*(a)  Negative Pledge*

So long as any Note or Coupon remains outstanding (as defined in the Trust Deed), save for the exceptions set out in Condition 4(b), the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Notes, the Coupons and the Trust Deed either (i) are secured equally and rateably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as the Trustee in its absolute discretion shall deem to be not materially less beneficial to the Noteholders or as shall be approved by an Extraordinary Resolution (as defined in the Trust Deed) of the Noteholders.

*(b)  Exceptions to Negative Pledge*

The following exceptions apply to the Republic's obligations under Condition 4(a):—

(i) any Lien upon property to secure Public External Indebtedness of the Republic or Banco Central incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii) any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic or Banco Central and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii) any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralised bonds issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

(iv) any Lien in existence on the date of the Trust Deed;

(v) any Lien securing Public External Indebtedness of the Republic or Banco Central issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public External Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi) any Lien on any of the Par and Discount Bonds; and

(vii) any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

*(c) Definitions*

"External Indebtedness" means obligations (other than the Notes) for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic or Banco Central, any External Indebtedness of, or guaranteed by, the Republic or Banco Central, as the case may be, which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, bonds, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías de Hidrocarburos a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93; (ii) any indebtedness issued in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to in (1) above.

### (d) Covenants

In the Trust Deed, the Republic has given certain covenants to the Trustee, including a covenant that the Republic will maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund (the "IMF").

## 5. (I) Interest on Fixed Rate Notes

### (a) Interest Rate and Accrual

Each Fixed Rate Note bears interest on its Calculation Amount (as defined in Condition 5(III)) from the Interest Commencement Date in respect thereof at the rate per annum (expressed as a percentage) equal to the Interest Rate specified on the face of such Note payable in arrear on each Reference Date or Reference Dates specified on the face of such Note in each year and on the Maturity Date specified on the face of such Note if that date does not fall on a Reference Date.

The first payment of interest will be made on the Reference Date next following such Interest Commencement Date (and if the Interest Commencement Date is not a Reference Date, will amount to the Initial Broken Amount specified on the face of such Note), unless the Maturity Date falls before the date on which the first payment of interest would otherwise be due. If the Maturity Date is not a Reference Date, interest from the preceding Reference Date (or from the Interest Commencement Date, as the case may be) to the Maturity Date will amount to the Final Broken Amount specified on the face of such Note.

Interest will cease to accrue on each Fixed Rate Note on the due date for redemption unless, upon due presentation, payment of principal is improperly withheld or refused. Any overdue principal of and, to the extent permitted by law, overdue interest on any Fixed Rate Note shall bear interest (before and after judgment), payable on demand, for each day such payment is due at the rate and in the manner provided in this Condition 5(I) to the Relevant Date (as defined in Condition 8).

### (b) Calculations

Interest in respect of a period of less than one year will be calculated on the Fixed Rate Day Basis specified on the face of each Fixed Rate Note.

## (II) Interest on Floating Rate Notes

### (a) Interest Payment Dates

Each Floating Rate Note bears interest on its Calculation Amount from the Interest Commencement Date in respect thereof and such interest will be payable in arrear on each date ("Interest Payment Date") which (save as mentioned in these Conditions) falls the number of months specified as the Interest Period on the face of the Note (the "Specified Number of Months") after the preceding Interest Payment Date or, in the case of the first Interest Payment Date, after the Interest Commencement Date (and which corresponds numerically with such preceding Interest Payment Date or Interest Commencement Date, as the case may be). If any Interest Payment Date would otherwise fall on a day which is not a Relevant Business Day (as defined below), it shall be postponed to the next day which is a Relevant Business Day unless it would thereby fall into the next calendar month. In any such case as aforesaid or if there is no date in the relevant month which corresponds numerically with the preceding Interest Payment Date or, as the case may be, the Interest Commencement Date, then (i) the Interest Payment Date shall be brought forward to the immediately preceding Relevant Business Day and (ii) each subsequent Interest Payment Date shall be the last Relevant Business Day of the month which is the last of the Specified Number of Months after the month in which the preceding Interest Payment Date or, as the case may be, the Interest Commencement Date shall have fallen.

The period beginning on the Interest Commencement Date and ending on the first Interest Payment Date and each successive period beginning on an Interest Payment Date and ending on the next succeeding Interest Payment Date is herein called an "Interest Period".

Interest will cease to accrue on each Floating Rate Note from the due date for redemption thereof unless, upon due presentation thereof, payment of principal is improperly withheld or refused. Any overdue principal of and, to the extent permitted by law, overdue interest on any Floating Rate Note shall bear interest (before and after judgment), payable on demand, for each day such payment is due at the rate and in the manner provided in this Condition 5(II) and the Trust Deed to the Relevant Date.

*(b)  Rate of Interest*

Each Floating Rate Note bears interest at a variable rate determined by reference to a benchmark as specified on the face of such Note, being LIBOR (in which case such Note will be a LIBOR Note), LIBID (in which case such Note will be a LIBID Note), LIMEAN (in which case such Note will be a LIMEAN Note) or in any case such other benchmark as is specified on the face of such Note ("Benchmark").

Such variable rate may be adjusted by adding or subtracting the Spread (if any) specified on the face of such Note and/or by multiplying by the Spread Multiplier (if any) specified on the face of such Note. The "Spread" is the percentage rate per annum specified on the face of such Note as being applicable to the Relevant Rate (as defined in Condition 5(III)) for such Note and the "Spread Multiplier" is the percentage specified on the face of such Note as being applicable to the Relevant Rate for such Note.

The rate of interest ("Rate of Interest") payable from time to time will be determined by the Calculation Agent on the basis of the following provisions and shall be subject to Condition 5(II)(c), if applicable:—

(i)  At or about the Relevant Time (as defined in Condition 5(III)) on the relevant Interest Determination Date (as defined in Condition 5(III)) in respect of each Interest Period, the Calculation Agent will:—

(A)  in the case of a Floating Rate Note which specifies on its face that the Primary Source for Interest Rate Quotations shall be derived from a specified page, section or other part of a particular information service (a "Relevant Screen Page" as specified on the face of such Note), determine the Rate of Interest for such Interest Period which shall, subject as provided below, be (x) the Relevant Rate so appearing in or on that Relevant Screen Page (where such Relevant Rate is a composite quotation or interest rate per annum or is customarily supplied by one entity) or (y) the arithmetic mean (rounded, if necessary, to the next one-hundred thousandth of a percentage point) of the Relevant Rates of the persons at that time whose Relevant Rates so appear in or on that Relevant Screen Page, in any such case in respect of Specified Currency deposits for a period equal to the duration of such Interest Period and as adjusted by the Spread or Spread Multiplier (if any); and

(B)  in the case of a Floating Rate Note which specifies on its face that the Primary Source of Interest Rate Quotations shall be the Reference Banks shown on the face thereof and in the case of Floating Rate Notes falling within Condition 5(II)(b)(i)(A) but in respect of which no Relevant Rate appears at or about such Relevant Time or, as the case may be, which are to be determined by reference to quotations of persons appearing in or on the Relevant Screen Page but in respect of which less than two Relevant Rates appear at or about such Relevant Time, request the principal offices in the Relevant Financial Centre (as defined in Condition 5(III)) of each of the Reference Banks shown on the face of the Notes (or, as the case may be, any substitute Reference Bank appointed from time to time pursuant to Condition 5(II)(g)) to provide the Calculation Agent with its Relevant Rate quoted to leading banks for the relevant Specified Currency deposits for a period equivalent to the duration of such Interest Period. Where this Condition 5(II)(b)(i)(B) shall apply, the Rate of Interest for the relevant Interest Period shall, subject as provided below, be the arithmetic mean (rounded, if necessary, to the next higher one-hundred thousandth of a percentage point) of such Relevant Rates as adjusted by the Spread or Spread Multiplier (if any) as calculated by the Calculation Agent.

(ii)  If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(b)(i)(B) in respect of a Floating Rate Note, two or three only of such Reference Banks provide such relevant quotations, the Rate of Interest for the relevant

Interest Period shall, subject as provided below, be determined as aforesaid on the basis of the Relevant Rates quoted by such Reference Banks.

(iii) If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(b)(i)(B) in respect of a Floating Rate Note denominated in a Specified Currency other than ECU (as described in Condition 7(f)), only one or none of such Reference Banks provide such Relevant Rates, the Rate of Interest for the relevant Interest Period shall, subject as provided below, be whichever is the higher of:—

(A) the Rate of Interest in effect for the last preceding Interest Period to which Condition 5(II)(b)(i)(A) or (B) or Condition 5(II)(b)(ii) shall have applied; and

(B) the rate per annum (expressed as a percentage) which the Calculation Agent determines to be the arithmetic mean (rounded, if necessary, to the next higher one-hundred thousandth of a percentage point) of the Relevant Rates in respect of the relevant currency which banks in the Relevant Financial Centre (as defined below) of the country of such currency selected by the Calculation Agent (after consultation with the Republic) are quoting at or about the Relevant Time on the relevant Interest Determination Date for a period equivalent to such Interest Period to leading banks carrying on business in that Relevant Financial Centre, as adjusted by the Spread or Spread Multiplier (if any) except that, if the banks so selected by the Calculation Agent are not quoting as aforesaid, the Rate of Interest shall, subject as provided below, be the rate of interest specified in Condition 5(II)(b)(iii)(A).

(iv) If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(b)(i)(B) in respect of a Floating Rate Note denominated in ECU, one only or none of the Reference Banks provide such Relevant Rates, the Calculation Agent will request each of the Reference Banks to provide the Calculation Agent with the Relevant Rates quoted to them by leading banks in each relevant interbank market for deposits in each of the then component currencies of the ECU (the "Relevant Currencies") for the Interest Period concerned as at or about the Relevant Time on the relevant Interest Determination Date (provided that, if the EC ECU (as defined in Condition 7(f)(i)) is not then used in the European Monetary System, the component currencies of the ECU shall be those provided for under Condition 7(f)). The Rate of Interest for such Interest Period shall, subject as provided below, be the arithmetic mean (rounded, if necessary, to the next higher one-hundred thousandth of a percentage point) of the Relevant Rates so communicated by the Reference Banks or any two or more of them (if only such provide such Relevant Rates), weighted in the manner provided below, and as adjusted by the Spread or Spread Multiplier (if any) as calculated by the Calculation Agent, provided that, if at or about the Relevant Time on any Interest Determination Date the Reference Banks or any two or more of them (if only such provide such Relevant Rates) do not provide Relevant Rates for all the Relevant Currencies but do provide such Relevant Rates for Relevant Currencies representing in aggregate 95 per cent. (determined by the Calculation Agent as provided below) or more of one ECU on such Interest Determination Date, then the Rate of Interest pursuant to this Condition 5(II)(b)(iv) on the basis of the Relevant Rates so provided and ignoring the Relevant Currencies for which such Relevant Rates are not provided.

(v) If at or about the Relevant Time on any Interest Determination Date where the Rate of Interest falls to be determined pursuant to Condition 5(II)(b)(i)(B) in respect of a Floating Rate Note denominated in ECU, the Reference Banks or any two or more of them (if only such provide such Relevant Rates) provide the Calculation Agent with Relevant Rates pursuant to Condition 5(II)(b)(iv) for Relevant Currencies representing in aggregate less than 95 per cent. (determined as provided below) of one ECU on such Interest Determination Date then, with respect to each of the Relevant Currencies for which quotations are not so provided, the Calculation Agent shall determine such rate as is reasonably representative of the Relevant Rate in respect of deposits in such Relevant Currency of leading banks selected by it (after consultation with the Republic) in the Relevant Financial Centre at or about the Relevant Time on the relevant Interest Determination Date for a period substantially co-extensive with such Interest Period. If at or about the Relevant Time on any Interest Determination Date the Relevant

– 34 –

Currencies for which Relevant Rates are provided by the Reference Banks pursuant to Condition 5(II)(b)(iv) and the Relevant Currencies for which rates as determined by the Calculation Agent pursuant to this Condition 5(II)(b)(v) represent in aggregate 95 per cent. or more (determined as provided below) of one ECU on such Interest Determination Date, the Rate of Interest for such Interest Period shall be calculated on the basis of such quotations and rates.

(vi) If in respect of a Floating Rate Note denominated in ECU the Calculation Agent is unable to determine the Rate of Interest for an Interest Period in accordance with Condition 5(II)(b)(i), (ii), (iv) or (v), the Rate of Interest for such Interest Period shall be the Rate of Interest in effect for the last preceding Interest Period to which Condition 5(II)(b)(i)(A) or (B) or 5(II)(b)(ii) shall have applied.

*(c) ECU Weighting*

For the purposes of this Condition 5, the weighting to be given to a Relevant Currency or the percentage which it bears to one ECU shall be determined by the Calculation Agent by reference to the proportion that the amount of such Relevant Currency included in one ECU bears to one ECU and calculated on the basis of the U.S. dollar equivalent of each of the Relevant Currencies as at or about the Relevant Time on the Interest Determination Date in question. Such U.S. dollar equivalent shall be determined by the Calculation Agent in the manner provided under Condition 7(f), except that for the purposes of this Condition 5, (i) any reference therein to a Day of Valuation (as defined in Condition 7(f)) shall be deemed to refer to the Interest Determination Date in question, and (ii) if the EC ECU is being used in the European Monetary System on such Interest Determination Date, the components of the ECU shall be the currency amounts that are components of the EC ECU on such date.

*(d) Minimum/Maximum Rates*

If a Minimum Interest Rate is specified on the face of this Note, then the Rate of Interest shall in no event be less than it and if there is so specified a Maximum Interest Rate, then the Rate of Interest shall in no event exceed it.

*(e) Determination of Rate of Interest and Calculation of Interest Amounts*

The Calculation Agent will, as soon as practicable after the Relevant Time on each Interest Determination Date, determine the Rate of Interest and calculate the amount of interest payable (the "Interest Amounts") in respect of each Authorised Denomination of the relevant Floating Rate Notes (in the case of Bearer Notes) and the minimum Authorised Denomination (in the case of Registered Notes) for the relevant Interest Period. The Interest Amounts shall be calculated by applying the Rate of Interest to the Calculation Amount, multiplying such product by the actual number of days in the Interest Period concerned, divided by the FRN Day Basis specified on the face of such Note and rounding, if necessary, the resultant figure to the nearest unit of the relevant currency (half of such unit being rounded upwards) or, in the case of ECU, to the nearest 0.01 ECU (0.005 ECU being rounded upwards). The determination of the Rate of Interest and the Interest Amounts by the Calculation Agent shall (in the absence of manifest error) be final and binding upon all parties.

*(f) Notification of Rate of Interest and Interest Amounts*

The Calculation Agent will cause the Rate of Interest and the Interest Amounts for each Interest Period and the relevant Interest Payment Date to be notified to the Trustee, the Republic, each of the Agents and if the relevant Notes are for the time being listed on the Luxembourg Stock Exchange (the "Exchange"), the Exchange and to be notified to Noteholders in accordance with Condition 17 as soon as possible after their determination but in no event later than the fourth Relevant Business Day thereafter. The Interest Amounts and the Interest Payment Date so published may subsequently be amended (or appropriate alternative arrangements made by way of adjustment) without notice in the event of an extension or shortening of the Interest Period.

*(g) Determination or Calculation by the Trustee*

If the Calculation Agent does not at any time for any reason so determine the Rate of Interest or calculate the Interest Amount for an Interest Period, the Trustee shall do so and such determination or calculation shall be deemed to have been made by the Calculation Agent. In doing so, the Trustee shall apply the foregoing provisions of this Condition 5(II), with any necessary consequential amendments, to the extent that, in its opinion, it can do so, and in all other respects it shall do so in such manner as it shall deem fair and reasonable in all the circumstances.

*(h) Calculation Agent and Reference Banks*

The Republic will procure that, so long as any Floating Rate Note remains outstanding there shall at all times be four Reference Banks with offices in the Relevant Financial Centre and a Calculation Agent. If any Reference Bank (acting through its relevant office) is unable or unwilling to continue to act as a Reference Bank then the Republic will appoint another Reference Bank with an office in the Relevant Financial Centre to act as such in its place. If the Calculation Agent is unable or unwilling to act as such or if the Calculation Agent fails duly to establish the Rate of Interest for any Interest Period or to calculate the Interest Amounts, the Republic will appoint the London office of a leading bank engaged in the London and international interbank markets to act as such in its place. The Calculation Agent may not resign its duties without a successor having been appointed as aforesaid.

**(III) Definitions**

As used in these Conditions:—

"Calculation Amount" means the amount specified as such on the face of any Note, or if no such amount is so specified, the Principal Amount of such Note as shown on the face thereof.

"Interest Commencement Date" means, in the case of the first issue of a Note or Notes of a Series, the date of issue of such Note or Notes (the "Issue Date") or such other date as may be specified as the Interest Commencement Date on the face of such Note and, in the case of a further issue of a Note or Notes of such Series, means the most recent Reference Date or, as the case may be, Interest Payment Date in relation to such first issue next preceding the date on which such further Note or Notes are issued or if there is no such date, the Interest Commencement Date in respect of such first issue, or in any case such other date as may be specified as the Interest Commencement Date on the face of such Note.

"Interest Determination Date" means, in respect of any Interest Period, that number of Relevant Business Days prior to the first day of such Interest Period as specified on the face of the relevant Note.

"Relevant Business Day" means:—

(A) in the case of a currency other than ECU, a day (other than a Saturday or a Sunday):—

(i) on which banks and foreign exchange markets are open for business in the Relevant Financial Centre; and

(ii) on which banks are open for business in the principal financial centre of the currency of the Calculation Amount in respect of such Floating Rate Note and on which deposits in such currency may be dealt in the Relevant Financial Centre; and

(B) in the case of ECU, a day (other than a Saturday or a Sunday) on which banks and foreign exchange markets are open for business in the Relevant Financial Centre and which is not designated a non-settlement day for ECU on the Reuters ISDE Page on the Reuter Monitor Money Rates Service or a day so designated by the ECU Banking Association if ECU Non-Settlement Days do not appear on that page or, if no days are so settled, a day on which ECU interbank payments cannot be settled.

"Relevant Financial Centre" means:—

(A) in the case of a currency other than ECU, London (in the case of LIBOR Notes, LIMEAN Notes or LIBID Notes) or (in the case of Floating Rate Notes the Rate of Interest in respect of which is to be calculated by reference to some other Benchmark) the financial centre specified on the face of the relevant Floating Rate Note, or if no such centre is so specified, the financial centre determined by the Calculation Agent to be appropriate to such Benchmark; and

(B) in the case of ECU, London or such other or additional finance centre or centres as may be specified on the face of the relevant Floating Rate Note.

"Relevant Rate" means:—

(A) an offered rate in the case of a Note the Benchmark for which relates to an offered rate;

(B) a bid rate in the case of a Note the Benchmark for which relates to a bid rate; and

(C) the mean of an offered and bid rate in the case of a Note the Benchmark for which relates to the mean of an offered and bid rate.

"Relevant Time" means the local time in the Relevant Financial Centre at which it is customary to determine bid and offered rates in respect of deposits in that currency in the interbank market in that Relevant Financial Centre.

## (IV) Zero Coupon Notes

Where a Zero Coupon Note is repayable prior to its Maturity Date and is not paid when due, the amount due and payable shall be the Amortised Face Amount of such Note as determined in accordance with Condition 6(c)(iii). Where a Zero Coupon Note is to be redeemed on its Maturity Date and is not paid when due, any overdue principal of such Note shall bear interest at a rate per annum (expressed as a percentage) equal to the Amortisation Yield specified on the face of the Note. Such interest shall continue to accrue (on the same basis as that referred to in Condition 5(I)) (before and after judgment) to the Relevant Date.

## (V) Step-up and Step-down Notes

The face of the Notes issued in respect of a Tranche of Step-up Notes or Step-down Notes shall specify the dates on which interest shall be payable on such Notes, the rate at which the interest payable on each such date shall accrue and/or the basis for calculation thereof and the rate (or the basis of calculation of such rate) at which interest will accrue in respect of any overdue principal or overdue interest. Unless otherwise provided on the face of such Notes, such interest shall in all other respects accrue and shall be payable in accordance with Condition 5(I).

## 6. Redemption and Purchase

### (a) Final Redemption

Unless previously redeemed or purchased and cancelled as provided below, this Note will be redeemed at its Principal Amount on the Maturity Date specified on its face (if this Note is specified on its face to be Fixed Rate Note or Zero Coupon Note) or on the Interest Payment Date falling in the Redemption Month specified on its face (if this Note is specified on its face to be a Floating Rate Note).

### (b) Purchases

The Republic may at any time purchase Notes at any price (provided that in the case of Bearer Notes they are purchased together with all unmatured Coupons and unexchanged Talons relating to them) in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives. The Notes so purchased, while held by or on behalf or for the benefit of the Republic, shall not entitle the holder to vote at any meetings of Noteholders and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the Noteholders or for the

purposes of Conditions 11 and 12. The Republic will not acquire any beneficial interest in any Registered Note unless it gives prior written notice of each acquisition to the Trustee and the Registrar. The Trustee and the Registrar and all holders of Registered Notes shall be entitled to rely without further investigation on any such notification (or lack thereof).

For the purposes of these Conditions, "directive" includes any present or future directive, regulation, request, requirement, rule or credit restraint programme of any relevant agency, authority, central bank department, government, legislature, minister, ministry, official, public or statutory corporation, self-regulating organisation or stock exchange.

*(c) Early Redemption of Zero Coupon Notes*

(i) The amount payable in respect of any Zero Coupon Note upon redemption of such Note pursuant to, if applicable, Condition 6(d) or (e) or upon it becoming due and payable as provided in Condition 10, shall be the Amortised Face Amount (calculated as provided below) of such Note.

(ii) Subject to the provisions of Condition 6(c)(iii), the Amortised Face Amount of any Zero Coupon Note shall be the sum of (A) the Reference Price specified on the face of such Note and (B) the aggregate amortisation of the difference between the Reference Price and the Principal Amount of such Note from the Issue Date to the date on which such Note becomes due and payable at a rate per annum (expressed as a percentage) equal to the Amortisation Yield specified on the face of such Note compounded annually. Where the specified calculation is to be made for a period of less than one year, it shall be made on the Fixed Rate Day Basis specified on the face of such Note.

(iii) If the amount payable in respect of any Zero Coupon Note upon redemption of such Note pursuant to, if applicable, Condition 6(d) or (e), or upon it becoming due and payable as provided in Condition 10, is not paid when due, the amount due and payable in respect of such Note shall be the Amortised Face Amount of such Note as described in Condition 6(c)(ii), except that Condition 6(c)(ii) shall have effect as though the reference therein to the date on which the Note becomes due and payable were replaced by a reference to the Relevant Date. The calculation of the Amortised Face Amount in accordance with this Condition 6(c)(iii) will continue to be made (before and after judgment) until the Relevant Date unless the Relevant Date falls on or after the Maturity Date, in which case the amount due and payable shall be the Principal Amount of such Note together with any interest which may accrue in accordance with Condition 5(IV).

*(d) Redemption at the Option of the Republic*

If so provided on the face of the Notes issued in respect of a Tranche of Notes, the Republic may, subject to compliance with all relevant laws, regulations and directives and any minimum or maximum amounts to be redeemed as specified on the face of such Notes, on giving not more than 60 nor less than 30 days' irrevocable notice to the holders of those Notes redeem all or, if so specified on the face of such Notes, some of such Notes in the Principal Amount specified on the face of such Notes or integral multiples thereof, on the date or dates specified on the face of such Notes (which shall, in the case of a Floating Rate Note, be an Interest Payment Date) at their Principal Amount or, if applicable, at the premium or premia specified on the face of such Notes or at their Amortised Face Amount (in the case of Zero Coupon Notes) together with interest accrued to the date fixed for redemption.

All Notes in respect of which any such notice is given shall be redeemed on the date specified in such notice in accordance with this Condition 6. In the case of a partial redemption, the notice to Noteholders shall also contain the serial numbers of the Notes to be redeemed, which shall have been drawn in such place as the Trustee may approve and in such manner as it deems appropriate, subject to compliance with any applicable laws and stock exchange requirements.

*(e) Redemption at the Option of Noteholders*

If so provided on the face of the Note issued in respect of a Tranche of Notes, the Republic shall, subject to compliance with all relevant laws, regulations and directives, at the option of the holder of any such Notes, redeem such Notes on the date or dates specified on the face of such Notes (which shall, in the case of a Floating Rate Note, be an Interest Payment Date) at their Principal Amount or, if applicable, at the premium or premia specified on the face of such Notes or at their Amortised Face Amount (in the case of Zero Coupon Notes) together with interest accrued to the date fixed for redemption.

To exercise such option the holder must deposit such Notes with any Paying Agent (in the case of Bearer Notes) or the Registrar or any Transfer Agent (in the case of Registered Notes) at their respective specified offices, together with a duly completed notice of redemption ("Redemption Notice") in the form obtainable from any Agent not more than 60 nor less than 30 days prior to the relevant date for redemption. No Note (or Redemption Notice) so deposited may be withdrawn (except as provided in the Agency Agreement) without the prior consent of the Republic.

*(f) Cancellation*

All Notes so redeemed will be cancelled forthwith and may not be re-sold or re-issued. All Notes so purchased and any unmatured Coupons or Talons attached to or purchased with them may be cancelled or may be re-issued or resold.

**7. Payments and Talons**

*(a) Bearer Notes*

*(i) Payments of Principal and Interest*

Payments of principal and interest in respect of Bearer Notes will, subject as mentioned below, be made against presentation and surrender of the relevant Bearer Notes or Coupons, as the case may be, at the specified office of any Paying Agent outside the United States and its possessions (1) in respect of payments denominated in a Specified Currency other than U.S. dollars, ECU and Sterling, at the option of the holder either by a cheque in such Specified Currency drawn on, or by transfer to an account (in the case of a payment in Yen to a non-resident of Japan, a non-resident account) in such Specified Currency maintained by the payee with, a bank (in the case of a payment in Yen to a non-resident of Japan, an authorised foreign exchange bank) in the principal financial centre of the country of such Specified Currency, (2) in respect of payments denominated in U.S. dollars, subject to condition 7(a)(ii), or the option of the holder either by a U.S. dollar cheque drawn on a bank in New York City or by transfer to a U.S. dollar account maintained by the payee with a bank outside the United States of America, (3) in respect of payments denominated in ECU, subject to Condition 7(f), by credit or transfer to an ECU account specified by the payee (and payments in a component currency—(if so determined in accordance with Condition 7(f)) will be made in the chosen currency (as defined in Condition 7(f)(ii)) by a cheque drawn on, or, at the option of the holder, by transfer to an account specified by the payee with, a bank in the principal financial centre of the country of the chosen currency), (4) in respect of payments denominated in Sterling, by a Sterling cheque drawn on, or, at the option of the holder by transfer to a Sterling account with, a town clearing branch of a bank in the City of London or (5) as may otherwise be provided in the applicable Pricing Supplement.

*(ii) Payments in the United States*

Notwithstanding the foregoing, payments in respect of Bearer Notes denominated in U.S. dollars may be made at the specified office of any Paying Agent in New York City in the same manner as aforesaid if (1) the Republic shall have appointed Paying Agents with specified offices outside the United States with the reasonable expectation that such Paying Agents would be able to make payment of the amounts on the Bearer Notes in the manner provided above when due, (2) payment in full of such amounts at all such offices is illegal or effectively precluded by exchange controls or other similar restrictions on payment or receipt of such amounts and (3) such payment is then permitted by United States law. If, under such circumstances, a Bearer

Note is presented for payment of principal at the specified office of any Paying Agent in the United States or its possessions in circumstances where interest (if any is payable against presentation of the Bearer Note) is not to be paid there, the relevant Paying Agent will annotate the Bearer Note with the record of the principal paid and return it to the holder for the obtaining of interest elsewhere.

*(iii)  Payments on Business Days*

Subject as provided on the face of a Note issued in respect of a Tranche of Notes, if any date for payment in respect of any Bearer Note or Coupon comprising all or part of such Tranche is not a business day, the holder shall not be entitled to payment until the next following business day nor to any interest or other sum in respect of such postponed payment. In this Condition 7(a), "business day" means a day on which banks are open for business in the relevant place of presentation and:—

(1) (in the case of a payment in a Specified Currency other than ECU) where payment is to be made by transfer to an account maintained with a bank in the relevant Specified Currency, on which dealings may be carried on in the relevant Specified Currency in the principal financial centre of the country of such Specified Currency; or

(2) (a) in the case of payment in ECU, a day which is an ECU business day (as defined below) or (b) in the case of payment in a chosen currency by transfer to an account, a day on which banks and foreign exchange markets are open for business in the principal financial centre of such chosen currency. "ECU business day" means any day other than Saturday, a Sunday or a day designated as a non-settlement day for ECU on the Reuters Screen ISDE page on the Reuter Monitor Money Rates Service or a day so designated by the ECU Banking Association if ECU Non-Settlement Days do not appear on that page or, if no days are so designated, a day on which ECU inter-bank payments cannot be settled.

If the due date for redemption or repayment of any Bearer Note is not a due date for payment of interest, interest accrued from the preceding due date for payment of interest or the Interest Commencement Date, as the case may be, shall only be payable against presentation (and surrender if appropriate) of the relevant Bearer Note. Interest accrued on a Zero Coupon Note from its Maturity Date shall be payable on repayment of such Zero Coupon Note against presentation thereof.

**(b)  Registered Notes**

*(i)  Payments of Principal*

Payments of principal in respect of Registered Notes will be made by the Principal Paying Agent in the manner provided for in Condition 7(a)(i), subject to Condition 7(b)(iv). Payments of principal will only be made against surrender of the relevant Definitive Registered Note at the specified office of any Transfer Agent.

*(ii)  Payments of Interest*

Interest on Registered Notes payable on any Reference Date or Interest Payment Date will be paid by the Principal Paying Agent to the person shown on the Register at the close of business on the fifteenth day before the due date for payment thereof (the "Record Date"). Payments of interest on each Registered Note (other than a Note denominated in ECU) will be made in the Specified Currency in which such Notes are denominated, subject to Condition 7(b)(iv), by cheque drawn on a bank in the principal financial centre of the country of the currency concerned and mailed to the holder (or to the first named of joint holders) of such Note at its address appearing in the Register maintained by the Registrar. Payments in respect of Notes denominated in ECU will be made in the manner provided in Condition 7(a)(i). Upon application by the holder to the specified office of the Registrar or any Transfer Agent before the Record Date, such payment of interest may be made by transfer to an account in the relevant Specified Currency maintained by the payee with a bank in the principal financial centre of the country of that Specified Currency.

For the purposes of these Conditions, the principal financial centre in respect of Australian dollars shall be Melbourne.

*(iii)  Payment Initiation*

Where payment is to be made by transfer to an account in the relevant Specified Currency, payment instructions (for value the due date, or if that is not a business day, for value the first following day which is a business day) will be initiated, and, where payment is to be made by cheque, the cheque will be mailed on the business day preceding the due date for payment or, in the case of payments of principal if later, on the business day on which the relevant Definitive Registered Note is surrendered at the specified office of any Transfer Agent.

*(iv)  Payments Through The Depository Trust Company*

Registered Notes, if so specified in the relevant Pricing Supplement, will be issued in the form of one or more Definitive Registered Notes registered in the name of, or the name of a nominee for, The Depository Trust Company ("DTC"). Payments of principal and interest in respect of Registered Notes denominated in U.S. dollars will be made in accordance with Condition 7(b)(i), (ii) and (iii). Payments of principal and interest in respect of Registered Notes denominated in a Specified Currency other than U.S. dollars will be made by the Principal Paying Agent in the relevant Specified Currency in accordance with the provisions of Condition 7(b)(i), (ii) and (iii) to participants in DTC who are beneficial owners of such Registered Notes.

*(v)  Delay in Payment*

Noteholders will not be entitled to any interest or other payment for any delay after the due date in receiving the amount due if the due date is not a business day, if the Noteholder is late in surrendering its Definitive Registered Note (if required to do so) or if a cheque mailed in accordance with this Condition 7(b) arrives after the due date for payment.

*(vi)  Payments on Business Days*

For the purposes of this Condition 7(b), "business day" means a day on which commercial banks in the relevant city and, in the case of a surrender of a Definitive Registered Note, in the place the Definitive Registered Note is surrendered, are open.

*(vii)  Payment Not Made in Full*

If the amount of principal or interest which is due on the Registered Notes is not paid in full, the Registrar will annotate the Register with a record of the amount of principal or interest, if any, in fact paid.

*(c)  Payments Subject to Law etc.*

All payments are subject in all cases to any applicable fiscal or other laws, regulations and directives, but without prejudice to the provisions of Condition 8. No commission or expenses shall be charged to the Noteholders or Couponholders in respect of such payments.

*(d)  Appointment of Agents*

The Paying Agents, the Registrar, the Calculation Agent and Transfer Agents initially appointed by the Republic and their respective specified offices are listed below. The Republic reserves the right at any time to vary or terminate the appointment of any Paying Agent, the Registrar, the Calculation Agent or any Transfer Agent, to appoint another Registrar or Calculation Agent and to appoint additional or other Paying Agents or Transfer Agents, provided that the Republic will at all times maintain (i) a Principal Paying Agent, (ii) a Registrar and a Transfer Agent having a specified office in New York City, (iii) a Paying Agent and a Transfer Agent having a specified office in a European city which, so long as the Notes are listed on the Exchange, shall be Luxembourg, and (iv) a Calculation Agent.

In addition, the Republic shall forthwith appoint a Paying Agent in New York City in respect of any Bearer Notes denominated in U.S. dollars in the circumstances described in Condition 7(a)(ii).

Notice of any such change or any change of any specified office will promptly be given to the Noteholders in accordance with Condition 17.

*(e) Unmatured Coupons and Unexchanged Talons*

(i) Fixed Rate Notes which are Bearer Notes, other than Notes which are specified on their face to be Long Maturity Notes (being Fixed Rate Notes whose Principal Amount is less than the aggregate interest payable thereon on the relevant dates for payment of interest under Condition 5(I)(a)), should be surrendered for payment of principal together with all unmatured Coupons (if any) appertaining thereto, failing which an amount equal to the face value of each missing unmatured Coupon (or, in the case of payment not being made in full, that proportion of the amount of such missing unmatured Coupon which the sum of principal so paid bears to the total principal due) will be deducted from the principal due for payment. Any amount so deducted will be paid in the manner mentioned above against surrender of such missing Coupon within a period of 10 years from the Relevant Date for the payment of such principal (whether or not such Coupon has become void pursuant to Condition 9). If the date for payment of principal is any date other than a date for payment of interest, the accrued interest on such principal shall be paid only upon presentation of the relevant Note.

(ii) If so specified on the face of this Note, upon the due date for redemption of any Floating Rate Note or Long Maturity Note which is a Bearer Note, unmatured Coupons relating to such Note (whether or not attached) shall become void and no payment shall be made in respect of them.

(iii) Upon the due date for redemption of any Note, any unexchanged Talon relating to such Note (whether or not attached) shall become void and no Coupon shall be delivered in respect of such Talon.

(iv) Where any Floating Rate Note or Long Maturity Note which is a Bearer Note is presented for redemption without all unmatured Coupons and any unexchanged Talon relating to it, and where any Bearer Note is presented for redemption without any exchanged Talon relating to it, redemption shall be made only against the provisions of such indemnity as the Republic may require.

*(f) ECU Notes*

*(i) Composition of ECU*

Subject to the provisions of this Condition 7(f), the composition of the ECU for the purpose of any Notes denominated in ECU is the same as the composition of the ECU that is used from time to time in the European Monetary System (the "EC ECU") and which is as at the date of the Trust Deed composed of specified amounts of the currencies of the member countries of the European Communities ("EC") as shown below.

Pursuant to Council Regulation (EEC) No. 1971/89 of June 19, 1989, the EC ECU has been determined to be the sum of the following components:—

| | | | |
|---|---|---|---|
| 0.6242 | German mark | 0.130 | Luxembourg franc |
| 0.08784 | Pound sterling | 0.1976 | Danish krone |
| 1.332 | French franc | 0.008552 | Irish pound |
| 151.8 | Italian lire | 1.440 | Greek drachmas |
| 0.2198 | Dutch guilder | 6.885 | Spanish pesetas |
| 3.301 | Belgium francs | 1.393 | Portuguese escudos |

The basis may be changed by the EC, including changes in the components, in which event the composition of the ECU will change accordingly.

*(ii) Payments in a component currency*

With respect to each due date for the payment of principal, interest or other amounts in respect of Notes denominated in ECU on which the EC ECU is not used in the European Monetary System, the Trustee shall,

without liability on its part and without having regard to the interests of individual Noteholders, choose a component currency of the EC ECU (the "chosen currency") in which all payments due on that due date with respect to such Notes shall be made. Notice of the chosen currency selected by the Trustee shall, where practicable, be given to Noteholders in accordance with Condition 17. The amount of each payment in the chosen currency shall be computed on the basis of the equivalent of the ECU in that currency, determined as set out in this Condition 7(f) as of the fourth Relevant Business Day prior to the date on which such payment is due.

On the first Relevant Business Day on which the EC ECU is not used in the European Monetary System, the Trustee shall, without liability on its part and without having regard to the interests of individual Noteholders, choose a component currency of the EC ECU (the "chosen currency") in which all payments of principal, interest or other amounts in respect of Notes denominated in ECU having a due date prior thereto but not yet presented for payment are to be made. The amount of each payment in the chosen currency shall be computed on the basis of the equivalent of the ECU in that currency determined as set out in this Condition 7(f), as of such first Relevant Business Day.

The equivalent of the ECU in the relevant chosen currency as of any date (the "Day of Valuation") shall be determined by the Exchange on the following basis. The component currencies of the ECU for this purpose (the "Components") shall be the currency amounts which were components of the EC ECU when the EC ECU was most recently used in the European Monetary System. However, if the EC ECU is being used for the settlement of transactions by public institutions of or within the EC, or if it was so used after its most recent use in the European Monetary System, the Components shall be (a) the currency amounts that are components of the EC ECU as so used as of the Day of Valuation, or (b) the currency amounts that were components of the EC ECU when it was most recently so used, as the case may be. The equivalent of the ECU in the chosen currency shall be calculated by first aggregating the U.S. dollar equivalents of the Components and then, using the rate used for determining the U.S. dollar equivalent of the Component in the chosen currency as set forth below, calculating the equivalent in the chosen currency of such aggregate amount in U.S. dollars.

The U.S. dollar equivalent of each of the Components shall be determined by the Exchange on the basis of the middle spot delivery quotations prevailing at 2.30 p.m. (local time in the Relevant Financial Centre) on the Day of Valuation, as obtained by the Exchange from one or more leading banks, as selected by the Trustee, in the country of issue of the Component in question.

If the official unit of any component currency is altered by way of combination or subdivision, the number of units of that currency as a Component shall be divided or multiplied in the same proportion. If two or more component currencies are consolidated into a single currency, the amounts of those currencies as Components shall be replaced by an amount in such single currency equal to the sum of the amounts of the consolidated component currencies expressed in such single currency. If any component currency is divided into two or more currencies, the amount of that currency as a Component shall be replaced by amounts of such two or more currencies, each of which shall be equal to the amount of the former component currency divided by the number of currencies into which that currency was divided.

If no direct quotations are available for a Component as of a Day of Valuation from any of the banks selected by the Trustee for this purpose because foreign exchange markets are closed in the country of issue of that currency or for any other reason, the most recent direct quotations for that currency obtained by the Exchange shall be used in computing the equivalents of the ECU on such Day of Valuation, provided, however, that such most recent quotations may be used only if they were prevailing in the country of issue not more than two business days before such Day of Valuation. Beyond such period of two business days, the Exchange shall determine the U.S. dollar equivalent of such Component on the basis of cross rates derived from the middle spot delivery quotations for such component currency and for the U.S. dollar prevailing at 2.30 p.m. (local time in the Relevant Financial Centre) on such Day of Valuation, as obtained by the Exchange from one or more leading banks, as selected by the Trustee, in a country other than the country of issue of such Component. Within such period of two business days, the Exchange shall determine the U.S. dollar equivalent of such Component on the basis of such cross rates if the Trustee judges that the

equivalent so calculated is more representative than the U.S. dollar equivalent calculated on the basis of such most recent direct quotations. Unless otherwise specified by the Trustee, if there is more than one market for dealing in any Component by reason of foreign exchange regulations or for any other reason, the market to be referred to in respect of such currency shall be that upon which a non-resident issuer of securities denominated in such currency would purchase such currency in order to make payments in respect of such securities.

All determinations made by each of the Trustee or the Exchange shall be at its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and binding on the Republic and all Noteholders and Couponholders.

(g) *Talons*

Except where such Talon has become void pursuant to Condition 7(e)(iii), on or after the Reference Date or, as the case may be, the Interest Payment Date for the final Coupon forming part of a Coupon sheet issued in respect of any Note, the Talon forming part of such Coupon sheet may be surrendered at the specified office of the Principal Paying Agent in exchange for a further Coupon sheet (but excluding any Coupons which may have become void pursuant to Condition 9).

**8. Taxation**

All payments in respect of the Notes and the Coupons will be made free and clear of, and without withholding or deduction for, or on account of, any taxes, duties, assessments or governmental charges (together, "Taxes") of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic of Argentina or any authority therein or thereof having power to tax, unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts as will result in receipt by the Noteholders or, as the case may be, the Couponholders of such amounts as would have been received by them had no such withholding or deduction been required, except that no such additional amounts shall be payable with respect to any Note or Coupon:—

(i) in the case of Bearer Notes or Coupons:—

(1) to a holder (or to a third party on behalf of a holder) where such holder is liable to such Taxes in respect of such Bearer Note or Coupon by reason of it having some connection with the Republic of Argentina other than the mere holding of such Bearer Note or Coupon; or

(2) presented for payment more than 30 days after the Relevant Date except to the extent that the holder thereof would have been entitled to additional amounts on presenting the same for payment on the last day of such period of 30 days.

(ii) in the case of Registered Notes:—

(1) to a holder (or to a third party on behalf of a holder) where such holder is liable to such Taxes in respect of such Registered Note by reason of it having some connection with the Republic of Argentina, other than the mere holding of such Registered Note or the receipt of the relevant payment in respect thereof; or

(2) if the Definitive Registered Note in respect of such Registered Note is surrendered more than 30 days after the Relevant Date and such surrender is required for payment except to the extent that the holder thereof would have been entitled to additional amounts on presenting the same for payment on the last day of such period of 30 days.

As used in these Conditions, "Relevant Date" in respect of any Note or Coupon means the date on which payment in respect thereof first becomes due or (if the full amount of the money payable has not been received by the Trustee or the Principal Paying Agent on or prior to such due date) the date on which notice is duly given to the Noteholders in accordance with Condition 17 that such moneys have been so received and are available for payment. References herein to "principal" shall be deemed to include any premium payable in respect of the Notes and any reference to "principal" and/or "Amortised Face Amount" and/or

– 45 –

"premium" and/or "interest" shall be deemed to include any additional amounts which may be payable under this Condition 8.

## 9. Prescription

Claims against the Republic for payment in respect of the Notes and Coupons (which, for this purpose shall not include Talons) shall be prescribed and become void unless made within 10 years (in the case of principal) and five years (in the case of interest) from the appropriate Relevant Date in respect thereof.

## 10. Events of Default

If any of the following events ("Events of Default") occurs and is continuing:—

(a) *Non-Payment:* the Republic fails to pay any principal (or Amortised Face Amount) of any of the Notes when due and payable or fails to pay any interest on any of the Notes when due and payable and such failure continues for a period of 30 days; or

(b) *Breach of Other Obligations:* the Republic does not perform or comply with any one or more of its other obligations in the Notes or in the Trust Deed, which default is incapable of remedy or is not remedied within 90 days after notice of such default shall have been given to the Republic by the Trustee; or

(c) *Cross Default:* any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of any Public External Indebtedness of the Republic or Banco Central having an aggregate principal amount of U.S.$30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, any such Public External Indebtedness having an aggregate principal amount of U.S.$30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d) *Moratorium:* a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic; or

(e) *Validity:* the validity of the Notes or the Trust Deed shall be contested by the Republic;

then in each and every such case, the Trustee at its discretion may in respect of Notes of any Series, or at the request of the holders of not less than 25 per cent. in aggregate principal amount of the Notes of such Series then outstanding, by notice in writing to the Republic shall, declare the principal amount (or Amortised Face Amount) of all the Notes of such Series to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Notes of such Series shall have been cured; provided that in the case of Conditions 10(b), (d) and (e) the Trustee shall have certified that in its opinion such event is materially prejudicial to the interests of the Noteholders and provided further, that if, at any time after the principal (or Amortised Face Amount) of the Notes of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Trustee a sum sufficient to pay all matured amounts of interest and principal (or Amortised Face Amount) upon all the Notes of such Series which shall have become due otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal (or Amortised Face Amount) of each Note at the rate of interest (or Amortisation Yield as calculated under Condition 6(c)) specified herein, to the date of such payment or deposit) and the expenses of the Trustee, and reasonable compensation to the Trustee, its agents, legal advisers, and any and all defaults under the Notes of such Series, other than the non-payment of principal (or Amortised Face Amount) on the Notes which shall have become due solely by declaration, shall have been remedied, then, and in every such case, the holders of 75 per cent. in aggregate principal amount of the Notes of such Series then outstanding, after a meeting of Noteholders held in accordance with the procedures described in Condition 11, by written notice to the Republic and to the Trustee, may on behalf of the holders of all of the

Notes of such Series waive all defaults and rescind and annul such declaration and its consequences: but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

## 11. Meetings of Noteholders, Modification and Waiver

### (a) Meetings of Noteholders

The Trust Deed contains provisions for convening meetings of Noteholders of a Series to consider any matter affecting their interests, including modification by Extraordinary Resolution of the Notes of such Series (including these Conditions insofar as the same may apply to such Notes). Such a meeting may be convened by the Republic or the Trustee, and shall be convened by the Trustee (subject to being indemnified to its satisfaction against all costs and expenses thereby occasioned) upon written request of Noteholders holding not less than 10 per cent. in principal amount of the Notes of the relevant Series for the time being outstanding. The quorum for any meeting to consider an Extraordinary Resolution will be two or more persons holding or representing a clear majority in principal amount of the Notes of the relevant Series for the time being outstanding, or at any adjourned meeting two or more persons holding or representing holders of Notes of the relevant Series whatever the principal amount of the Notes of the relevant Series held or represented, unless the business of such meeting includes consideration of proposals, inter alia, (i) to amend the dates of maturity or redemption of the Notes of any Series or any date for payment of interest thereon, (ii) to reduce or cancel the Principal Amount of the Notes of any Series, (iii) to reduce the rate or rates of interest in respect of the Notes of any Series or to vary the method or basis of calculating the rate or rates or amount of interest, (iv) if there is shown on the face of the Notes of any Series a Minimum Interest Rate and/or a Maximum Interest Rate, to reduce such Minimum Interest Rate and/or such Maximum Interest Rate, (v) to change the method of calculating the Amortised Face Amount in respect of Zero Coupon Notes of any Series, (vi) to change the currency or currencies of payment of the Notes of any Series or (vii) to modify the provisions concerning the quorum required at any meeting of Noteholders of any Series or the majority required to pass the Extraordinary Resolution, in which case the necessary quorum will be two or more persons holding or representing not less than 75 per cent., or at any adjourned meeting not less than 25 per cent., in principal amount of the Notes of the relevant Series for the time being outstanding. Any Extraordinary Resolution duly passed shall be binding on all holders of Notes of the relevant Series (whether or not they were present or represented at the meeting at which such resolution was passed) and on all Couponholders (if any). In the Trust Deed, "Extraordinary Resolution" is defined to mean a resolution passed at a meeting of holders of Notes of a Series, which meeting was duly convened and held in accordance with the provisions of the Trust Deed, by a majority consisting of not less than 50 per cent. of the votes cast.

### (b) Modification and Waiver

The Trustee and the Republic may agree, without the consent of the Noteholders or Couponholders, to (i) any modification of any of the provisions of the Trust Deed which is a formal, minor or technical nature or is made to correct a manifest error, and (ii) any other modification (except as mentioned in the Trust Deed), and any waiver or authorisation of any breach or proposed breach, of any of the provisions of the Trust Deed which is in the opinion of the Trustee not materially prejudicial to the interests of the Noteholders. Any such modification, authorisation or waiver shall be binding on the Noteholders and the Couponholders and, if the Trustee so requires, such modification shall be notified to the Noteholders as soon as practicable.

### (c) Entitlement of the Trustee

In connection with the exercise of its functions (including but not limited to those referred to in this Condition 11) the Trustee shall have regard to the interests of the Noteholders as a class and shall not have regard to the consequences of such exercise for individual Noteholders or Couponholders and the Trustee shall not be entitled to require, nor shall any Noteholder or Couponholder be entitled to claim, from the Republic any indemnification or payment in respect of any tax consequences of any such exercise upon individual Noteholders or Couponholders.

## 12. Enforcement

At any time after the Notes become due and payable, the Trustee may, at its discretion and without further notice, institute such proceedings against the Republic or Banco Central, as the case may be, as it may think fit to enforce the terms of the Trust Deed, the Notes, the Coupons and the Banco Central Undertaking, but it need not take any such proceedings unless (a) it shall have been so directed by an Extraordinary Resolution or so requested in writing by Noteholders holding at least 25 per cent. in principal amount of the Notes of the relevant Series outstanding, and (b) it shall have been indemnified to its satisfaction. No Noteholder or Couponholder may proceed directly against the Republic or Banco Central, as the case may be, unless the Trustee, having become bound so to proceed, fails to do so within the reasonable time and such failure is continuing.

## 13. Indemnification of the Trustee

The Trust Deed contains provisions for the indemnification of the Trustee and for its relief from responsibility. The Trustee is entitled to enter into business transactions with the Republic and any entity related to the Republic without accounting for any profit.

## 14. Replacement of Bearer Notes, Coupons, Talons and Definitive Registered Notes

If any Bearer Note, Coupon, Talon or Definitive Registered Note is lost, stolen, mutilated, defaced or destroyed it may be replaced at the specified office of the Paying Agent in London (in the case of Bearer Notes, Coupons and Talons) and the Transfer Agent in New York City (in the case of Definitive Registered Notes) subject to all applicable laws and stock exchange requirements, upon payment by the claimant of the taxes and expenses incurred in connection with such replacement and on such terms as to evidence, security, indemnity and otherwise as the Republic may require (provided that the requirement is reasonable in the light of prevailing market practice). Mutilated or defaced Notes, Coupons, Talons or Definitive Registered Notes must be surrendered before replacements will be issued.

## 15. Further Issues

The Republic may from time to time without the consent of the Noteholders or Couponholders create and issue further securities having the same terms and conditions as the Notes of any Series in all respects (or in all respects except for the first payment of interest on them) so that such further issue shall be consolidated and form a single series with the outstanding securities of any series (including the Notes of any Series). References in these Conditions to the Notes of any Series include (unless the context requires otherwise) any other securities issued pursuant to this Condition 15 and forming a single series with the Notes of such Series. Any further securities forming a single series with the outstanding securities of any series (including the Notes of any Series) constituted under the Trust Deed or any deed supplemental to it shall be constituted under the Trust Deed. The Trust Deed contains provisions for convening a single meeting of the Noteholders of a Series and the holders of securities of other series (including the Notes of any other Series) where the Trustee so decides.

## 16. Agents

In acting under the Agency Agreement, the Agents act solely as agents of the Republic and do not assume any obligation or relationship of agency or trust for or with any holder.

## 17. Notices

Notices to holders of Registered Notes will be mailed to them at their respective addresses in the Register and shall be published (so long as the Notes of the relevant Series are listed on the Exchange and the Exchange so requires) in a leading newspaper having general circulation in Luxembourg (which is expected to be the *Luxemburger Wort*). Any such notice shall be deemed to have been given on the later of the date of such publication and fourth weekday (being a day other than a Saturday or a Sunday) after the date of mailing. Notices to the holders of Bearer Notes will be valid if published in a daily newspaper of general

circulation in London and (so long as the Notes of the relevant Series are listed on the Exchange and the Exchange so requires) in a leading newspaper having general circulation in Luxembourg or, if in the opinion of the Trustee any such publication is not practicable, in another leading daily English language newspaper of general circulation in Europe approved by the Trustee. It is expected that such publication will be made in the *Financial Times* in London and the *Luxemburger Wort* in Luxembourg. Notices, will, if published more than once or on different dates, be deemed to have been given on the date of the first publication in both such newspapers as provided above.

Couponholders shall be deemed for all purposes to have notice of the contents of any notice to the holders of Bearer Notes in accordance with this Condition 17.

18. Governing Law, Jurisdiction and Waiver of Immunity

*(a) Governing Law*

The Trust Deed, the Notes, the Coupons and the Talons are governed by, and shall be construed in accordance with, English law.

*(b) Jurisdiction*

The Republic has in the Trust Deed irrevocably submitted to the jurisdiction of the courts of England: any New York State or Federal court sitting in the Borough of Manhattan, New York City; and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Notes, the Coupons or the Trust Deed (a "Related Proceeding"). The Republic has in the Trust Deed waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

*(c) Agent for Service of Process*

The Republic has in the Trust Deed agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose, and (ii) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in England may be made upon Banco de la Nación Argentina, presently located at Longbow House, 14/20 Chiswell Street, London EC1Y 4TD, England, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint a successor agent to act as its agent for such purpose.

*(d) Waiver of Immunity*

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the State Immunity Act 1978 to the giving of any

relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of the Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Trustee, a Noteholder or a Couponholder to enforce or execute a Related Judgment. The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Notes, the Coupons and the Trust Deed and under no circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Notes, the Coupons or the Trust Deed.

**TRUSTEE**

Chase Manhattan Trustees Limited
Woolgate House
Coleman Street
London EC2P 2HD

**PRINCIPAL PAYING
AND
CALCULATION AGENT**

The Chase Manhattan Bank, N.A.
Woolgate House
Coleman Street
London EC2P 2HD

**PAYING AGENT**

Chase Manhattan Bank Luxembourg S.A.
5 Rue Plaetis
L-2338 Luxembourg

– 50 –

# Exhibit D

Case 1:07-cv-08099-TPC   Document 1-6   Filed 09/12/2007   Page 53 of 56



US 04-011 MAK 62

# THE REPUBLIC OF ARGENTINA

### Euro 750,000,000 Interest Strip Notes due 2028

### issued under its

### U.S.$11,000,000,000

### EURO MEDIUM-TERM NOTE PROGRAMME

Issue Price: 100.835 per cent.

Series No.: 61

Tranche No.: 01

Dealer

**ABN AMRO**

The date of this Pricing Supplement, Supplemental Information Memorandum and Supplemental Information Memorandum is May 26, 1998.

## PRICING SUPPLEMENT
## THE REPUBLIC OF ARGENTINA
## U.S.$11,000,000,000
## EURO MEDIUM-TERM NOTE PROGRAMME
## SERIES NO.: 61
### Euro 750,000,000 Interest Strip Notes due 2028 (the "Notes")

We are instructed to confirm the following agreement for the issue of Notes:

| | | |
|---|---|---|
| 1. | Method of distribution | Non-Syndicated |
| 2. | Series number: | 61 |
| 3. | Form of Notes: | Registered Notes. On issue, the right to payment of interest will be stripped as provided for in paragraph 22, resulting in principal Notes ("Principal Only Notes") and interest Notes ("Interest Only Notes"). |
| | | Interest Only Notes will be available in the following classes: |
| | | "Class 2001 Interest Only Notes", "Class 2006 Interest Only Notes", "Class 2011 Interest Only Notes", "Class 2016 Interest Only Notes", "Class 2021 Interest Only Notes" and "Class 2026 Interest Only Notes". |
| 4. | Specified Currency: | EURO, provided that all payments in respect of the Notes shall be made in ECU until the EMU Date (as defined and further described in paragraph 22). |
| 5. | Authorised Denomination(s): | For Notes sold pursuant to Regulation S: EURO 10,000 and higher integral multiples thereof on initial issue; EURO 10,000 and higher integral multiples thereof for the Principal Only Notes and the Interest Only Notes. |
| | | For Notes sold pursuant to Rule 144A: EURO 250,000 and higher integral multiples of EURO 50,000 on initial issue; EURO 250,000 and higher integral multiples of EURO 50,000 for the Principal Only Notes and the Interest Only Notes. |
| 6. | Principal Amount: | EURO 750,000,000 |
| 7. | Amortisation Provisions: | No |
| 8. | Issue Price: | For the Notes on issue to the Dealer: 100.835% of their Principal Amount. |
| | | For the Principal Only Notes: 6.1190% of their Principal Amount. |
| | | For the Interest Only Notes: |
| | | Class 2001 Interest Only Notes: 80.4287% of their Face Amount. |
| | | Class 2006 Interest Only Notes: 51.0795% of their Face Amount. |
| | | Class 2011 Interest Only Notes: 30.6064% of their Face Amount. |
| | | Class 2016 Interest Only Notes: 18.6458% of their Face Amount. |
| | | Class 2021 Interest Only Notes: 11.4278% of their Face Amount. |
| | | Class 2026 Interest Only Notes: 7.2136% of their Face Amount. |
| 9. | Issue Date: | May 28, 1998 |
| 10. | Maturity Date: | May 28, 2028 |
| 11. | Interest Basis: | Fixed Rate |

Draft 1/:/2549/0.5/19 May 1998

12. Interest Commencement Date:      May 28, 1998

13. Interest Rate(s):

The following interest amounts (each a "Face Amount") will be paid on the Reference Dates set out in paragraph 15, subject as provided in paragraph 22:

Class 2001 Interest Only Notes: EURO 356,250,000
Class 2006 Interest Only Notes: EURO 356,250,000
Class 2011 Interest Only Notes: EURO 356,250,000
Class 2016 Interest Only Notes: EURO 356,250,000
Class 2021 Interest Only Notes: EURO 356,250,000
Class 2026 Interest Only Notes: EURO 356,250,000.

14. Fixed Rate Day Basis:      30/360, subject as provided for in paragraph 22.

15. Reference Date(s):

As provided for in paragraph 22:

Class 2001 Interest Only Notes: May 28, 2001
Class 2006 Interest Only Notes: May 28, 2006
Class 2011 Interest Only Notes: May 28, 2011
Class 2016 Interest Only Notes: May 28, 2016
Class 2021 Interest Only Notes: May 28, 2021
Class 2026 Interest Only Notes: May 28, 2026.

16. Initial Broken Amount:      N/A

17. Final Broken Amount:      N/A

18. Long Maturity Notes (as defined in Condition 7(a)):      Yes, but subject as provided in paragraph 22.

19. Redemption at Republic's option permitted (pursuant to Condition 6(d)):      No

20. Redemption at Noteholders' option permitted (pursuant to Condition 6(e)):      No

21. Entitlement to payments postponed until the following business day if date for payment does not fall on a business day:      Yes

22. Details of any additions or variations to the terms and conditions of the Notes:

The Terms and Conditions of the Notes shall be modified as set out in paragraphs 22(a) to (m) below, and by additional consequential changes. The modified Terms and Conditions as they apply to this issue of Notes are attached to this Pricing Supplement.

(a) Condition 1(a) will be modified by the inclusion of the following paragraph after the final paragraph:

The right to be paid interest on a Registered Note may be separated irrevocably from the right to be repaid principal, as specified on its face. If so separated, the entitlement of the holder to be paid the interest on any specified date shall be represented by an Interest Note in registered form (each an "Interest Only Note" and, together with all other Interest Only Notes in respect of the same specified date, a "Class of Interest Only Notes") and the entitlement of the holder to be repaid the principal on any specified date shall be represented by a principal Note in registered form (a "Principal Only Note"). The Interest Only Notes and Principal Only Notes shall be issued in separate definitive Notes or in a single Registered Note, each of which will be numbered serially with an identifying number. Holders of each Class of Interest Only Notes will be recorded in the interest register (the "Interest Register") and holders of the Principal Only Notes will be recorded in the principal register (the "Principal Register"), in each case which the Republic shall procure to be kept by the Registrar. The Principal Amount of each Principal Only Note and the Face Amount of each Interest Only Note will be specified on its face. Except as expressly provided or where the context requires otherwise, references in these Conditions to "Notes" and "Registered Notes" shall include Principal Only Notes and Interest Only Notes.

Interest Only Notes will be available in the Classes specified in paragraph 3 and on their face.

(b) Condition 4(e) shall be modified by the replacement of the definition of "Domestic Foreign Currency Indebtedness" by the following:

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92, (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93, (h) Bonos del Tesoro a Mediano Plazo en Dólares Estadounidenses issued under Law No. 24,156 and Decree No. 340/96 and (i) Bonos de Consolidación issued under Law No. 24,411 and Decree No. 726/97; (ii) any indebtedness issued in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness":